UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

UNITED STATES SUGAR
CORPORATION,

    *Plaintiff*,

v.

COMMERCE AND INDUSTRY
INSURANCE COMPANY,

    *Defendant*.

                                            /

CASE NO.: 1:22-cv-21737-RNS

## U.S. SUGAR'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Plaintiff, United States Sugar Corporation ("U.S. Sugar"), by and through its undersigned counsel, hereby moves for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), and in support states as follows:

### INTRODUCTION

This case presents a quintessential worst-case scenario for an insurance policyholder: dutifully pay a substantial premium year after year for a liability policy only to be abandoned by the carrier once the policyholder is sued. This Motion seeks to resolve the singular question of law at the heart of this lawsuit – whether the amounts spent by U.S. Sugar to defend itself against a putative class action lawsuit erode the operative insurance policy's $1 million self-insured retention as provided by the express policy language. While the parties agree that the insurance policy provides a clear and unambiguous answer to this question, they reach opposite conclusions. The resolution of this dispute is an issue of law for the Court to be decided based on nothing more than the policy itself. *Fayad v. Clarendon Nat'l Ins. Co.*, 899 So. 2d 1082, 1085-86 (Fla. 2005)

(acknowledging that "the construction of an insurance policy is a question of law" and that "insurance contracts are construed in accordance with the plain language of the policy as bargained for by the parties") (internal citations and quotations omitted).

U.S. Sugar is a farming company that has grown sugarcane for nearly 100 years by utilizing controlled, pre-harvest burns to reduce wildfires and create a more effective harvesting process. Despite the closely-regulated and state-approved nature of pre-harvest sugarcane burning, two plaintiffs commenced a putative class action lawsuit in the Southern District of Florida on June 4, 2019 against U.S. Sugar and numerous other companies engaged in this practice. Commerce and Industry Insurance Company ("AIG") previously issued U.S. Sugar four general liability policies over four consecutive years, beginning with the policy period from May 1, 2015 through May 1, 2016. This policy, which is at issue in this litigation, was in effect during the first alleged injury in the underlying lawsuit. U.S. Sugar promptly provided AIG with notice of the underlying lawsuit and the lawyers that would be engaged to mount a defense. AIG has never disputed that the 2015-2016 insurance policy was triggered by the underlying lawsuit's allegations of bodily injury and property damage.

A centerpiece of virtually any liability policy is coverage for the policyholder's defense expenses. The insured is responsible for bearing the cost of that defense up to a certain amount (a self-insured retention, or "SIR"), at which point the payment obligation shifts to the insurer. Faced with the prospect of defending U.S. Sugar in a protracted and expensive class action lawsuit, AIG pioneered a coverage position that comprehensively eliminated any obligation to pay for that defense. Contrary to the policy's plain language, AIG conveniently decided that U.S. Sugar's $1 million self-insured retention could not be eroded by the defense expenses incurred and paid by U.S. Sugar. Problem solved. Under this approach, AIG would never be obligated to pay a single

dollar under the policy unless U.S. Sugar ultimately made some payment in excess of $1 million in the form of indemnity, such as a settlement or judgment. This self-serving interpretation begins and ends with the fact that it is unsupported by the subject insurance policy.

The analysis is straightforward. U.S. Sugar's policy contains an express "SIR Endorsement" addressing the retention and its erosion. It establishes in no uncertain terms that AIG has a duty to defend U.S. Sugar once the self-insured retention has been exhausted by U.S. Sugar's payment of covered loss, which explicitly includes defense expenses. The endorsement even goes so far as to provide that its terms control over all other endorsements unless another endorsement specifically says otherwise. To reach a contrary conclusion, AIG bases its coverage position on another endorsement that contains no such language and is indisputably superseded by the SIR Endorsement.

