United States District Court
for the
Southern District of Florida

| | |
|---|---|
| United States Sugar Corporation, Plaintiff, <br><br> v. <br><br> Commerce and Industry Insurance Company, Defendant. | ) ) ) ) ) Civil Action No. 22-21737-Civ-Scola ) ) ) ) |

**Order**

This matter is before the Court on Plaintiff United States Sugar Corporation's ("US Sugar") motion for judgment on the pleadings. (Mot., ECF No. 13.) Defendant Commerce and Industry Insurance Company ("C&I") has responded in opposition. (Resp., ECF No. 18.) US Sugar has replied. (Reply, ECF No. 39.) After careful consideration of the briefing, the record, and the relevant legal authorities, the Court **grants in part** US Sugar's motion for judgment on the pleadings. (**ECF No. 13**.)

**1. Background**

This matter is a coverage dispute between US Sugar and its then-general commercial liability insurer, C&I. The dispute arose over US Sugar's defense of a putative class-action lawsuit relating to US Sugar's practice of pre-harvest sugarcane burning (the "Underlying Lawsuit"). (Compl. ¶¶ 1-11, ECF No. 1.) US Sugar pleads a single count for breach of contract against C&I, alleging that C&I has breached the terms of the Umbrella Prime Commercial Umbrella Liability Policy[1] that US Sugar held with C&I by failing to pay US Sugar's defense expenses after those expenses exceeded the Policy's "Self-Insured Retention" limit of $1,000,000. (Compl. ¶¶ 99-103.) That Self-Insured Retention limit—a common feature of commercial liability policies—requires US Sugar to bear responsibility for the initial costs of liability under the Policy, much like a car insurance or health insurance plan's deductible. (*Id.* ¶ 4.) Although US Sugar ultimately prevailed in the Underlying Lawsuit, it alleges that it incurred "the burden of seven-figure attorneys' fees and costs" after C&I denied coverage under the Policy and that those costs should count against the Policy's Self-Insured Retention limit. (*Id.* ¶¶ 7-8.) The parties now dispute the application of the terms of the Policy, specifically the Self-Insured Retention limit, to US Sugar's incurred attorneys' fees and costs.

---

[1] The "Policy" is identified as Policy Number 044212320 and attached as Exhibit E to the Complaint, ECF No. 1-5.

The devil, of course, is in the details. Although the arguments made by the parties regarding coverage for US Sugar's expenses in the Underlying Lawsuit are expansive and thorough, each side's position can be summarized relatively succinctly.

US Sugar argues that Endorsement 26 to the Policy, which modifies the Policy's basic terms regarding self-insured retention limits, controls the Policy's other terms and establishes that "Defense Expenses" erode the Policy's Self-Insured Retention limit for general liability of $1,000,000. (Mot. at 1-3.) Therefore, US Sugar argues, the Policy requires that C&I cover any of US Sugar's expenses above and beyond the $1,000,000 retention incurred in defending the Underlying Lawsuit. (*Id.*)

C&I, on the other hand, argues that Endorsement 23, which alters the Policy's standard language disclaiming coverage for pollution-related harms, controls this dispute. (Resp. at 2-3.) And under the terms of Endorsement 23, Defense Expenses **do not** erode the Self-Insured Retention limit. (*Id.*) Rather, Endorsement 23 provides that C&I is responsible only to indemnify US Sugar for actual liability expenses in excess of the Self-Insured Retention limit. (*Id.*) C&I also argues that the motion for judgment on the pleadings is procedurally improper, which the Court will address separately.

Neither party disputes that the damages sought in the Underlying Lawsuit fit within the Policy's "Pollution" exception to general liability. (Mot. at 4, 14-16; Resp. at 8-10.) Nor does either party dispute, as a conceptual matter, that US Sugar's attorneys' fees and defenses incurred defending the Underlying Lawsuit qualify as "Defense Expenses" under the Policy. (Mot. at 11; Resp. at 8-12.) C&I disputes whether US Sugar's Defense Expenses exceeded the $1,000,000 Self-Insured Retention limit, however. (Answer ¶¶ 8, 94, ECF No. 10; Resp. at 4-5.)

