United States District Court
for the
Southern District of Florida

| | |
|---|---|
| United States Sugar Corporation, Plaintiff, <br><br> v. <br><br> Commerce and Industry Insurance Company, Defendant. | ) ) ) ) ) ) ) ) ) | Civil Action No. 22-21737-Civ-Scola |

### Order on Defendant's Motion for Summary Judgment

This matter is before the Court on Defendant Commerce and Industry Insurance Company's ("C&I") motion for partial summary judgment. (Mot., ECF No. 53.) Plaintiff United States Sugar Corporation ("US Sugar") has responded in opposition. (Resp., ECF No. 58.) C&I has replied. (Reply, ECF No. 62.) After careful consideration of the briefing, the record, and the relevant legal authorities, the Court **grants in part** and **denies in part** C&I's motion for partial summary judgment. (**ECF No. 53**.)

### 1. Background

This matter is a coverage dispute between US Sugar and its then-general commercial liability insurer, C&I. The dispute arose over US Sugar's defense of a putative class-action lawsuit relating to US Sugar's practice of pre-harvest sugarcane burning (the "Underlying Lawsuit"). (Compl. ¶¶ 1-11, ECF No. 1.) US Sugar defended the Underlying Lawsuit successfully, despite C&I's refusal to provide a defense under the insurance policy (the "Policy")[1] that US Sugar held with C&I at the time. (*Id.*) Now, US Sugar seeks to recoup the "Defense Expenses" it incurred defending the Underlying Lawsuit through a breach of contract claim based on the Policy.[2] (*Id.* ¶¶ 99-103.)

The Court previously ruled on US Sugar's motion for judgment on the pleadings that US Sugar is entitled to reimbursement of its Defense Expenses, finding that "US Sugar's Defense Expenses incurred defending the Underlying Lawsuit erode the Policy's Self-Insured Retention." (Order Granting Partial J. on

---

[1] The "Policy" is identified as Policy Number 044212320 and attached as Exhibit E to the Complaint. (ECF No. 1-5.) C&I also submits the Policy as evidence in support of its motion for summary judgment. (Not. of Filing Summ. J. Ev., Ex. 1-A, ECF No. 51-2.) For ease of reference, the Court will cite to the Policy as the "Policy," and the Court will reference the page numbers stamped by CM/ECF on the top of the Policy as found at docket entry number 51-2.

[2] Unless otherwise defined, all capitalized terms used in this order are used as defined in the Policy.

the Pleadings at 10, ECF No. 42.) That 'Self-Insured Retention" limit, which functions much like a typical insurance deductible, establishes that US Sugar is responsible for the first $1,000,000 of its Defense Expenses. (*Id.* at 1-2, 10.) Above that $1,000,000, C&I is responsible for reimbursing US Sugar for any Defense Expenses relating to the Underlying Lawsuit, pursuant to the Court's prior decision. (*Id.*) The Court reserved ruling on what qualified as Defense Expenses in its previous order, leading to the present motion. (*Id.* at 10 n.5.)

C&I raises two arguments on summary judgment, seeking to narrow the field of potential Defense Expenses that US Sugar may recoup. (Mot. at 1-3.) First, C&I argues that all expenses that US Sugar claims that were incurred before the filing and tendering of the Underlying Lawsuit do not qualify as Defense Expenses and are not covered by the Policy. (*Id.* at 1-2.) Second, C&I asserts that its duty to defend US Sugar in the Underlying Lawsuit ended with the filing of the second amended complaint in that suit, because the second amended complaint included allegations of damages occurring in 2014, before the Policy was in effect, and the damages would therefore be considered to have manifested before the Policy period. (*Id.* at 2-3.) Therefore, C&I claims, it cannot be responsible for any of US Sugar's Defense Expenses after the filing of the second amended complaint in the Underlying Lawsuit.

