United States District Court
for the
Southern District of Florida

| | |
|---|---|
| United States Sugar Corporation, Plaintiff,<br><br>v.<br><br>Commerce and Industry Insurance Company, Defendant. | )<br>)<br>)<br>) Civil Action No. 22-21737-Civ-Scola<br>)<br>)<br>)<br>) |

**Order on Cross-Motions for Summary Judgment**

This matter is before the Court on cross-motions for summary judgment filed by both Plaintiff United States Sugar Corporation ("US Sugar") and Defendant Commerce and Industry Insurance Company's ("C&I"). US Sugar first filed its motion for summary judgment. (Pl.'s Mot. Summ. J., ECF No. 116.) C&I responded in opposition (Def.'s Resp., ECF No. 122), and US Sugar timely replied. (Pl.'s Reply, ECF No. 129.) C&I then filed its motion for summary judgment. (Def.'s Mot. Summ. J., ECF No. 134.) US Sugar responded in opposition (Pl.'s Resp., ECF No. 140) and C&I timely replied. (Def.'s Reply, ECF No. 143.) After careful consideration of the briefing, the record, and the relevant legal authorities, the Court **grants in part** and **denies in part** both US Sugar's motion for summary judgment and C&I's motion for summary judgment. (**ECF Nos. 116, 134**.)

### 1. Background

This matter is a coverage dispute between US Sugar and its then-general commercial liability insurer, C&I. The dispute arose over US Sugar's defense of a putative class-action lawsuit relating to US Sugar's practice of pre-harvest sugarcane burning (the "Underlying Lawsuit"). (Compl. ¶¶ 1-11, ECF No. 1.) US Sugar defended the Underlying Lawsuit successfully, despite C&I's refusal to provide a defense under the insurance policy (the "Policy")[1] that US Sugar held with C&I at the time. (*Id.*) Now, US Sugar seeks to recoup the Defense Expenses it incurred defending the Underlying Lawsuit through a breach of contract claim based on the Policy. (*Id.* ¶¶ 99-103.)

---

[1] The "Policy" is identified as Policy Number 044212320 and attached as Exhibit E to the Complaint. (ECF No. 1-5.) C&I also submits the Policy as evidence in support of its motion for summary judgment. (Not. Filing Summ. J. Ev., Ex. 1-A, ECF No. 51-2.) For ease of reference, the Court will cite to the Policy as the "Policy," and the Court will reference the page numbers stamped by CM/ECF on the top of the Policy as found at docket entry number 51-2. Unless otherwise defined, all capitalized terms used in this order are used as defined in the Policy.

The Court previously ruled on US Sugar's motion for judgment on the pleadings that US Sugar is entitled to reimbursement of its Defense Expenses, finding that "US Sugar's Defense Expenses incurred defending the Underlying Lawsuit erode the Policy's Self-Insured Retention." (Order Granting Partial J. on the Pleadings at 10, ECF No. 42.) That 'Self-Insured Retention" limit, which functions much like a typical insurance deductible, establishes that US Sugar is responsible for the first $1,000,000 of its Defense Expenses. (*Id.* at 1-2, 10.) Above that $1,000,000, C&I is responsible for reimbursing US Sugar for any Defense Expenses relating to the Underlying Lawsuit, pursuant to the Court's prior decision. (*Id.*) The Court reserved ruling on what qualified as Defense Expenses in this order. (*Id.* at 10 n.5.)

Next, C&I moved for partial summary judgment, seeking to have the Court exclude certain categories of fees and costs from US Sugar's Defense Expenses—namely, expenses from either before the Underlying Lawsuit or after the filing of the second amended complaint in the Underlying Lawsuit. (Def.'s Mot. Partial Summ. J. at 1-3, ECF No. 53.) The Court found that "(1) US Sugar is not entitled to reimbursement of its pre-suit expenses for "scientific and legal work" related to its practice of pre-harvest sugarcane burning; but (2) C&I is responsible for all of US Sugar's Defense Expenses incurred above the $1,000,000 Self-Insured Retention, even after the filing of the second amended complaint." (Order Granting in Part Def.'s Mot. Partial Summ. J. at 12, ECF No. 76.) Once again, the Court made "no observations regarding the actual value of US Sugar's incurred Defense Expenses" in ruling on C&I's motion. (*Id.* at 6 n.7.)