Ultimately, even if the Court were to decide that both parties' readings of the policy are plausible, Florida law does not require discovery or a trial on the issue. To the contrary, it requires a judgment in U.S. Sugar's favor. Under governing authority, where policy language is susceptible of more than one reasonable interpretation, it is deemed ambiguous as a matter of law and the inquiry is over. The policy must be construed in the policyholder's favor without resort to extrinsic evidence. Accordingly, in order to prevail, U.S. Sugar need not prove that its reading of the policy is right or that AIG's reading is wrong. U.S. Sugar must simply demonstrate that its interpretation is reasonable. Because extrinsic evidence may not be considered, no discovery is necessary or even appropriate on this issue. For the reasons discussed below, as a matter of law, U.S. Sugar's reading of the policy meets this minimum threshold and the Court should grant this Motion.[1]

---

[1] To be clear, this Motion is not asking the Court to determine the amount to which U.S. Sugar is entitled for its defense expenses in connection with the underlying lawsuit. U.S. Sugar is merely asking the Court to determine as a matter of law that its defense expenses erode the $1 million self-insured retention under the policy's terms.

## STATEMENT OF UNDISPUTED FACTS

On June 4, 2019, two plaintiffs commenced a putative class action lawsuit against U.S. Sugar and numerous other companies engaged in the practice of pre-harvest sugarcane burning. Compl. at ¶ 27 (ECF No. 1); Answer at ¶ 27 (ECF No. 10). That action was filed in the United States District Court for the Southern District of Florida, styled *Clover Coffie, et al. v. Florida Crystals Corp., et al.*, Case No. 9:19-cv-80730-DMM (the "Underlying Lawsuit"). *Id.*[2]

The complaint alleged that toxic smoke and ash emitted from the pre-harvest fires traveled through the air and was deposited onto properties in the area, which negatively impacted workers in the fields as well as community residents. Compl. at ¶ 28; Answer at ¶ 28. The smoke and ash allegedly caused and manifested medical conditions and also discolored cars, homes, and office buildings. *Id.* The complaint also leveled a host of allegations regarding the negative effects of sugarcane burning on health and property use/value. Compl. at ¶ 29; Answer at ¶ 29. One putative plaintiff purported to bring the Underlying Lawsuit on behalf of the "Property Damage Subclass." Compl. at ¶ 30; Answer at ¶ 30. This subclass was defined as "All persons and legal entities that are or have been owners of real property located within the Affected Area from June 2015 to the present." *Id.* The other putative plaintiff purported to bring the Underlying Lawsuit on behalf of the "Medical Monitoring Subclass," which was defined as "All current residents of the Affected Area." Compl. at ¶ 31; Answer at ¶ 31.

At the time of the Underlying Lawsuit, AIG had issued U.S. Sugar four consecutive general liability policies that collectively provided coverage for the period from May 1, 2015 through May 1, 2019. Compl. at ¶ 33; Answer at ¶ 33. Policy number BE 044212320 covered the policy period

---

[2] A copy of the complaint from the Underlying Lawsuit is attached to the Complaint in this matter as **Exhibit "A."** *See* ECF No. 1-1.

from May 1, 2015 through May 1, 2016 (the "Policy"). Compl. at ¶ 58; Answer at ¶ 58.[3] U.S. Sugar provided AIG with notice of the Underlying Lawsuit and a copy of the complaint. Compl. at ¶ 35; Answer at ¶ 35.

Endorsement 26 to the Policy, entitled "Retained Limit Amendatory Endorsement," deletes the original self-insured retention in its entirety (the "SIR Endorsement"). Compl. at ¶ 73; Answer at ¶ 73; Policy, End. 26, p. 78. The SIR Endorsement provides a new Schedule of Retained Limits addressing the various coverages contained within the Policy. Compl. at ¶ 81; Answer at ¶ 81; Policy, End. 26, p. 81. Next to the General Liability coverage, the schedule confirms that there is a $1 million retained limit for "Each Occurrence" and states: "*Limits are Inclusive of the Defense Expenses.*" *Id*. (emphasis added). The SIR Endorsement also provides:

> If another endorsement attached to this policy states specifically that the provisions therein supersede any other terms, definitions, conditions, and exclusions of any language in this policy or its endorsements, then the provisions of such other endorsement apply irrespective of anything to the contrary in the provisions of this endorsement. *In all other cases, the provisions of this endorsement apply notwithstanding anything to the contrary in the other terms, definitions, conditions, and exclusions[,] terms and conditions of this policy*.

Compl. at ¶ 84; Answer at ¶ 84; Policy, End. 26, § 14, p. 81. (emphasis added). Endorsement 23 to the Policy contains no language indicating that its terms control over the SIR Endorsement. Policy, End. 23, pp. 72-74.