Central to the resolution of the motion are the terms of the Policy itself. US Sugar attaches the Policy in its entirety to the complaint, and C&I does not challenge the Policy's authenticity. (Compl. Ex. E, ECF No. 1-5; *see generally* Resp.) Comprising ninety-one pages, including declarations, terms, schedules, and thirty-three separate endorsements modifying those declarations, terms, and schedules, the Policy is hardly a model of simplicity.

Nevertheless, the Court will focus on the portions of the Policy that the parties themselves identify as controlling: Item 5 of the Declarations (the original Self-Insured Retention Limit, at page 5 of the Policy)[2]; Section I of the Terms (the "Insuring Agreement," at page 6); Subsection M of Section IV of the Terms (the "Payment of Loss" provision, at pages 9-10) Subsection Q of Section V of the Terms (the "Pollution Exclusion," at pages 15-16); Subsection P of Section VII of

---

[2] For ease of reference, the Court will refer to the page numbers stamped on the upper right-hand side of the Policy by CM/ECF, as it is submitted at ECF No. 1-5.

the Terms (the definition of a "Loss," at page 25); Endorsement 23, which modifies Section V(Q), the Pollution Exclusion (at pages 72-74); and Endorsement 26, which modifies Item 5 of the Declarations, the original Self-Insured Retention Limit, among other provisions (at pages 78-82).

The Insuring Agreement of the Policy provides, among other items, the following:

> We [C&I] will pay on behalf of the Insured [US Sugar] those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Bodily Injury, Property Damage or Personal Injury and Advertising Injury . . . . The amount we [C&I] will pay is limited as described in Section IV. Limits of Insurance.

(Policy § I(A), at 6.) In the Limits of Insurance Section, the Policy provides that C&I will not make payments unless certain conditions are met, including the following:

> M. We will not make any payment under this policy unless and until:
>
> 1. the total applicable limits of Scheduled Underlying Insurance have been exhausted by the payment of Loss to which this policy applies and any applicable, Other Insurance have been exhausted by the payment of Loss; or
> 2. the total applicable Self-Insured Retention has been satisfied by the payment of Loss to which this policy applies.

(*Id.* § IV(M), at 9-10.) The Declarations establish the Self-Insured Retention limit at $10,000. (*Id.* at 5.) Under the original terms, the Policy excludes from coverage any damage caused by "Pollution," which includes "the discharge, dispersal, seepage, migration, release, or escape of Pollutants anywhere at any time." (*Id.* § V(Q) at 15-16.) Finally, the Policy defines a Loss to mean "those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a Suit or to investigate a claim reduce the applicable limits of Scheduled Underlying Insurance, then Loss shall include such expenses." (*Id.* § VII(P), at 25.)

Endorsements 23 and 26 make several key changes to these essential provisions.

First, Endorsement 23 deletes Subsection Q of Section V, the Pollution Exclusion, and replaces it with a revised version that includes a new exception to the pollution exclusion. (Policy, End. 23, at 72.) Under the revised terms, the Policy **will** cover damages caused by Pollution if the Pollution is caused by certain

acts outside of US Sugar's control or by accident, provided US Sugar complied with certain other requirements. (*Id.* at 72-73.)

Second, Endorsement 23 amends Item 5 of the Declarations, the Self-Insured Retention, to have a limit of $1,000,000. (*Id.* at 73.) This amendment to the Self-Insured Retention explicitly states that "[t]his Self-Insured Retention will not be reduced by Defense Expenses." (*Id.*)

Third, Endorsement 23 contains no statement indicating that its terms should be given greater or lesser priority than other, conflicting terms in the Policy. (*Id.* at 72-74.)