US Sugar opposes both positions, arguing that Florida law allows it to recoup expenses from before the filing of the Underlying Lawsuit and requires C&I to have continued defending US Sugar after the second amended complaint was filed. (Resp. at 1-5.) Additionally, US Sugar argues that the "mend the hold" doctrine prevents C&I from raising its argument that the second amended complaint excuses it from the duty to defend, when it never did so at the time US Sugar requested coverage. (*Id.* at 14-16.)

Finally, in its reply, C&I raises the additional argument that it would not be responsible to defend US Sugar after the filing of the second amended complaint in the Underlying Lawsuit because the Policy's definition of "Occurrence" means any damages must be considered to have occurred in 2014, before the Policy period. (Reply. at 6-7.) While the parties largely raise legal issues regarding interpretation of the Policy and the application of legal doctrines to determine the bounds of US Sugar's entitlement to reimbursement of its Defense Expenses, there are several undisputed material facts that are necessary for the Court to evaluate the parties' arguments and determine exactly which claimed expenses are eligible Defense Expenses under the Policy.

The parties agree that Policy was effective from May 1, 2015, to May 1, 2016. (Def. Stmt. of Mat'l Facts ¶ 1, ECF No. 52 (citing Policy at 8.); Pl. Resp. Stmt. of Mat'l Facts ¶ 1, ECF No. 57.) Neither party disputes that the copy of the Policy that C&I submitted in support of its motion for summary judgment is an accurate copy of the Policy. (Def. Stmt. of Mat'l Facts ¶ 1; Pl. Resp. Stmt. of Mat'l

Facts ¶ 1.) Next, relevant to the parties' dispute over US Sugar's expenses from before the filing of the Underlying Lawsuit, Policy contains the following definition of "Defense Expenses" in Endorsement 26:

> **Defense Expenses** mean payment(s) allocated to the investigation, settlement or defense of a specific loss, claim or **Suit**, including but not limited to:
> 1. Attorney's fees and all other investigation, loss adjustment and litigation expenses;
> 2. Premiums on bonds to release attachments;
> 3. Premiums on appeal bonds required by law to appeal any claim or **Suit**;
> 4. Costs taxed against the Insured in any claim or **Suit**;
> 5. Pre-judgment interest awarded against the **Insured**; and
> 6. Interest that accrues after entry of judgment.

(Policy End. 26, at 82 (emphasis in original).)[3] The parties do not dispute that the Policy contains this provision. (Pl. Resp. Stmt. of Mat'l Facts ¶ 30; Def. Reply Stmt. of Mat'l Facts ¶ 30, ECF No. 61.) The Policy also contains the following notification requirement, which neither Endorsement 26 nor any other portion of the Policy modifies:

> **G. Duties in the Event of an Occurrence, Claim or Suit**
>
> 1. You [US Sugar] must see to it that we [C&I] are notified as soon as practicable of an Occurrence that may result in a claim or Suit under this policy. To the extent possible, notice should include:
>    a. how, when and where the Occurrence took place;
>    b. the names and addresses of any injured persons and any witnesses; and
>    c. the nature and location of any injury or damage arising out of the Occurrence.
> 2. If a claim is made or Suit is brought against any Insured which is reasonably likely to involve this policy, you must notify us in writing as soon as practicable . . . .
> 3. . . . .

---

[3] The Policy contains a relatively complex system of overlapping 'Endorsements," each of which alters or amends in some way the general terms of the Policy. The Court has previously found that the terms of Endorsement 26 control in determining whether US Sugar is entitled to recoup its Defense Expenses from the Underlying Lawsuit, unless a conflicting term in a separate endorsement expressly states that it controls over Endorsement 26. (Order Granting Partial J. on the Pleadings at 8-10.) The parties do not point to a conflicting definition of "Defense Expenses" that could control over Endorsement 26's definition, nor does the Court observe one.

> 4. No Insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

(Policy § VI(G), at 22-23 (cleaned up).) Again, the parties do not dispute that the Policy contains these terms. (Def. Stmt. of Mat'l Facts ¶ 11; Pl. Resp. Stmt. of Mat'l Facts ¶ 11.) Finally, the parties do not dispute that US Sugar first notified C&I of the Underlying Lawsuit and US Sugar's potential liability on June 14, 2019. (Pl. Stmt. of Mat'l Facts ¶ 10; Def. Stmt. of Mat'l Facts ¶¶ 10, 19-38.)