Now, both US Sugar and C&I seek a final determination of the amount of US Sugar's Defense Expenses. Neither party disputes the veracity of the figures that US Sugar has submitted in support of its motion. Nor does either party dispute that US Sugar has actually paid that amount to its attorneys and experts in the Underlying Lawsuit. Both parties agree that US Sugar's actual payments to its attorneys and experts in the Underlying Lawsuit total $9,464,929.51. (Pl.'s Stmt. Material Facts ("SOMF") ¶ 10, ECF No. 115; Def.'s Resp. SOMF ¶ 10, ECF No. 121.) And both parties agree that, following the Court's entry of partial judgment on the pleadings in favor of US Sugar on the Policy's meaning, C&I paid $2,072,453.32 to US Sugar as payment of its Defense Expenses. (Pl.'s SOMF ¶ 12; Def.'s Resp. SOMF ¶ 12; Def.'s SOMF ¶ 5, ECF No. 133.)

The parties' only remaining dispute is the determination of the actual value of US Sugar's Defense Expenses that C&I must pay. US Sugar argues that C&I owes the entirety of its Defense Expenses under Florida law and the Court's prior orders. (Pl.'s Mot. Summ. J. at 6.) C&I, on the other hand, argues that it may only ever be held liable for US Sugar's <u>reasonable</u> attorneys' fees and costs as Defense Expenses in the Underlying Lawsuit based on Florida law. (Def.'s Mot. Summ. J.

at 2-3.) According to C&I, it has already paid US Sugar the "reasonable" value of its Defense Expenses, so it owes US Sugar nothing more under Florida law. (*Id.*)

### 2. Legal Standards

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).

### 3. Analysis

Applying Florida law, the Court ultimately determines that US Sugar is entitled to reimbursement of its reasonable attorneys' fees and costs as its Defense Expenses, and US Sugar's claimed attorneys' fees and costs are

unreasonably high.[2] Accordingly, the Court applies an across-the-board cut to US Sugar's requested hours, as an hour-by-hour analysis would inappropriate here due to the particularly voluminous billing records at issue. The Court addresses each issue in turn below.

### A. US Sugar may only recover its reasonable attorneys' fees and costs in the Underlying Action under Florida law.

US Sugar argues that it is entitled to full reimbursement of its Defense Expenses, no questions asked, under Florida law and the Court's prior orders in this matter. (Pl.'s Mot. Summ. J. at 6.) In support of its claim, US Sugar cites to *Continental Casualty Company v. City of Jacksonville*, an unpublished 2008 Eleventh Circuit opinion. (*Id.* (citing 283 F. App'x 686, 689-90 (11th Cir. 2008)).)

C&I counters that *Continental Casualty* is inapposite to the circumstances at hand because the Eleventh Circuit there "held that the insurer had *not* breached its duty to defend" and because US Sugar takes that case's reference to "full reimbursement of the insured's litigation costs" out of context. (Def.'s Resp. at 9.) Instead, C&I asserts in its own motion, Florida law still requires courts to analyze defense expenses where an insurer breaches its duty to defend to determine whether the insured's incurred attorneys' fees and costs are reasonable. (Def.'s Mot. Summ. J. at 2-3); *Carrousel Concessions, Inc. v. Fla. Ins. Guar. Ass'n*, 483 So. 2d 513, 517 (Fla. 3d DCA 1986) ("If [the insured] is able to establish that the defense supplied by [the insurer] was inadequate and that it was reasonable for [the insured] to engage the services of its own attorneys, [the insured] will be entitled to recover all reasonable costs and attorneys' fees incurred at the trial level."); *see also KB Home Orlando LLC v. Mid-Continent Cas. Co.*, No. 19-1573-CIV, 2022 WL 4354845, at *1 (M.D. Fla. Sept. 20, 2022) ("Only reasonable attorney's fees are recoverable as damages when an insurer breaches its duty to defend.").