On February 25, 2022, the plaintiffs in the Underlying Lawsuit filed a Stipulation of Dismissal with Prejudice. Compl. at ¶ 55; Answer at ¶ 55. To date, AIG has refused to reimburse U.S. Sugar for any defense expenses incurred in connection with the Underlying Lawsuit. Compl. at ¶ 95; Answer at ¶ 95.

---

[3] A copy of the Policy is attached to the Complaint in this matter as **Exhibit "E."** *See* ECF No. 1-5. For the Court's ease of reference, citations to the Policy herein reference the page number that corresponds to the exhibit.

**MEMORANDUM OF LEGAL AUTHORITY**

**I.     Motion for Judgment on the Pleadings**

Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts. [The Court] accept[s] all the facts in the complaint as true and view[s] them in the light most favorable to the nonmoving party." *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014) (internal citation omitted). "The pleadings considered by the court on a motion for judgment on the pleadings include the complaint, answers, and the exhibits thereto." *Princeton Express & Surplus Ins. Co. v. DM Ventures USA LLC*, 209 F. Supp. 3d 1252, 1255 (S.D. Fla. 2016) (citing *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)).

**II.    Florida Law Governing Insurance Policy Construction and Ambiguity**

Insurance policy construction presents a question of law that is reserved for the Court. *Fayad*, 899 So. 2d at 1085. Under Florida law, "insurance contracts must be construed in accordance with the plain language of the policy." *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). Because the insurer is the drafter of the insurance policy, it is well-settled that the policy language "is to be construed liberally in favor of the insured and strictly against the insurer." *Washington Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 950 (Fla. 2013). A court must read each insurance policy as a whole and give every provision its full meaning and operative effect. *Id*. at 949-50. Accordingly, "an interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable." *Premier Ins. Co. v. Adams*, 632 So. 2d 1054, 1057 (Fla. Dist. Ct. App. 1994).

Florida law expressly favors the policyholder when insurers issue ambiguous policies. Where an insurance policy is "drawn in such a manner that it requires the proverbial Philadelphia lawyer to comprehend the terms embodied in it, the courts should and will construe them liberally in favor of the insured and strictly against the insurer to protect the buying public." *Ruderman*, 117 So. 3d at 951 (quoting *Hartnett v. S. Ins. Co.*, 181 So. 2d 524, 528 (Fla. 1965)). If policy language is ultimately susceptible of two or more reasonable interpretations, the policy is considered ambiguous. *Penzer v. Transportation Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010). And, as the Florida Supreme Court has affirmed, ambiguities are automatically construed in favor of the insured without resort to extrinsic evidence to clarify the parties' intent. *Ruderman*, 117 So. 3d at 945.

A question regarding the erosion or application of an insurance policy's limits is properly resolved by the trial court as a matter of law. *See Evanston Ins. Co v. Whyte*, No. 10-61007-CIV-Dimitrouleas, 2011 WL 13096633, at *6 (S.D. Fla. Oct. 17, 2011) (granting judgment in favor of the policyholder because the policy provisions addressing the erosion of limits were ambiguous); *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.*, 331 F. App'x 640, 648 (11th Cir. 2009) (affirming the district court's judgment in favor of the policyholder because the policy language addressing the stacking of limits was ambiguous and, therefore, had to be construed in favor of the insured). As AIG repeatedly states in its Answer, the insurance policy at issue speaks for itself. No discovery or other extrinsic evidence can inform the Court's reading of the policy language, nor is it appropriate for a jury to decide what the Policy means. *See Fayad*, 899 So. 2d at 1085-86.

**III.     The Policy's Coverage Grant and the Erosion of the Self-Insured Retention by U.S. Sugar's Defense Expenses**

     A.     The Policy's Coverage Grant for Alleged Bodily Injury and Property Damage

The subject Policy is U.S. Sugar's primary layer of general liability coverage, meaning that it is the first insurance policy that will respond to cover defense expenses and indemnity after the SIR is exhausted. This Policy is also the one that was in effect in June 2015, which was the first alleged occurrence in the Underlying Lawsuit. *See* Underlying Lawsuit, Compl. at ¶ 111. While there is no genuine dispute as to the Policy's applicability, the operative coverage grant provides necessary context for the endorsement that controls the issue at hand.