Fourth, Endorsement 26 makes several wholesale changes to Item 5 of the Declarations, the Limits of Insurance Section, and the definition of a Loss under the Policy. Endorsement 26 states that the Self-Insured Retention contained in Item 5 of the Declarations is "deleted in its entirety." (*Id.*, End. 26, at 78.) So, too, is Subsection M of the Limits of Insurance Section. (*Id.*) The new Subsection M of the Limits of Insurance Section states the following:

> M. We [C&I] will not make any payment under this policy unless and until the total applicable Retained Limit(s) and any applicable Other Insurance have been exhausted by the payment of Loss to which this policy applies. When the amount of Loss has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the Insured the amount of such Loss falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

(*Id.*) And, in place of the original Self-Insured Retention limit, Endorsement 26 inserts a "Schedule of Retained Limits" that sets the Self-Insured Retention limit for general liability claims at $1,000,000. (*Id.* at 81.) Endorsement 26 also changes the definition of a Loss to mean "those sums actually paid as judgments or settlements, provided, however, that <u>if the applicable Retained Limit is specifically designated in the Schedule of Retained Limits as including Defense Expenses, then Loss shall include such Defense Expenses</u>." (*Id.* at 80 (emphasis added).) Finally, the new Schedule of Retained Limits expressly states that the Self-Insured Retention limit for general liability is "inclusive of the Defense Expenses." (*Id.* at 81.)

Fifth, and perhaps most crucially, Endorsement 26 contains several provisions that indicate when its provisions should control over other, conflicting provisions of the Policy and when they should not. In a standalone provision (Provision 14), Endorsement 26 states the following:

> If another endorsement attached to this policy states specifically that the provisions therein supercede [sic] any other terms, definitions, conditions, and exclusions of any language in this policy or its endorsements, then the provisions of such other endorsement apply irrespective of anything to the contrary in the provisions of this endorsement. In all other cases, the provisions of this endorsement apply notwithstanding anything to the contrary in the other terms, definitions, conditions, and exclusions terms and conditions of this policy.

(*Id.* at 81.) In other words, absent express statements to the contrary, the terms of Endorsement 26 should be read to control over other, competing provisions in the Policy, whether those competing provisions are the original terms of the Policy or the terms of another Endorsement.

Endorsement 26 confirms this in another provision: like Endorsement 23, Endorsement 26 contains a section amending Subsection Q of Section V, the Pollution Exclusion. But Endorsement 26's language modifying the Pollution Exclusion also expressly defers to other modifications of the Pollution Exclusion, stating that "the above amendments to Section V. Exclusions, Paragraph Q., **do not apply** if a separate endorsement attached to this policy deletes and replaces Section V. Exclusions, Paragraph Q." (*Id.* at 79 (emphasis added).)

With each of these provisions in mind, the Court turns to the parties' dispute regarding the meaning and application of the Self-Insured Retention limit to US Sugar's attorneys' fees and costs incurred in defending the Underlying Lawsuit.

### 2. Legal Standards

As set forth in Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1255 (11th Cir. 2010). "In determining whether a party is entitled to judgment on the pleadings, the Court accepts as true all material facts alleged in the non-moving party's pleading and must view those facts in the light most favorable to the non-moving party." *Roman v. Spirit Airlines, Inc.*, 482 F. Supp. 3d 1304, 1311 (S.D. Fla. 2020) (Ruiz, J.), *aff'd*, No. 20-13699, 2021 WL 4317318 (11th Cir. Sept. 23, 2021) (cleaned up). Further, a motion for judgment on the pleadings is subject to the same analysis as a motion to dismiss pursuant to Rule 12(b)(6). *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal punctuation omitted) (quoting Fed. R. Civ. P. 8(a)(2)). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

While the Court must accept well-pleaded facts as true, it need not assume the truth of conclusory allegations, nor are parties entitled to have the Court view unwarranted deductions of fact or argumentative inferences in their favor. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (holding mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" insufficient to survive motion to dismiss); *see also Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (per curiam). A court may also properly consider documents attached to the complaint, answer, or motion so long as they are (1) central to the plaintiff's claim, and (2) undisputed. *See Horsley v. Feldt*, 304 F.3d 1125, 1134–1135 (11th Cir. 2002); *cf. Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007) (including exhibits among factual allegations to be considered on 12(b)(6) motion to dismiss, stating "when the exhibits contradict the ... allegations of the pleading, the exhibits govern"). Regardless of a plaintiff's allegations, "the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### 3. Analysis