Relevant to the parties' dispute regarding US Sugar's expenses incurred after the filing of the second amended complaint in the Underlying Lawsuit, the Policy states that it "applies, only if: the Bodily Injury or Property Damage is caused by an Occurrence that takes place anywhere, and the Bodily Injury or Property Damage occurs during the Policy Period." (Policy § I(B)(1), at 9 (cleaned up).) And the Policy defines an "Occurrence" to be the following:

> S. Occurrence means:
>
> > 1. as respects Bodily Injury or Property Damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one Occurrence.
> > 2. as respects Personal Injury and Advertising Injury, an offense arising out of your business that causes Personal Injury and Advertising Injury. All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one Occurrence, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

(*Id.* § VII(S), at 29-30 (cleaned up).)[4] Finally, the complaints in the Underlying Lawsuit (including the second amended complaint) are attached to C&I's Notice of Filing Summary Judgment Evidence, and no party disputes the authenticity of the underlying complaints. (ECF Nos. 51, 51-6 – 51-9.) With these undisputed material facts in mind, the Court turns to the parties' arguments regarding the delineation of US Sugar's permissible Defense Expenses.

---

[4] The parties do not dispute the meaning or the application of the terms "Bodily Injury," "Property Damage," or "Suit" as they relate to the issues in dispute here, so the Court does not find it necessary to address those terms. (*See generally* Mot., Resp.) Rather, it appears that the parties agree that the damages alleged in the Underlying Complaint would qualify, at the least, as Property Damage under the Policy, and the Underlying Lawsuit would qualify as a Suit.

### 2. Legal Standards

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).

### 3. Analysis

The Court will address each of C&I's arguments in detail and in turn. First, the Court finds that C&I is correct, based on the terms of the Policy and on Florida law, [5] that US Sugar is not entitled to reimbursement for any expenses incurred before the filing of the Underlying Lawsuit because those expenses do

---

[5] The Court is bound by Florida law in this diversity action. *See, e.g., Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983).

not qualify as "Defense Expenses" and were not submitted to C&I for approval. Second, the Court finds that C&I was still required to defend US Sugar in the Underlying Suit after the filing of the second (and the third)[6] amended complaint, so C&I is obligated to reimburse all of US Sugar's Defense Expenses above the $1,000,000 Self-Insured Retention Limit.[7]

As in its order on US Sugar's motion for judgment on the pleadings, the Court begins its analysis with several principles in mind. First, in evaluating the meaning of the Policy, the Court looks to Florida law for guidance, and construes the Policy in accordance with its plain language. *See, e.g., Evanston Ins. Co. v. Whyte*, No. 10-61007-CIV, 2011 WL 13096633, at *4 (S.D. Fla. Oct. 17, 2011) (Dimitrouleas, J.), *aff'd*, 472 F. App'x 904 (11th Cir. 2012) (citing *Fayad v. Clarendon Nat'l Ins. Co.*, 889 So. 2d 1082, 1086 (Fla. 2005)). Second, the Court seeks to give meaning to each provision of the Policy so as not to render any provision meaningless. Fla. Stat. § 627.419(1); *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 166 (Fla. 2003). Third, and finally, should the Court find the Policy to be "susceptible to two reasonable interpretations" and therefore ambiguous, it must construe the Policy against the insurer. *Evanston*, 2011 WL 13096633, at *4; *Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 951 (Fla. 2013) (holding that "under [Florida's] long-established rules of construction of insurance contracts, the ambiguous policy must be strictly construed against the insurer.").