Upon review of both Eleventh Circuit and Florida case law, the Court confirms that US Sugar is only entitled to its reasonable attorneys' fees and costs incurred as Defense Expenses in the Underlying Lawsuit. *Carrousel Concessions*, 483 So. 2d at 517; *KB Home Orlando*, 2022 WL 4354845, at *1. As C&I observes, *Continental Casualty's* reference to "full reimbursement" would necessarily be taken out of context—and directly contradictory to clear Florida law—to mean that the Court would be required to award US Sugar every penny it paid in attorneys' fees and costs in the Underlying Action, without regard to reasonableness. 283 F. App'x at 689-90. The Florida case on which *Continental Casualty* relied for its "full reimbursement" language dealt with a case where the

---

[2] The Court is bound by Florida law in this diversity action. *See, e.g., Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983).

insurer sought to reassert its right to control the insured's defense, not with an award of fees and costs. *BellSouth Telecommunications, Inc. v. Church & Tower of Fla., Inc.*, 930 So. 2d 668, 672 (Fla. 3d DCA 2006). In fact, in *BellSouth*, the Third District Court of Appeal affirmatively cited to *Carrousel Concessions* and further confirmed that any award of fees and costs for breach of the duty to defend must be reasonable:

> In *Carrousel Concessions* . . . we reversed the summary judgment, finding that, if [the insured] established that the defense supplied by [the insurer] was inadequate and that it was reasonable for [the insured] to engage its own attorneys, [the insured] would be entitled to recover all **reasonable** costs and attorneys' fees incurred at the trial level, as well as its appellate expenses.

*Id.* In other words, Florida courts use the terms "full reimbursement" and "reasonable" interchangeably with reference to an award of attorneys' fees and costs to an insured as damages for breach of the insurer's duty to defend. *Id.*

Based on clear Florida law, then, the Court may only award US Sugar its reasonable attorneys' fees and costs (less the $1,000,000 Self-Insured Retention and the $2,072,453.32 that C&I has already reimbursed US Sugar for) as its damages in this matter.[3] Therefore, the Court now turns to an analysis of US Sugar's claimed fees and costs for reasonableness.

### B. The Court, as an expert on fees, may determine what percentage of US Sugar's claimed fees and costs are reasonable as a matter of law.

The Court may properly apply its expertise to determine the reasonableness of US Sugar's requested attorneys' fees and costs in this matter, and it need not rely on the testimony of other experts to do so. *Laney v. BBB Logistics, Inc.*, 844 F. App'x 203, 210 (11th Cir. 2021) ("It is long settled in this circuit that when a court is determining the reasonableness of attorneys' fees, the court, as a matter of law, is itself an 'expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses.'") (quoting

---

[3] As C&I observes, nothing in the Court's prior orders requires the Court to award US Sugar the full amount of its claimed damages without a review for reasonableness. (Def.'s Resp. at 5-7.) First, the Court expressly stated in both prior orders in this matter that it was making no findings with regard to the value of US Sugar's claimed Defense Expenses. (Order Granting Partial J. on the Pleadings at 10 n.5; Order Granting in Part Def.'s Mot. Partial Summ. J. at 6 n.7.) Second, even if the Court had somehow stated US Sugar was entitled to an uncritical affirmation of its Defense Expenses, the Court could not continue to hold to that position in light of the case law addressed in this order.

*Norman v. Hous. Auth. of Montgomery,* 836 F.2d 1292, 1303 (11th Cir. 1988)). Because the award of "all reasonable costs and attorneys' fees" as damages for breach of the duty to defend is a substantive provision of Florida law, the Court may consider US Sugar's expert witness fees here, although it would normally be limited by 18 U.S.C. § 1821 in assessing expect witness costs on an attorneys' fees award. *BellSouth*, 930 So. 2d at 672; *see also Kivi v. Nationwide Mut. Ins. Co.,* 695 F.2d 1285, 1289 (11th Cir. 1983) (observing that district courts may consider expert witness fees as costs where the "reimbursement . . . is a substantive requirement of [state] law.").

### C. The Court finds US Sugar's reasonable fees and costs in the Underlying Action to be $6,529,005.82.

C&I seeks an across-the-board reduction of US Sugar's fees, arguing that some of US Sugar's attorneys' rates were unreasonably high, that there was significant duplication of effort by the multiple law firms that US Sugar engaged, that US Sugar paid for the attorneys' fees of uninsured co-defendants in the Underlying Lawsuit, and that US Sugar's expert witness costs were "not necessary to defend the Underlying Lawsuit." (Def.'s Mot. Summ. J. at 6-20.) US Sugar (aside from arguing that it should be awarded the full value of the attorneys' fees and costs it actually incurred) responds that this is an excessive, unnecessary reduction of attorneys' and experts' work that was actually necessary to resolve the Underlying Lawsuit and for which US Sugar actually paid. (Pl.'s Resp. at 15-20.)