The gravamen of the Underlying Lawsuit is that toxic smoke and ash emitted from U.S. Sugar's pre-harvest fires traveled through the air and was deposited onto properties in the area, which negatively impacted workers in the fields as well as community residents. *See* Underlying Lawsuit, Compl. at ¶ 46. The smoke and ash allegedly caused and manifested medical conditions and also discolored cars, homes, and office buildings. *Id*. The complaint also contained numerous allegations regarding the negative effects of sugarcane burning on health and property use/value. *See* Underlying Lawsuit, Compl. at ¶¶ 61-101. The operative General Liability insuring agreement responds to allegations of bodily injury and property damage and provides, in relevant part:

> We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Bodily Injury, Property Damage or Personal Injury and Advertising Injury to which this insurance applies or because of Bodily Injury or Property Damage to which this insurance applies assumed by the Insured under an Insured Contract.

Policy, § I(A), p. 6.[4] The insuring agreement also states that "This policy applies, only if . . . the Bodily Injury or Property Damage is caused by an Occurrence that takes place anywhere, and the Bodily Injury or Property Damage occurs during the Policy Period." Policy, § I(B), p. 6.

Bodily Injury and Property Damage are broadly defined such that the Underlying Lawsuit's allegations fall well within their scope. Bodily Injury specifically means "bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time." Policy, § VII(C), p. 22. Property Damage is defined as

> (1) physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or (2) loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the Occurrence that caused it.

Policy, § VII(Y), p. 28. Bodily Injury or Property Damage must be caused by an Occurrence, which means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Policy, § VII(S), p. 26.

AIG has never previously disputed that the Policy and the duty to defend are triggered by the Underlying Lawsuit's allegations of Bodily Injury and Property Damage, nor does it now raise any affirmative defense to this effect. *See* Answer at pp. 13-14. In Florida, the duty to defend is an extremely broad obligation that is intentionally deferential to insureds. That obligation is broader than the duty to indemnify. *Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1246 (11th Cir. 2015). An insurer's duty to defend a lawsuit against its insured is governed by the terms of the policy and the allegations of the complaint. *Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 536 (Fla. 1977). This is often called the "eight corners rule," a reference to

---

[4] Capitalized words and phrases are specifically defined by the Policy and are intended to have the same meaning when used herein.

the four corners of the policy and the four corners of the complaint. In Florida, a carrier is obligated to defend "so long as the allegations against the insured *even arguably* come within the policy coverage." *Pepper's Steel & Alloys, Inc. v. U.S. Fid. & Guar. Co.*, 668 F. Supp. 1541, 1545 (S.D. Fla. 1987) (emphasis in original). "[T]he insurer is required to provide a defense to any action, however groundless, in which there exists *any possibility* that the insured might be held liable for damages where facts are alleged within the coverage of the policy[.]" *Id.* (emphasis added). An insurer must defend "unless it [is] certain that there [is] no coverage for the damages sought." *Carithers*, 782 F.3d at 1246. Ultimately, all doubts as to whether a duty to defend exists are resolved in favor of the insured. *Id.*

The fact that AIG had a duty to defend U.S. Sugar against the Underlying Lawsuit is not in dispute. The question at hand is whether AIG had an obligation to pay U.S. Sugar's defense expenses once U.S. Sugar spent $1 million on its own defense. This is answered by the Policy's plain language. In short, the Policy's terms dictate the amount that must be borne by U.S. Sugar as the SIR and the manner in which that retention is eroded. In fact, AIG included a specific endorsement in the Policy to address this issue. The insurer now ignores that very endorsement because it requires the outcome that AIG is seeking to avoid.[5]

   B. <u>The Policy Unambiguously Establishes that the Self-Insured Retention is Eroded by Defense Expenses</u>

The Policy language controlling the applicable SIR is hardly obscure. To the contrary, AIG expressly included a Retained Limit Amendatory Endorsement that entirely eliminates and replaces the Policy's schedule of self-insured retentions and modifies the related policy provisions.

---

[5] Even if AIG attempts to dispute its duty to defend for the first time in opposition to this Motion, this should not deter the Court from ruling on the issue presented. The ultimate question of law is whether the Policy's SIR is eroded by U.S. Sugar's payment of its own defense expenses, which has been the singular issue in dispute between the parties since the inception of this insurance claim.