The Court must address two issues. First, can it determine the meaning and application of the Policy's terms on a motion for judgment on the pleadings? The Court finds that yes, it can determine the meaning of the Policy's terms as a matter of law—in other words, the motion for judgment on the pleadings is procedurally proper. The Court cannot, however, make any determinations regarding the parties' dispute over the actual amount of US Sugar's attorneys' fees and costs incurred in defending the Underlying Suit at this stage.

Second, are the Policy's terms clear, or are they ambiguous? And, if they are clear, which party's interpretation is correct? As discussed in greater detail below, the Court finds that the Policy—although hardly a model of drafting—is sufficiently clear that the Court can interpret it, and that US Sugar's interpretation is the correct one. US Sugar's Defense Expenses incurred in the Underlying Lawsuit erode the Self-Insured Retention limit. Alternatively, if the Policy is ambiguous, then US Sugar's interpretation is at least reasonable. Therefore, Florida law compels the same outcome: C&I had a duty to defend US Sugar in the Underlying Lawsuit once US Sugar's Defenses Expenses exceeded the Self-Insured Retention limit.[3]

### A. C&I's Procedural Objections Lack Merit

Before interpreting the terms of the Policy itself, the Court must address C&I's procedural objections to US Sugar's motion. C&I asserts three objections that are essentially intertwined. First, it argues, judgment on the pleadings is improper because C&I has answered the complaint and denied essential factual allegations in doing so. (Resp. at 3-4.) Second, it asserts, the Court cannot make a partial determination of a matter of law on a motion for judgment on the pleadings. (*Id.* at 4-5.) Third, it contends, judgment on the pleadings would be inappropriate here because the Court would only be addressing one defense that C&I has asserted, instead of all the defenses it has asserted. (*Id.* at 5-6.)

C&I is generally correct in its first and third assertions: the Court must consider C&I's answer, rather than US Sugar's complaint, and the Court must address all C&I's defenses, if it is to wholly decide liability at this stage. *Roman*, 482 F. Supp. 3d at 1311. As such, the Court declines to address any allegation that C&I disputes or any of C&I's defenses to coverage. But neither party disputes the authenticity of the Policy; indeed, in its answer, C&I admits that US Sugar purchased the Policy from C&I. (Answer ¶ 58.) It similarly admits that the Policy contains the language on which US Sugar relies. (*Id.* ¶¶ 60-66, 69-71, 73, 75-79, 84-86.)

This brings the Court to C&I's second procedural argument—that the Court cannot determine the meaning of the Policy alone, because deciding a "partial" motion for judgment on the pleadings would be improper. C&I cites a recent case from the Southern District of Florida supporting this proposition. *Affordable Aerial Photography, Inc. v. Abdelsayed*, No. 21-81331-CIV, 2022 WL 1124795, at *4-5 (S.D. Fla. Apr. 15, 2022) (Cannon, J.).

But, as US Sugar points out, the weight of authority in the Southern District of Florida tends toward the other direction. (Reply at 5-6.) Judges in the

---

[3] The Court is bound by Florida law in this diversity action. *See, e.g., Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983).