### A. US Sugar's Expenses Incurred Before the Filing of the Underlying Lawsuit Are Not Defenses Expenses and Are Not Reimbursable Under the Policy

C&I seeks to prevent US Sugar from recovering "costs incurred before June 2019 for purported 'regulatory disputes' that occurred before the filing of the [Underlying] Lawsuit." (Mot. at 10.) US Sugar, in response, argues that the pre-suit expenses it seeks to have reimbursed are not for regulatory disputes, but

---

[6] The third amended complaint in the Underlying Lawsuit contained largely similar allegations to the second amended complaint, and C&I focuses its arguments on the allegations of pre-harvest sugarcane burning in 2014 in its motion for summary judgment. (Mot. at 5, 10-14.) Accordingly, the Court will focus its analysis on the allegations contained in the second amended complaint, with the understanding that such analysis applies equally to the third amended complaint.

[7] As in its order granting partial judgment on the pleadings, the Court observes that the parties make no arguments regarding the total dollar value of US Sugar's Defense Expenses. (*See generally* Mot., Resp.) Although C&I addresses the specific amounts that US Sugar is claiming, it does not argue that US Sugar's determination of its Defense Expenses is incorrect other than to assert that pre-suit and post-second amended complaint expenses should be excluded. (Mot. at 1-3, 7-8.) Nor does US Sugar affirmatively move for summary judgment on a determination of the total value of its Defense Expenses. Accordingly, the Court makes no observations regarding the actual value of US Sugar's incurred Defense Expenses in this order.

rather relate to "proactively sought legal advice and the investigative services of numerous professionals in connection with the very pre-harvest burning activities that became the subject of the Underlying Lawsuit." (Resp. at 19.) In rejoinder, C&I asserts that those expenses still do not qualify as Defense Expenses and would further be barred by the "voluntary payment clause" in Section VI(G) of the Policy because US Sugar never sought approval before incurring those expenses. Here, C&I's understanding of the Policy's terms is correct.

### (1) US Sugar's Pre-Suit Expenses Do Not Qualify as Defense Expenses

Based on the Policy's plain and unambiguous language, the Court finds that US Sugar's pre-suit expenses do not qualify as Defense Expenses. In the controlling Endorsement (26), the Policy defines Defense Expenses as "payment(s) allocated to the investigation, settlement or defense of a specific loss, claim or Suit." (Policy End. 26, at 82 (cleaned up).)

The problem for US Sugar here is that, to qualify as Defense Expenses, the pre-suit investigatory expenses must have been related to a "specific" incident or lawsuit. (*Id.*) But US Sugar insists that these expenses were all related to its desire to ensure it was generally prepared for any lawsuit related to its practice of pre-harvest sugarcane burning. (Resp. at 19-20.) Indeed, US Sugar states that it "undertook both scientific and legal work to (1) test whether its highly-regulated [sic] practice was causing **any** purported damage, and (2) defend itself against **any** unsubstantiated civil suit involving this practice." (*Id.* at 19 (citing Aff. of L. Kurtz, dated Feb. 3, 2023, ¶ 9, ECF No. 56-7) (emphasis added).) And US Sugar emphasizes that it chose to incur these expenses "[i]n light of other litigation specifically targeting prescribed burns in the agricultural industry." (*Id.*)

In other words, the very evidence that US Sugar relies upon to oppose summary judgment demonstrates that these expenses do not meet the Policy's requirement that Defense Expenses relate to "the investigation, settlement or defense of a **specific** loss, claim or Suit." (Policy End. 26, at 82 (emphasis added).) To find that these expenses qualified as Defense Expenses, the Court would have to fail to give meaning to the Policy's use of the word "specific" in its qualification of Defense Expenses. (*Id.*); Fla. Stat. § 627.419(1); *Swire Pac. Holdings*, 845 So. 2d at 166 (Fla. 2003). This the Court cannot do.