#### (1) The breakdown of US Sugar's claimed $9,464,929.51 in attorneys' fees and costs.

The Court observes at the beginning that US Sugar's full incurred costs of $9,464,929.51 are not reasonable. The Court will address why with respect to each law firm and the amount of work it performed in greater detail below. First, however, the Court will review what attorneys' fees and costs US Sugar is claiming for its defense of the Underlying Lawsuit.

Through its General Counsel, US Sugar submits a breakdown of the attorneys' fees and costs it paid to six separate law firms and to its expert witnesses as third-party vendors. (L. Kurtz Decl. ¶¶ 14-15, Exs. A, B, ECF No. 114-1.) The bills of those six law firms—Gunster, Mayer Brown, Holland & Knight, Litchfield Cavo, Haliczer Pettis & Schwamm ("Haliczer"), and Clare Locke—comprise $5,655,698.22 of US Sugar's claimed expenses. (*Id.* ¶ 14, Ex. A.) The bills of US Sugar's third-party experts—consisting of nine different vendors—comprise $3,809,231.29 of its claimed expenses. (*Id.* ¶ 15, Ex. B.)

US Sugar submits $2,770,758.60 in attorneys' fees billed by Gunster from June 2019 through February 2022. (*Id.* ¶ 14, Ex. A.) Gunster acted both as local counsel in the Underlying Lawsuit and also generally handled "factual discovery and investigation." (Pl.'s Mot. Summ. J. at 9.) C&I takes issues with Gunster's bills as being largely redundant with Mayer Brown, arguing that "either Gunster or Mayer Brown could have handled this matter [the Underlying Lawsuit] on its own." (Def.'s Mot. Summ. J. at 10-12.) C&I points to several Gunster attorneys who billed over 1,000 on the Underlying Lawsuit and the fact that Gunster was supposed to be "local counsel" but clearly ended up working as the "lead" firm on the case as reasons why Gunster's bills are not reasonable. (*Id.*; Def.'s SOMF Ex. J, ECF No. 138-9 (sealed).)

US Sugar also submits $2,794,555.07 in attorneys' fees billed by Mayer Brown from June 2019 through February 2022. (L. Kurtz Decl. ¶ 14, Ex. A.) Mayer Brown primarily handled the drafting of legal arguments and communicating with the plaintiffs' counsel in the Underlying Lawsuit. (Pl.'s Mot. Summ. J. at 9.) C&I raises more arguments against Mayer Brown's bills. First, C&I asserts that Mayer Brown's hourly rates are unreasonable in the Southern District of Florida. (Def.'s Mot. Summ. J. at 8-10.) Specifically, C&I directs the Court's attention to the rates of three Mayer Brown attorneys: $1,058 per hour, $995 per hour, and $932 per hour, respectively. (*Id.* at 8.) Second, C&I makes the same arguments regarding redundant or duplicative work by both Gunster and Mayer Brown, arguing that both firms performed an excessive amount of work that overlapped on drafting the motions to dismiss in the case, among other issues. (*Id.* at 10-12.)

US Sugar additionally submits $90,384.55 in attorneys' fees billed by Holland & Knight, Litchfield Cavo, Haliczer, and Clare Locke during the Underlying Lawsuit.[4] Holland & Knight "provided advice on public records requests" and responded to "requests made by universities in connection with the Underlying Lawsuit." (Pl.'s Mot. Summ. J. at 10.) Litchfield Cavo assisted with "day-to-day litigation matters" and reviewed "joint defense issues" and motion drafts. (*Id.* at 9-10.) Haliczer worked on "public strategy" and reviewed motion drafts. (*Id.* at 9.) Clare Locke evaluated allegations in the Underlying Lawsuit and worked on "discovery responses, settlement discussions, and document production." (*Id.* at 10.) C&I objects to paying any of these firms' fees on several grounds. First, C&I argues that all of the work performed by these firms is duplicative of the work performed by Gunster and Mayer Brown. (Def.'s Mot.

---

[4] Holland & Knight billed $3,263.75 in July 2021, Litchfield Cavo billed $30,250.20 from October 2019 through February 2022, Haliczer billed $51,744.35 from June 2019 through February 2022, and Clare Locke billed $4,856.25 from September through December 2021. (L. Kurtz Decl. ¶ 14, Ex. A.)