*See* Policy, End. 26, p. 78. AIG not only drafted this endorsement and chose to incorporate it into the Policy – it also included language to ensure that its terms would take precedence over any other conflicting provisions. A step-by-step analysis of the insurer's own endorsement confirms that U.S. Sugar's defense expenses erode the applicable SIR.

The SIR Endorsement's first order of business is to eliminate the Policy's original SIR. Item 5 of the Policy's Declarations states that there is a Self-Insured Retention of $10,000. Policy, Declarations, p. 5. The very first sentence of the SIR Endorsement, however, states that "The DECLARATIONS, ITEM 5. SELF INSURED RETENTION is deleted in its entirety." Policy, End. 26, § 1, p. 78.

The SIR Endorsement next establishes that AIG has a duty to defend U.S. Sugar once the SIR has been exhausted by the payment of covered Loss:

> *We will have the right and duty to defend* any Suit against the Insured that seeks damages for Bodily Injury, Property Damage or Personal Injury and Advertising Injury covered by this policy, even if the Suit is groundless, false or fraudulent *when the applicable limits listed in the Schedule of Retained Limits have been exhausted by payment of Loss* to which this policy applies.

Policy, End. 26, § 3, pp. 78-79 (emphasis added). The SIR Endorsement then redefines what is considered covered Loss under the Policy:

> Loss means those sums actually paid as judgments or settlements, provided, however, that if the applicable Retained Limit is specifically designated in the Schedule of Retained Limits as including Defense Expenses, *then Loss shall include such Defense Expenses*.

Policy, End. 26, § 10, p. 80 (emphasis added). Defense Expenses broadly encompass "payment(s) allocated to the investigation, settlement or defense of a specific loss, claim or Suit, including but not limited to . . . Attorneys' fees and all other investigation, loss adjustment and litigation expenses." Policy, End. 26, § 6, p. 79.

Bringing the analysis full circle, the end of the SIR Endorsement reflects the new Schedule of Retained Limits addressing the various coverages contained within the Policy. Policy, End. 26, p. 81. It appears as follows:

**Schedule of Retained Limits**

| Coverage(s) | Retained Limit(s) | |
|---|---|---|
| GENERAL LIABILITY (Includes Liquor Liability and Broad Form Vendors) | $1,000,000 | EACH OCCURRENCE |
| | $2,000,000 | GENERAL AGGREGATE |
| | $2,000,000 | PRODUCTS & COMPLETED OPS. AGGREGATE |
| | | Limits are Inclusive of the Defense Expenses |

Next to the General Liability coverage – the coverage applicable to the Underlying Lawsuit – the schedule confirms that there is a $1 million retained limit for "Each Occurrence" and expressly states: "*Limits are Inclusive of the Defense Expenses*." Policy, End. 26, p. 81 (emphasis added). The plain reading of this language could not be any clearer. Defense Expenses are "included" within the retained limit, meaning that they erode the amount for which U.S. Sugar is responsible.

When the insurance jargon is set aside and the terms of the SIR Endorsement are distilled, the operative provisions follow a straightforward progression. AIG has a duty to defend U.S. Sugar against a lawsuit alleging Bodily Injury or Property Damage. That obligation arises once the retention has been exhausted by the payment of covered Loss by the policyholder. Loss expressly includes Defense Expenses, which are the necessary amounts to defend against a lawsuit. And, the new Schedule of Retained Limits establishes a $1 million SIR, which is eroded by Defense Expenses.

Further bolstering this conclusion, the SIR Endorsement also confirms that Defense Expenses would erode the SIR *even if U.S. Sugar had underlying insurance to cover those amounts*. The SIR Endorsement amends the definition of Retained Limit and provides, in relevant part:

> The Retained Limit(s) listed in the Schedule of Retained Limits will apply whether or not there is any available Scheduled Underlying Insurance or Other Insurance. If there is Scheduled Underlying Insurance or Other Insurance applicable to a Loss, *amounts received through such Scheduled Underlying Insurance or Other Insurance for payment of the Loss may be applied to reduce or exhaust the Retained Limit.* Furthermore, (a.) If the applicable Retained Limit is specifically designated in the Schedule of Retained Limits as including Defense Expenses, then amounts received through Scheduled Underlying Insurance or Other Insurance providing coverage to the Insured for the payment of Defense Expenses *shall reduce the Retained Limit*.