Southern District generally find that they may decide partial issues, especially matters of law, on motions for judgment on the pleadings. *See, e.g., Simpson v. Carnival Corp.*, No. 20-25253-CIV, 2021 WL 6428172, at *1 (S.D. Fla. Dec. 30, 2021) (Scola, J.) (granting partial judgment on the pleadings for defendant on plaintiff's claim for punitive damages as a matter of law); *see also Monterey at Malibu Bay Condo. Ass'n v. Empire Indem. Ins. Co.*, No. 19-23353-CIV, 2020 WL 8816345, at *2 (S.D. Fla. Aug. 18, 2020) (Louis, Mag. J); ("Partial judgment on the pleadings is appropriate where the relief sought by plaintiff exceeds that which is available under the claims as he has plead them.") (citing *Lenhart v. Printing Indus. Ins. & Health Care Plan*, 818 F. Supp. 331, 331 (M.D. Fla. 1993); *Cap. Growth Fin. LLC v. Quanta Specialty Lines Ins. Co.*, No. 07-80908-CIV, 2008 WL 2949492, at *1 (S.D. Fla. July 30, 2008) (Hurley, J.). And, significantly, the Eleventh Circuit has approved of district court opinions that granted partial judgment on the pleadings. *See, e.g., Gemini Ins. Co. v. Castro,* 723 F. App'x 797, 801-02 (11th Cir. 2018). The Court finds the reasoning in *Aerial Photography* to be unpersuasive and chooses instead to follow the weight of authority in the Southern District of Florida allowing partial judgment on the pleadings.[4]

### B. Defense Expenses Erode the Policy's Self-Insured Retention Limit for General Liability Coverage, Including for Coverage Related to Pollution

Now, the Court turns to the language of the Policy to determine whether US Sugar's Defense Expenses in the Underlying Lawsuit erode the Policy's Self-Insured Retention Limit. The Court finds that the Policy, although convoluted, is unambiguous—the Self-Insured Retention limit is eroded by Defense Expenses. Alternately, the Court finds that if the Policy was to be considered ambiguous, then C&I owed US Sugar a duty to defend US Sugar in the Underlying Lawsuit under Florida law because US Sugar's interpretation of the Policy is reasonable.

### (1) The Terms of Endorsement 26 Control

The Court begins its analysis of the Policy with a few principles in mind. First, in evaluating the meaning of the Policy, the Court looks to Florida law for guidance, and construes the Policy in accordance with its plain language. *See, e.g., Evanston Ins. Co. v. Whyte*, No. 10-61007-CIV, 2011 WL 13096633, at *4 (S.D. Fla. Oct. 17, 2011) (Dimitrouleas, J.), *aff'd*, 472 F. App'x 904 (11th Cir.

---

[4] The Court also observes that, as a technical matter, it could convert the motion for judgment on the pleadings into a partial motion for summary judgment and arrive at the same result it does here: because neither party disputes the Policy's authenticity and the Court is only deciding what the Policy means a matter of law, no additional evidence is necessary for the Court to definitively interpret the Policy. *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014) ("The interpretation of provisions in an insurance contract is a question of law."); *Mesidor v. Waste Mgmt., Inc. of Fla.*, 606 F. App'x 934, 935 n.1 (11th Cir. 2015).

2012) (citing *Fayad v. Clarendon Nat'l Ins. Co.*, 889 So. 2d 1082, 1086 (Fla. 2005)). Second, the Court seeks to give meaning to each provision of the contract so as not to render any provision meaningless. Fla. Stat. § 627.419(1); *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 166 (Fla. 2003). Third, and finally, should the Court find the policy to be "susceptible to two reasonable interpretations" and therefore ambiguous, it must construe the Policy against the insurer. *Evanston*, 2011 WL 13096633, at *4; *Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 951 (Fla. 2013) (holding that "under [Florida's] long-established rules of construction of insurance contracts, the ambiguous policy must be strictly construed against the insurer.").

    At the outset, the Court observes that the very nature of the Policy renders impossible any attempt to ensure no provision of the Policy is rendered meaningless. The Policy's many Endorsements generally operate by deleting and replacing wholesale portions of the Policy's original terms. This is acutely clear in Endorsements 23 and 26, where both Endorsements state that they replace the Pollution Exclusion in its entirety. (Policy, End. 23, at 72; *id.*, End. 26, at 79.) Thus, the Court endeavors to determine which Endorsement's alterations to the Pollution Exclusion and the Self-Insured Retention control, if either can be clearly said to do so. If the Policy itself does not establish which Endorsement controls in the event of a conflict, then it is hopelessly ambiguous.