### (2) The Policy Requires US Sugar to Have Tendered the Pre-Suit Expenses to C&I for C&I's Consent

Additionally, the Court finds that US Sugar cannot seek reimbursement of its pre-suit expenses under the Policy's terms because it did not comply with the Policy's requirement that US Sugar must obtain C&I's "consent" before incurring any expense. (Policy § VI(G)(4), at 22-23.) Where insurance policies contain such

clauses in the Eleventh Circuit, insureds may not recover expenses that they failed to present to their insurers before those expenses were incurred. *EmbroidMe.com, Inc. v. Travelers Prop. & Cas. Co. of Am.*, 845 F.3d 1099, 1102, 1105-06 (11th Cir. 2017) (affirming district court's granting of summary judgment in favor of insurer where the insured incurred over eighteen months of legal expenses prior to tendering a claim to the insurer and the policy included a term that the insurer must consent to any such expenses). In *EmbroidMe*, the insurance policy at issue contained provisions that clearly stated that the insurer "was not obligated to pay any expenses that its insured incurred in litigating a covered claim unless the insured had first obtained [the insurer's] consent to generate those expenses." *Id.* at 1102. That policy language is remarkably similar to the language at issue here: "No Insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent." (Policy § VI(G)(4), at 22-23.)

And, crucially, no party puts forward any evidence that US Sugar ever tendered the pre-suit expenses to C&I for coverage before US Sugar incurred them. The earliest notice of US Sugar's potential liability and need to incur expenses defending its practice of pre-harvest sugarcane burning that the Court can discern within the parties' submissions is US Sugar's June 14, 2019, letter to C&I tendering the Underlying Lawsuit for coverage. (Pl. Stmt. of Mat'l Facts ¶ 10; Def. Stmt. of Mat'l Facts ¶¶ 10, 19-38.) Further, that tender letter does not appear to address any of the pre-suit expenses for which US Sugar now seeks coverage. (Pl. Stmt. of Mat'l Facts ¶ 10; Def. Stmt. of Mat'l Facts ¶¶ 10; Tender Letter dated June 14, 2019, Not. of Filing Summ. J. Ev., Ex. 1-B, ECF No. 51-3.) Accordingly, US Sugar is not entitled to reimbursement of its pre-suit expenses for "scientific and legal work" related to its practice of pre-harvest sugarcane burning.[8]

### B. C&I Was Obligated to Continue to Defend US Sugar in the Underlying Lawsuit Even After the Second Amended Complaint Was Filed

C&I also asserts that it should be relieved of its duty to defend US Sugar in the Underlying Lawsuit after the second amended complaint was filed on June 22, 2020, because that complaint raised allegations that US Sugar was conducting pre-harvest sugarcane burning in 2014, before the Policy was in effect. (Mot. at 10.) C&I at first argues for this outcome by claiming that any

---

[8] The parties do not raise, and the Court does not address, the issue of whether any expenses that US Sugar incurred defending the Underlying Lawsuit prior to the June 14, 2019, tender letter may qualify as Defense Expenses. Because the Underlying Lawsuit was initially filed on June 5, 2019, and US Sugar offered its tender letter nine days later, US Sugar likely incurred some expenses specifically related to the Underlying Lawsuit during that time. The Court makes no determination whether US Sugar is entitled to Defense Expenses incurred prior to June 14, 2019.

property damages from US Sugar's activities "manifested" when the burning allegedly first occurred, and because this was outside the Policy's period, C&I would no longer owe US Sugar a defense after these allegations were made. (*Id.* at 10-14); *Amerisure Mut. Ins. Co. v. Albanese Popkin The Oaks Dev. Grp.*, No. 09-81213-CIV, 2010 WL 4942972, at *5 (S.D. Fla. Nov. 30, 2010) (Marra, J.) ("Florida courts follow the 'general rule that the time of occurrence within the meaning of an 'occurrence' policy is the time at which the injury first manifests itself.'") (citation omitted).

In response, US Sugar demonstrates that courts in the Eleventh Circuit do not uniformly apply the manifestation theory: courts also apply the exposure, continuous trigger, and injury-in-fact theories to determine when damages are caused, and neither the Eleventh Circuit nor Florida state courts have formally decided on a specific theory that should be generally applied. (Resp. at 9-10); *BITCO Nat'l Ins. Co. v. Old Dominion Ins. Co.*, 379 F. Supp. 3d 1230, 1240 (N.D. Fla. 2019) ("Courts have developed four theories for determining when damage occurs under a CGL policy: (1) exposure; (2) manifestation; (3) continuous trigger; and (4) injury-in-fact."). Further, US Sugar argues, damage would have occurred during the Policy's period under either C&I's manifestation theory or US Sugar's preferred injury-in-fact theory. (Resp. at 11-12.) Finally, US Sugar argues that C&I's legal arguments only demonstrate that the answer to this question is anything but crystal clear, which under Florida law means C&I still had a duty to defend after the filing of the second amended complaint. (*Id.* at 13.)