Summ. J. at 12.) Second, C&I argues that much of these firms' work was unnecessary to US Sugar's successful defense of the Underlying Lawsuit. (*Id.*) Third, C&I argues that Litchfield Cavo's fees were incurred on behalf of an uninsured codefendant in the Underlying Lawsuit, so those fees are not reimbursable as Defense Expenses. (*Id.* at 13.)

Finally, US Sugar submits $2,945,262.99 in expert witness costs from nine separate vendors engaged between June 2019 and February 2022.[5] (L. Kurtz Decl. ¶ 15, Ex. B.) These experts reviewed the factual basis for the plaintiffs' allegations in the Underlying Lawsuit, investigated potential damages to the plaintiffs, and collected and analyzed data relevant to the claims in the Underlying Lawsuit in preparation for a potential trial. (Pl.'s Mot. Summ. J. at 10-12.) C&I objects to paying any portion of the expert witness costs, asserting that the experts "were not necessary or directly related to the defense of the [U]nderlying [L]awsuit." (Def.'s Mot. Summ. J. at 17.) C&I's objections are based on two primary arguments. First, because the plaintiffs dismissed the Underlying Lawsuit after being shown "air monitoring data that was collected and analyzed **before** the Underlying Lawsuit incepted," C&I argues that no expert analysis of air monitoring data or other data was necessary after the Underlying Lawsuit was filed. (*Id.* at 18.) Second, because the Underlying Lawsuit did not extend beyond the motion-to-dismiss stage, C&I argues that no expert witnesses were "necessary"—rather, all of the legal work on the Underlying Lawsuit related purely to legal arguments on motions to dismiss. (*Id.* at 18-19.)

Based on its objections, C&I contends that an across-the-board reduction of US Sugar's submitted attorneys' fees by 50%, and a complete denial of the expert witness costs, is appropriate. (Def.'s Mot. Summ. J. at 14-15.) While the Court agrees that US Sugar's total attorneys' fees and costs incurred in defending the Underlying Lawsuit were unreasonably high, C&I asks for too steep a reduction given the circumstances.

### (2) US Sugar's sought attorneys' fees and costs must be reduced by an across-the-board cut of the submitted bills.

Now, the Court will review each category of attorneys' fees and costs individually to approach how best to apply an across-the-board cut. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) ("When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested

---

[5] Although the billing summaries that US Sugar submits for its third-party vendors total $3,809,231.29, US Sugar affirmatively states that it has been reimbursed for $863,968.30 of those invoices and is not seeking double reimbursement here, so the Court considers only the amount of third-party invoices for which US Sugar has not been reimbursed separately. (L. Kurtz Decl. ¶ 17.)

hours with an across-the-board cut.").[6] "In determining what is a "reasonable" hourly rate and what number of compensable hours is "reasonable," the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974)." *Id.* Those twelve factors are the following: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v*, 488 F.2d at 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). While these factors have been expressly established for the determination of attorneys' fees and costs awards using the lodestar method to award fees and costs to a prevailing party, they are largely applicable here, and the Court will approach its reasonableness analysis with these factors in mind.[7]

     The Court finds that the factors, considered as a whole, support a reduction in US Sugar's claimed attorneys' fees and costs, but not the greater than 50% reduction that C&I seeks. The time and labor required to handle the Underlying Lawsuit was, despite C&I's assertions to the contrary, quite high. Although the Underlying Lawsuit never proceeded beyond the motion to dismiss stage, it carried on for over two-and-a-half years. The Underlying Lawsuit involved multiple amended complaints and motions to dismiss. While the questions involved were not novel, they did involve a level of difficulty greater than a standard negligence or strict liability lawsuit, as the Underlying Lawsuit alleged extensive environmental harm and personal injuries purportedly related to US Sugar's pre-harvest sugarcane burning. Because the case involved a specialty area of the law (environmental law), an above-average level of skill was necessary to handle the Underlying Lawsuit. While attorneys working on the Underlying Lawsuit would not have been precluded from accepting any other case work, its

---

[6] The Court clarifies that it is not conducting an hour-by-hour review. US Sugar's defense of the Underlying Lawsuit involved over seventy timekeepers who billed over 9,000 hours. If there is ever an instance where an hour-by-hour review would "impractical," it is in a case such as this one. But, because of the piecemeal nature by which C&I objects to US Sugar's expenses, the Court will also address the reasonableness of US Sugar's claimed fees in a similar manner. Therefore, the Court will review reasonableness based on each law firm's submitted billing, and then will separately handle the expert witness costs.