Policy, End. 26, § 12, p. 80 (emphasis added). Simply stated, the reader must look to the new Schedule of Retained Limits contained within the SIR Endorsement to determine whether Defense Expenses are part of those limits. If so, Defense Expenses will erode the retention – *even if* they are covered by another insurance policy. As noted above, the new Schedule of Retained Limits confirms that "Limits are Inclusive of Defense Expenses."

It is difficult to envision clearer language confirming AIG's intent to have Defense Expenses erode the SIR. This is particularly true when considering the purpose of a self-insured retention. As the name suggests, a self-insured retention is normally borne by the policyholder.[6] Yet, the SIR Endorsement goes so far as to confirm that U.S. Sugar's Defense Expenses will erode the retention *even when those amounts are paid by other available insurance*. It would be both illogical and inconsistent with the Policy language to conclude that Defense Expenses erode the SIR if they are paid by another carrier, but not if U.S. Sugar pays them directly out of its own pocket.

---

[6] An SIR is "a dollar amount specified in a liability insurance policy that must be paid by the insured before the insurance policy will respond to a loss. Thus, under a policy written with a SIR provision, the insured (rather than the insurer) would pay defense and/or indemnity costs associated with a claim until the SIR limit was reached. After that point, the insurer would make any additional payments for defense and indemnity that were covered by the policy." *International Risk Management Institute (IRMI)*, Self-Insured Retention (SIR), https://www.irmi.com/term/insurance-definitions/self-insured-retention (last visited September 21, 2022).

Finally, of particular importance here is the fact that the SIR Endorsement takes precedence over all others by its own terms. Through language *drafted and incorporated by AIG*, the SIR Endorsement takes the additional step of clarifying that its terms control over any other conflicting endorsements or policy language. It expressly provides:

> If another endorsement attached to this policy states specifically that the provisions therein supersede any other terms, definitions, conditions, and exclusions of any language in this policy or its endorsements, then the provisions of such other endorsement apply irrespective of anything to the contrary in the provisions of this endorsement. *In all other cases, the provisions of this endorsement apply notwithstanding anything to the contrary in the other terms, definitions, conditions, and exclusions[,] terms and conditions of this policy*.

Policy, End. 26, § 14, p. 81 (emphasis added). In plain terms, the SIR Endorsement controls over all others – even in the face of conflicting language – unless the other endorsement specifically states that its terms supersede. No other endorsement addressing this subject contains any such language. Unable to escape the words that it chose, AIG simply ignores them and maintains that another endorsement dictates whether the SIR can be eroded by Defense Expenses.

IV. **AIG's Coverage Position Relies on a Superseded Endorsement and, at Best, Demonstrates an Ambiguity in the Policy**

It is a fundamental principle under Florida law that insurance policies must be read to give each provision its full meaning and operative effect. *Ruderman*, 117 So. 3d at 949-50. Yet the conclusion offered by AIG – that U.S. Sugar's Defense Expenses do not erode the SIR – requires the Court to read one policy endorsement in a vacuum and ignore another.

AIG's position relies exclusively on Endorsement 23 to the Policy without any regard for the SIR Endorsement. Endorsement 23 amends certain provisions of the General Liability coverage that applies to the Underlying Lawsuit. The endorsement states, in part, that the Self-Insured Retention in Item 5 of the Policy Declarations is amended to include the following additional provision: "$1,000,000 Each Occurrence (As respects all damages arising out of any

-14-

discharge, dispersal, seepage, migration, release or escape of Pollutants covered under this endorsement). The Self-Insured Retention will not be reduced by Defense Expenses." Policy, End. 23, p. 73. Endorsement 23 defines Defense Expenses, in part, as "a payment allocated to defend a specific Suit, including but not limited to . . . Attorneys' fees and all other investigation, loss adjustment and litigation expenses." Policy, End. 23, p. 74. Based on this selected language, AIG concludes that the Policy's SIR is not eroded by Defense Expenses and that U.S. Sugar must first make a $1 million indemnity payment before the carrier owes a single dollar. This would have appeal but for the fact that it entirely ignores the superseding SIR Endorsement.