    Fortunately, the Endorsements themselves contain language that, when read as a whole, makes clear that Endorsement 26's alterations to the Self-Insured Retention control, while Endorsement 23's alterations to the Pollution Exclusion control.

    First, Endorsement 26 contains a provision stating that its terms control over other conflicting provisions, unless those other provisions <u>also</u> contain language stating they control. (*Id.* at 81.) Given its plain meaning, this provision makes clear that the Court may disregard the terms of any provision that conflict with the terms of Endorsement 26, unless those conflicting terms expressly override other conflicting terms.

    Second, Endorsement 23 does not contain any language stating that its terms control over the terms of other Endorsements. (*Id.*, End. 23, at 72-74.) Rather, Endorsement 23 only states that it amends the Policy's terms. (*Id.* at 72.) Therefore, in a conflict between the terms of Endorsement 23 and 26, Endorsement 26 controls. To find otherwise would be to render Endorsement 26's conflict clause meaningless.

    Third, Endorsement 26 contains additional language that supports this interpretation of the Policy. In another provision (one modifying the Pollution Exclusion, no less), Endorsement 26 specifically states that its modification of the Pollution Exclusion will instead <u>defer</u> to any other modification to that provision. (*Id.*, End. 26, at 79.) In other words, Endorsement 26 makes clear when its

provisions control over other Endorsements and when they do not. Endorsement 23's modifications to the Pollution Exclusion control over Endorsement 26's modifications to the same, based on Endorsement 26's specific provision compelling that outcome. But Endorsement 26's more general conflicts provision makes clear that Endorsement 26's modification to the Self-Insured Retention controls over any modifications to the Self-Insured Retention by Endorsement 23.

Therefore, because Endorsement 26 plainly states that the Self-Insured Retention limit for general liability is "inclusive of the Defense Expenses," US Sugar's Defense Expenses incurred defending the Underlying Lawsuit erode the Policy's Self-Insured Retention.[5] Any other outcome would require the Court to ignore the plain terms of Endorsement 26's conflicts provision.

### (2) If the Policy is Ambiguous, then Florida Law Required C&I to Provide Coverage for US Sugar in the Underlying Suit Based on US Sugar's Reasonable Interpretation of the Policy

Finally, the Court observes that if the Policy's terms were to be found ambiguous, Florida law would still require C&I to have provided coverage for US Sugar in the underling lawsuit. Ambiguities in insurance contracts are interpreted against the insurer. *Ruderman*, 117 So. 3d at 951. And "any doubt regarding the duty to defend must be resolved in favor of the insured." *Pepper's Steel & Alloys, Inc. v. U.S. Fid. & Guar. Co.*, 668 F. Supp. 1541, 1545 (S.D. Fla. 1987) (Spellman, J.) (citing *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 801, 814 (Fla. 1st DCA 1985)). Given the complex nature of the Policy's overlapping Endorsements, US Sugar's interpretation is certainly reasonable, and would control should the Policy be ambiguous. Therefore, the Court would reach the same conclusion even if it did not find that Endorsement 26's conflict provision provides a clear and unambiguous interpretation.

### 4. Conclusion

For the reasons stated above, the Court **grants in part** US Sugar's motion for judgment on the pleadings (**ECF No. 13**) and finds that the Policy's Self-Insured Retention limit for general liability—including for liability that falls within Endorsement 23's terms—is eroded by Defense Expenses.

---

[5] The Court notes, again, that it makes no decision here regarding the legitimacy of any of US Sugar's claimed attorneys' fees and costs incurred in the Underlying Litigation. Nor does it determine whether any of C&I's defenses to coverage may be applicable. The Court's ruling here is strictly limited to its interpretation of the Policy.

**Done and ordered** in Miami, Florida, on December 2, 2022.

_____
Robert N. Scola, Jr.
United States District Judge