In reply, C&I effectively concedes the point on which legal theory should apply, stating that "[t]he trigger issue is not material here." (Reply at 5.) Instead, C&I shifts its argument and instead focuses on an approach it never developed in its motion, arguing that the Policy's definition of an "Occurrence" is what really relieved it of the duty to defend. (*Id.* at 7.) According to C&I, any damages alleged in the second amended complaint must be considered to have arisen from the 2014 pre-harvest burns, which are outside the Policy period.[9] (*Id.*)

The Court disagrees with C&I for two reasons. First, the Court may not consider C&I's position on the meaning of "Occurrence," because C&I never developed that argument in its motion. The Court need not address an argument raised for the first time on reply. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014) (quoting *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) ("Arguments raised for the first time in a reply brief are not

---

[9] C&I argues it should not be responsible for damages from 2014 under the Policy even though it also ensured US Sugar in 2014 on a similar policy because US Sugar is not suing on the 2014 policy. (Reply at 7 n.2.) Separately, C&I has conceded that it would owe US Sugar these damages under the 2014 policy. (Not. of Suppl. Auth. At 1, Ex. A, ECF Nos. 75, 75-1.) Setting aside C&I's legal gymnastics, the Court need not address this issue in detail because it finds that C&I did have a duty to defend US Sugar against the second amended complaint under the Policy.

properly before a reviewing court."). C&I has also effectively abandoned the trigger issue, although such a complex legal argument would not have relieved it of the duty to defend regardless, where US Sugar's position was also a reasonable one. *Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1246 (11th Cir. 2015) (observing that "all doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured" and holding that the insurer had a duty to defend where there was "uncertainty in the law at the time.") (cleaned up). In other words, even if C&I's position on the trigger issue was correct, and C&I had not abandoned that argument, it still would have owed US Sugar a defense under Florida law.

The Court will address C&I's position on the meaning of Occurrence anyway, because C&I's interpretation of the Policy is both incorrect and irrelevant to the determination of the duty to defend. It is incorrect because the Policy applies based on when the "Property Damage" occurs, not when the "Occurrence" that causes the Property Damage happens. (Policy § I(B)(1), at 9 (cleaned up).) And C&I's position is irrelevant because the Policy is far from crystal clear on this point. US Sugar's interpretation is not unreasonable, and "any doubt regarding the duty to defend must be resolved in favor of the insured." *Pepper's Steel & Alloys, Inc. v. U.S. Fid. & Guar. Co.*, 668 F. Supp. 1541, 1545 (S.D. Fla. 1987) (Spellman, J.) (citing *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 801, 814 (Fla. 1st DCA 1985)). Therefore, under Florida law, C&I owed US Sugar a defense anyway.

### (1) The Policy's Applicability Turns on When Property Damage Occurs

The Policy defines an "Occurrence" to mean "as respects Bodily Injury or Property Damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one Occurrence." (Policy § VII(S), at 29-30 (cleaned up).) C&I applies this to the second amended complaint's allegations that US Sugar conducted pre-harvest burns in 2014 to argue that the damages alleged in the second amended complaint must have occurred outside the Policy period. (Reply at 7.)