[7] The Court observes, however, that factors 5, 6, 7, 11, and 12 do not appear to have any particular applicability in this case, where the fees were incurred on an hourly rate, and neither party raises issues relating to time limitations, professional relationships extending beyond the bounds of the Underlying Lawsuit, or similar awards or outcomes in other cases.

complex nature would doubtlessly have limited their availability to engage in other work. The amount of money potentially involved, and the results that US Sugar's counsel obtained, undoubtedly weigh in US Sugar's favor. This was a bet-the-company litigation, and US Sugar prevailed. The nature of the case similarly would have demanded experienced and well-regarded attorneys with some level of expertise in environmental issues.

Nevertheless, a proper consideration of these factors also demonstrates that US Sugar's incurred attorneys' fees and costs were not wholly reasonable. First, Gunster and Mayer Brown clearly engaged in duplicative work, with both firms taking overlapping roles on the review and investigation of the pleadings and on legal briefing relating to the pleadings. (Def.'s Mot. Summ. J. at 11; Def.'s SOMF Ex. J; Pl.'s Mot. Summ. J. at 9; L. Kurtz Decl. ¶ 14, Ex. A.) A reduction of both Gunster's and Mayer Brown's fees for duplicative work is therefore appropriate. *Norman*, 836 F.2d at 1301 (observing that "'excessive, redundant or otherwise unnecessary' hours should be excluded from the amount [of attorneys' fees] claimed."). Therefore, the Court will apply an across-the-board cut of 20% to Gunster's fees and an across-the-board cut of 30% to Mayer Brown's fees. *Norman*, 836 F.2d at 1301; *Golf Clubs Away*, 2012 WL 2912709, at *4. Those reductions result in a reasonable fee of $2,216,606.88 for Gunster's work and $1,956,188.55 for Mayer Brown's work.

The Court does not find it appropriate, however, to reduce the rates charged by Mayer Brown's senior attorneys. First, this is not a contingency fee case where US Sugar's attorney must come up with a reasonable rate after the fact upon an award of fees—US Sugar (and, presumably, other clients) actually paid the fees that Mayer Brown's attorneys charged. Second, the South Florida legal market has changed drastically in the last several years. Miami in particular has developed into a national legal market. That top-end firms will be able to charge national hourly rates in South Florida, now, is an inevitable consequence of that development. The Court therefore will not consider a rate reduction for the three Mayer Brown attorneys.

Next, the Court finds that the work performed by the supporting law firms—Holland & Knight, Litchfield Cavo, Haliczer, and Clare Locke—to be either unnecessary or wholly duplicative of Gunster's and Mayer Brown's work on the Underlying Lawsuit. Holland & Knight's work on public records requests and responses to university inquiries relating to the suit was not necessary for US Sugar to defend itself in the Underlying Lawsuit. *Norman*, 836 F.2d at 1301 (noting that "excessive or otherwise unnecessary hours under the rubric of 'billing judgment' means that a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis."). Litchfield

Cavo's assistance with routine matters and reviewing of motion drafts was wholly duplicative of other firms' work. *Id.* Its work was also not recoverable as it was performed on behalf of an uninsured co-defendant, which US Sugar has not contested. Haliczer's work on public relations strategies was also wholly unnecessary to the defense of the Underlying Lawsuit. *Id.* And Clare Locke's work on document production and factual investigation was wholly duplicative of Gunster's work. *Id.* The Court therefore finds the entirety of the $90,384.55 those firms billed to be unreasonable.