The distinction between U.S. Sugar's proffered interpretation and AIG's is simple but dipositive: U.S. Sugar's reading is the only one that reconciles conflicting language in accordance with the Policy's plain terms. The SIR Endorsement specifically contemplates the possibility that more than one endorsement could address the applicable self-insured retention and its erosion. This endorsement accordingly contains a provision stating that its terms will control unless another endorsement expressly says otherwise. Endorsement 23 (on which AIG relies) indisputably contains no such language. *See* Policy, End. 23, pp. 72-74. Any conflict between the two endorsements must accordingly be resolved by giving the SIR Endorsement precedence – just as the Policy requires. AIG's proffered means of reconciling the two endorsements is to merely ignore the unfavorable one. This renders meaningless the operative language that gives the SIR Endorsement precedence and simply reads it out of the Policy. This approach is facially unreasonable because it directly contravenes Florida law. *Adams*, 632 So. 2d at 1057 ("[A]n interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable.").

The unreasonableness of AIG's position is only further confirmed when considering how it would play out in reality. After U.S. Sugar expended millions of dollars over several years to defend itself against the Underlying Lawsuit, the putative class plaintiffs agreed to voluntarily dismiss their case with prejudice. They did so without any payment from U.S. Sugar. According to AIG, if U.S. Sugar had simply written a settlement check for $1 million, the SIR would have been exhausted and U.S. Sugar would be entitled to repayment of its Defense Expenses under the Policy. But, because U.S. Sugar mounted a successful defense and prevailed without paying a dollar, U.S. Sugar is entitled to nothing. This outcome is nonsensical, much less the *only* reasonable interpretation and application of the insurance policy.

At base, U.S. Sugar's interpretation is reasonable because it follows the Policy's plain language, *Swire Pacific Holdings, Inc.*, 845 So. 2d at 165, and construes coverage liberally in favor of the policyholder. *Ruderman*, 117 So. 3d at 950. Even if AIG's reading were also deemed reasonable by these standards (which it is not), governing law would still require a determination in U.S. Sugar's favor. If the Policy is susceptible of two or more reasonable interpretations, the Court is not required to determine whose reading is "more reasonable" or consider extrinsic evidence to discern the Policy's intent. *Ruderman*, 117 So. 3d at 945 (an ambiguity "must be construed against the insurer and in favor of coverage without resort to consideration of extrinsic evidence"). Entirely to the contrary, the Court is barred from doing so. The inquiry is over and the ambiguity must be construed in U.S. Sugar's favor. *Id*. AIG is not entitled to clarify the Policy terms in its favor after a loss occurs. Nor does it get the benefit of the doubt.

## **CONCLUSION**

AIG elected to issue an insurance policy with nearly three dozen endorsements, which created the potential for inconsistencies. The plain language of the SIR Endorsement makes crystal

clear that (1) payments for Defense Expenses reduce the $1 million self-insured retention, and (2) the terms of that endorsement control over any other conflicting policy language. The Court is bound to apply that language as written, which should result in a judgment in U.S. Sugar's favor. The same result is required under Florida law even if the Court decides that AIG simply incorporated contradictory endorsements that yield no clear answer. This lawsuit is not a forum for AIG to explain to the Court what it meant. It is one where the insurer is to be held accountable for the terms that it wrote.

**WHEREFORE**, Plaintiff United States Sugar Corporation respectfully requests that this Court grant its Motion for Partial Judgment on the Pleadings by entering an Order adjudicating as a matter of law that its defenses expenses in the Underlying Lawsuit erode the Policy's $1 million self-insured retention, together with any further relief that the Court deems equitable, just, and proper.

Dated:   September 21, 2022

HUNTON ANDREWS KURTH LLP

/s/ *Walter J. Andrews*
Walter J. Andrews
Fla. Bar No. 84863
Cary D. Steklof
Fla. Bar No. 86257
HUNTON ANDREWS KURTH LLP
333 S.E. 2nd Ave., Suite 2400
Miami, Florida 33131
Tel: (305) 810-6407
Facsimile: (305) 810-2460
wandrews@HuntonAK.com
csteklof@HuntonAK.com

*Attorneys for Plaintiff United States Sugar Corporation*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 21, 2022, a true and correct copy of the foregoing was served by transmission of Notice of Electronic Filing generated by CM/ECF on all counsel or parties of record.

/s/ *Walter J. Andrews*
Hunton Andrews Kurth LLP