This argument does not address the Policy's language stating when it actually applies. The Policy "applies, only if: the Bodily Injury or Property Damage is caused by an Occurrence that takes place anywhere, and the Bodily Injury or Property Damage occurs during the Policy Period." (Policy § I(B)(1), at 9 (cleaned up).) This clause has two distinct requirements to trigger the Policy's application: (1) "an Occurrence that takes place anywhere"; and (2) "Property Damage occurs during the Policy Period." (*Id.*) The Policy does not actually require that the Occurrence be within the Policy Period. It only requires that the Property Damage

resulting from that Occurrence happens within the Policy Period. The second amended complaint clearly alleges that burns occurred within the Policy Period of May 1, 2015 through May 1, 2016:

> Pre-harvest burning occurs primarily during a six- to eight-month period that begins in October and ends between March and May. The volume of this burning is staggering in its volume and frequency: in the ten years between 2009 and 2019, Defendants burned approximately 3,244,971 acres of sugarcane field as part of 83,382 individual burns in Palm Beach County alone, as well as hundreds of thousands more in Hendry, Glades, and Martin Counties.

(Sec. Am. Compl. ¶ 119, ECF No. 51-8.) And the plaintiffs alleged that they suffer damages relating to each burn:

> Defendants' burning damages property. Smoke and ash—not only toxic "black snow," but equally insidious, invisible, and pollutant-laden particulate matter that the winds can carry for tens of miles—accumulates on buildings and property and infiltrates homes, where it then recirculates in the air. Because of the damage to real property caused by Defendants' smoke plumes and "black snow," many homes must be pressure washed annually, and residents in the area affected by Defendants' burning (hereafter the "Hazard Zone") are forced to change the clogged filters in their air conditioning systems far more often than usual.

(*Id.* ¶ 16.) In other words, between October 2015 and March (or May) of 2016, US Sugar (among other defendants) was alleged to have conducted pre-harvest burns, and the plaintiffs alleged that they suffered harms from the burns during that period. Based on the Policy's plain language, then, the plaintiffs alleged that "Property Damage occur[ed] during the Policy Period." (Policy § I(B)(1), at 9 (cleaned up)); *Albanese*, 2010 WL 4942972, at *5. Therefore, C&I continued to owe US Sugar a duty to defend even after the filing of the second amended complaint under the terms of the Policy.

### (2) Florida Law Required C&I to Defend US Sugar

Further, C&I would owe US Sugar a duty to defend under Florida law even if the Court did not find that the Policy's terms to be unambiguous. Insurance contracts in Florida are interpreted against the insurer, and all doubts are resolved in favor of the insured when determining a duty to defend. *Albanese*, 2010 WL 4942972, at *5 ("Ambiguous policy provisions are to be liberally construed in favor of the insured and against the insurer, as drafter of the contract.") (citing *Dickson v. Econ. Premier Assur. Co.*, 36 So. 3d 789 (Fla. 5th

DCA 2010). C&I's hair-splitting over the appropriate damages trigger or the definition of "Occurrence" are exactly the sort of arguments that Florida law seeks to avoid. *Ruderman*, 117 So. 3d at 951; *Carithers*, 782 F.3d at 1246. As the Court observed in its order granting partial judgment on the pleadings, Florida law has long been clear that these sorts of close calls must be resolved in favor of the insured when addressing an insurer's duty to defend. (Order Granting Partial J. on the Pleadings at 10.) Because the parties are disputing solely the extent of C&I's duty to defend, the same rule applies here. C&I is responsible for all of US Sugar's Defense Expenses incurred above the $1,000,000 Self-Insured Retention, even after the filing of the second amended complaint.[10]

### 4. Conclusion

For the reasons stated above, the Court **grants in part** and **denies in part** C&I's motion for partial summary judgment (**ECF No. 53**) and finds the following as a matter of law: (1) US Sugar is not entitled to reimbursement of its pre-suit expenses for "scientific and legal work" related to its practice of pre-harvest sugarcane burning; but (2) C&I is responsible for all of US Sugar's Defense Expenses incurred above the $1,000,000 Self-Insured Retention, even after the filing of the second amended complaint.

**Done and ordered** in Miami, Florida, on April 3, 2023.

_____
Robert N. Scola, Jr.
United States District Judge

---

[10] The Court declines to address US Sugar's "mend the hold" argument because it finds that C&I was required to defend US Sugar in the Underling Lawsuit under both the terms of the Policy and Florida law.