Finally, the Court cannot agree with C&I that all of US Sugar's expert witness fees are unrecoverable. C&I's positions—that US Sugar did not need to continue to analyze air monitoring and other data after the initiation of the lawsuit because pre-suit data ultimately convinced the plaintiffs to dismiss the case, and that US Sugar did not need expert involvement because the case never reached the discovery stage—are untenable. As an initial matter, C&I gave up its right to control US Sugar's defense as a matter of law when it refused to defend US Sugar under the Policy. *BellSouth*, 930 So. 2d at 672 (holding that insurer "forfeited its right to defend" the insured where the insurer "wrongfully refused to defend instead of defending with a reservation of rights."). US Sugar was faced with an existential threat in the Underlying Lawsuit, which was a true "bet-the-company" litigation if there ever was one. To assert that US Sugar should have avoided engaging expert witnesses simply because the case never truly entered the discovery stage (even though it ground on for two-and-a-half years) is absurd. US Sugar undoubtedly needed to prepare for the distinct possibility that the case would enter a fulsome discovery phase. And C&I's insistence that US Sugar did not need to continue to supplement its air monitoring data (and other data) because the plaintiffs were persuaded to dismiss by the pre-suit data is similarly absurd. US Sugar would undoubtedly have been required to provide post-suit data in discovery. Such data could easily have changed the trajectory of the case—for better or worse. While US Sugar clearly hoped that providing the pre-suit data would have the effect it ultimately did, it had no way of knowing that at the time. Rather, US Sugar had to prepare to continue to litigate the Underlying Lawsuit for the duration. Therefore, the Court cannot agree that a total denial of expert witness costs is appropriate here.

Nevertheless, the Court does not find a total award of the experts' incurred costs to be reasonable, either. US Sugar does not provide detailed arguments surrounding the appropriateness of the individual experts' bills. (Pl.'s Mot. Summ. J. at 10-12.) US Sugar does provide a summary of the general tasks each expert vendor was engaged to perform, supported by its General Counsel's declaration. (Pl.'s Mot. Summ. J. at 10-12, L. Kurtz Decl. ¶ 15, Ex. B.) C&I, however, does present (under seal) examples of experts' billing records that are unrelated to the Underlying Lawsuit or unnecessary to the successful resolution of the Underlying

Lawsuit—namely, work done for public relations rather than for the Underlying Lawsuit. (Def.'s Resp. at 14-16, ECF No. 136 (sealed).) From the Court's review of those records, it appears that some of the experts' incurred costs were not necessary and that the experts also had some overlap in their responsibilities. Therefore, the Court finds that a 20% across-the-board cut to the experts' costs is appropriate here. *Kivi*, 695 F.2d at 1289. This results in reasonable expert witness costs of $2,356,210.39.

Taking all of the reductions together, the Court finds US Sugar's reasonable attorneys' fees and costs to be $6,529,005.82. This results in roughly a 24% overall reduction of US Sugar's requested attorneys' fees and costs (which was $9,464,929.51). Once the Court takes into account the $1,000,000 Self-Insured Retention in US Sugar's Policy and C&I's prior payment of $2,072,453.32, the Court finds that C&I still owes US Sugar $3,456,552.50 in Defense Expenses from the Underlying Lawsuit. Therefore, the Court grants in part and denies in part both parties' motions for summary judgment, finds US Sugar's reasonable, reimbursable Defense Expenses in the Underlying Lawsuit to have been $6,529,005.82, and finds that C&I owes US Sugar a balance of $3,456,552.50 in damages.

### 4. Conclusion

For the reasons stated above, the Court **grants in part** and **denies in part** both US Sugar's motion for summary judgment (**ECF No. 116**) and C&I's motion for summary judgment (**ECF No. 134**) and finds the following as a matter of law: (1) US Sugar is entitled to reimbursement of its reasonable attorneys' fees and costs as its Defense Expenses in the Underlying Action in excess of the Self-Insured Retention amount; (2) US Sugar is therefore entitled to $6,529,005.82 in Defense Expenses from the Underlying Action; (3) because C&I has already reimbursed $2,072,453.32 of US Sugar's Defense Expenses and US Sugar's Defense Expenses are subject to the Policy's $1,000,000 Self-Insured Retention, US Sugar is entitled to judgment in the amount of $3,456,552.50; and (4) US Sugar may raise its reserved requests for pre- and post-judgment interest and its reasonable attorneys' fees and costs in this action by separate motion. US Sugar is **directed** to submit such a motion, should it desire to do so, no later than **August 18, 2023**. The Court will separately enter judgment, as required by Federal Rule of Civil Procedure 58, after resolution of US Sugar's motion for pre- and post-judgment interest and attorneys' fees and costs.

The status conference scheduled for **August 9, 2023**, at 9:00 A.M., is **canceled**. All currently pending motions are **denied as moot**. This matter shall remain **open** pending the potential resolution of a motion by US Sugar for pre- and post-judgment interest and its reasonable attorneys' fees and costs in this action.

**Done and ordered** in Miami, Florida, on August 2, 2023.

_____
Robert N. Scola, Jr.
United States District Judge