UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

UNITED STATES SUGAR
CORPORATION,

 *Plaintiff*,

v.

COMMERCE AND INDUSTRY
INSURANCE COMPANY,

 *Defendant*.

_____/

CASE NO.: 1:22-cv-21737-RNS

## U.S. SUGAR'S MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiff, United States Sugar Corporation ("U.S. Sugar"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 15 and 16, hereby moves for leave to amend its operative Complaint (ECF No. 1) to incorporate counts for Statutory Bad Faith under Fla. Stat. § 624.155 and Common Law Bad Faith, and states as follows:

### INTRODUCTION

This Court's August 2, 2023 order on the parties' cross motions for summary judgment resolved an insurance coverage dispute that dragged on for over four years. During that time, Commerce and Industry Insurance Company ("AIG") improperly refused to defend U.S. Sugar, abandoned its policyholder in the face of a "bet the company" class action, and prolonged litigation in a coverage case that this Court effectively decided at the outset. Through repeated "legal gymnastics" and "hair splitting" (as expressly acknowledged by the Court), AIG has created a bad faith record of its own accord. AIG must now answer for that conduct.

Now that the Court has ruled that U.S. Sugar was entitled to $6,529,005.82 after AIG insisted it owed nothing, this case is no longer about coverage. It is about the fact that AIG's claim handling and litigation conduct are indicative of a general, institutional business practice that the

insurer regularly adopts to improperly deny claims and leverage policyholders into accepting less than what is actually owed.  Florida's Department of Financial Services maintains a repository of Civil Remedy Notices ("CRNs"), filed by consumers, to place insurers on notice of conduct that violates Florida law.  An insurer has sixty days after receipt of a notice to cure the cited violations to avoid statutory bad faith exposure.  *See* Fla. Stat. § 624.155(3)(c).  The complaints against AIG and its affiliated companies are not isolated  incidents.  Policyholders across the state of Florida have filed *well over a thousand CRNs* against these AIG entities, the overwhelming majority of which *were never cured*.  This lawsuit seeks to hold AIG accountable for the misconduct underlying the CRNs and the countless other claims that are improperly denied in violation of the policy and Florida law.

Just like the numerous other policyholders who filed a CRN citing insurer misconduct at the hands of AIG companies, so too did U.S. Sugar long before it commenced a coverage action.  U.S. Sugar filed a CRN pursuant to Fla. Stat. § 624.155 on July 17, 2020 and provided the insurer multiple opportunities to reverse course.  Instead, AIG refused and doubled down on its incorrect coverage position.  Florida law recognizes that a claim for statutory bad faith becomes ripe once there has been a determination of liability and damages.  Likewise, a common law bad faith claim becomes ripe once the insured's breach of contract claim is resolved.  On August 2, 2023, the Court decided the parties' cross motions for summary judgment and held as a matter of law that U.S. Sugar is "entitled to $6,529,005.82 in Defense Expenses from the Underlying Action" and "judgment in the amount of $3,456,552.50."  ECF No. 145 at 12.  It is accordingly undisputed that coverage was available under the policy and that the Court's order has established the full amount of coverage owed to U.S. Sugar.

U.S. Sugar previously moved to amend its complaint to include its bad faith claims (ECF No. 83), which the Court denied without prejudice on the basis that "Florida courts generally hold that a full determination of damages must be made on a breach of contract claim before bad-faith claims are ripe against the insurer." ECF No. 117 at 1. The Court accordingly held that U.S. Sugar could "seek amendment once any bad faith claims it desires to raise have become ripe." *Id*. at 2. The Court's August 2, 2023 order establishes the full amount of coverage owed to U.S. Sugar and it cannot be disputed that U.S Sugar's bad faith claims are ripe for prosecution. A final determination on U.S. Sugar's pending motion for attorneys' fees and expenses in the coverage action (ECF No. 151) is not required for the Court to grant the requested relief. If the Court were to conclude otherwise, U.S. Sugar would request that the Court permit amendment upon resolution of that motion, which will serve the interest of judicial economy and efficiency given the Court's familiarity with the litigation to date.

## FACTUAL BACKGROUND

The bad faith record in connection with U.S. Sugar's insurance claim is one of AIG's own making over the last four years. While the detailed history is alleged in U.S. Sugar's proposed First Amended Complaint, a reprise of the timeline is warranted in connection with this Motion.[1]

U.S. Sugar was sued in the District Court for the Southern District of Florida on June 4, 2019, by putative class plaintiffs in connection with U.S. Sugar's state-sanctioned practice of pre-harvest sugarcane burning (the "Underlying Lawsuit"). U.S. Sugar dutifully provided notice to its insurer, AIG, who did not dispute that the allegations gave rise to potential liability for the very

---

[1] Attached to this Motion as **Exhibit "A"** is a copy of U.S. Sugar's proposed First Amended Complaint. U.S. Sugar has omitted the exhibits to the proposed amended complaint to avoid an unnecessarily voluminous filing on the Court's docket.

3

types of bodily injury and property damage covered by U.S. Sugar's insurance policy. Instead, despite issuing a typical duty to defend policy, AIG took the position that U.S. Sugar's defense expenses did not count at all toward the $1 million self-insured retention. Rather, it incorrectly and improperly maintained that only actual indemnity payments by U.S. Sugar – such as a settlement or judgment – could reduce the retention.

U.S. Sugar subsequently exchanged numerous correspondence with AIG to demonstrate that the insurer's coverage position was contrary to the policy's plain language. AIG refused to amend its position despite its own policy provisions, U.S. Sugar's explanations, or the Civil Remedy Notice filed with the Florida Department of Financial Services on July 17, 2020 to perfect U.S. Sugar's right to bring a future statutory bad faith claim under Fla. Stat. § 624.155. That notice expired without AIG taking any action to cure the alleged violations.[2]

AIG abandoned U.S. Sugar, took no part in the Underlying Lawsuit, and left U.S. Sugar to shoulder the eight-figure burden of attorneys' fees and costs that should have been covered by AIG. After successfully defending the Underlying Lawsuit, U.S. Sugar was forced to commence the instant lawsuit to establish AIG's obligation to reimburse U.S. Sugar's defense expenses. Because AIG's position was that U.S. Sugar's defense expenses could not exhaust the $1 million self-insured retention, U.S. Sugar promptly filed a Motion for Partial Judgment on the Pleadings to resolve this dispute. ECF No. 13. On December 2, 2022, the Court decided this question as a matter of law in U.S. Sugar's favor and held that AIG was responsible for U.S. Sugar's defense expenses in excess of the retention. ECF No. 42. Any reasonable insurer at this juncture would have accepted that its coverage determination was wrong and simply agreed to pay the defense expenses incurred by U.S. Sugar. But not AIG. Instead, the insurer took the Court's order as an

---

[2] A copy of U.S. Sugar's Civil Remedy Notice is attached as **Exhibit "B."**

invitation to manufacture a litany of new "coverage defenses" that AIG had never previously raised at any point. Rather than honor its contractual obligations, AIG opted to advance any conceivable excuse to avoid paying.

Three-and-a-half years after U.S. Sugar submitted its insurance claim, AIG filed a Motion for Partial Summary Judgment raising a novel theory for the first time. ECF No. 53. Having been told by the Court that its original basis for denying a defense was incorrect, AIG's position now was that it had no duty to defend U.S. Sugar against two of the amended complaints in the Underlying Lawsuit. AIG's latest position was a convenient excuse to continue the coverage fight until it all unraveled at the seams with the sworn deposition testimony of its own corporate representative. Despite arguing on paper to the Court that AIG had no duty to defend U.S. Sugar against part of the Underlying Lawsuit, the insurer's hand-picked corporate representative admitted the exact opposite under oath. ECF No. 68.

After denying any responsibility to pay anything under the insurance policy for nearly four years – and even over four months after the Court's prior ruling – AIG finally agreed to accept liability and make a partial payment to U.S. Sugar. AIG wrote a letter to U.S. Sugar on March 17, 2023 (ECF No. 75-1) in which it admitted responsibility for U.S. Sugar's Defense Expenses throughout the Underlying Lawsuit. AIG also agreed to pay (1) $2,421,378.71 for defense expenses and interest in connection with the Underlying Lawsuit, and (2) U.S. Sugar's attorneys' fees and costs in the instant litigation. Approximately two weeks after the insurer conceded liability and damages, the Court issued an order on AIG's Motion for Partial Summary Judgment rejecting the carrier's new coverage position and affirming that AIG had a duty to defend throughout the Underlying Lawsuit. ECF No. 76 (holding that AIG "is responsible for all of U.S. Sugar's Defense Expenses incurred above the $1,000,000 Self-Insured Retention, even after the

filing of the second amended complaint"). In reaching this conclusion, the Court specifically acknowledged that AIG's "hair-splitting" arguments regarding its duty to defend were "exactly the sort of arguments that Florida law seeks to avoid." *Id*. at 12.

Notwithstanding the Court's prior orders, AIG attempted to drag U.S. Sugar (and this Court) through a costly, time-consuming trial in an attempt to prove that AIG did not owe a dollar more than what it had already agreed to pay. It was not until U.S. Sugar moved for leave to file a summary judgment motion to address yet another eleventh-hour coverage defense that trial was put on hold. ECF Nos. 101, 112. After AIG was also granted leave to file its own cross motion for summary judgment, the Court resolved the breach of contract dispute by order dated August 2, 2023. ECF No. 145. The Court determined the full amount of coverage owed by AIG to U.S. Sugar and held, as a matter of law, that U.S. Sugar was entitled to $6,529,005.82 in Defense Expenses from the Underlying Lawsuit and a judgment in the amount of $3,456,552.50 (after accounting for the self-insured retention and amounts already paid by AIG). *Id*. at 12.

The Court's summary judgment order has brought AIG's "legal gymnastics" (ECF No. 76 at 9, n.9) to an end and the insurer's contractual obligations have been determined as a matter of law. U.S. Sugar's bad faith claims are now ripe and U.S. Sugar accordingly requests leave to amend its complaint to (1) recover the compensatory and consequential damages caused by AIG's bad faith conduct, and (2) pursue a punitive award to hold AIG accountable and deter similar future behavior against the public.

**MEMORANDUM OF LEGAL AUTHORITY**

**I.      Legal Standards Governing Florida Bad Faith Claims and Leave to Amend**

      A.      Florida Law Governing Statutory and Common Law Bad Faith Claims

For a statutory bad faith claim to accrue under Fla. Stat. § 624.155, a policyholder must allege that a determination of the insurer's liability has been made. *Tropical Paradise Resorts, LLC v. Clarendon Am. Ins. Co.*, No. 08-60254-CIV, 2008 WL 3889577, at *2 (S.D. Fla. Aug. 20, 2008); *see Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991); *ECB USA, Inc. v. Chubb Ins. Co. of N.J.*, 587 F. Supp. 3d 1205, 1213 n.6 (S.D. Fla. 2021) (explaining that under Florida law, a claim against an insurer for bad faith requires a determination on coverage). A statutory bad faith claim under § 624.155 also requires a determination of the extent of a policyholder's damages. *Homeowners Choice Prop. and Cas. Ins. Co., Inc. v. Kuwas*, 251 So. 3d 181, 184 (4th DCA 2018) ("[T]he determination of the existence of liability and the extent of the insured's damages' are prerequisites to a bad faith action.") (citations omitted).

Similarly, a third-party common law bad faith claim arises once the underlying coverage case is resolved. *Md. Cas. Co. v. Alicia Diagnostic, Inc.*, 961 So. 2d 1091, 1092 (Fla. 1998) ("Under Florida law, it is inappropriate to litigate a bad faith claim against an insurer until after any underlying coverage dispute is resolved."); *see also Caycho v. Am. Sec. Ins. Co.*, No. 8:22-cv-2502, 2023 WL 2799491, at *2 (M.D. Fla. Apr. 6, 2023) (dismissing common law bad faith and statutory bad faith claims against insurers as premature pending the resolution of the insured's breach of contract claim). The policy at issue here is a liability policy such that "this is a third-party claim and is subject to common law bad faith claims." *Formula LLC v. RSUI Indem. Co.*, No. 09-60592-CIV, 2009 WL 2342455, at *2 (S.D. Fla. July 28, 2009) (collecting authority);

*Miami Battery Mfg. Co. v. Boston Old Colony Ins. Co.*, No. 97-3410-CIV, 1999 WL 34583205, at *10 (S.D. Fla. Apr. 28, 1999).

    B.    <u>Motion for Leave to Amend</u>

Scheduling orders are appropriately modified under Federal Rule of Civil Procedure 16(b)(4) "for good cause and with the judge's consent." Once good cause is shown, the court considers whether leave to amend should be granted pursuant to Federal Rule of Civil Procedure 15. *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998). Courts should "freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), and a motion for leave to amend may only be denied in limited circumstances. These include: "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *In re Engle Cases*, 767 F.3d 1082, 1108–09 (11th Cir. 2014). This Court has broad discretion in allowing U.S. Sugar to amend the complaint but, "unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Kaloe Shipping Co. Ltd. v. Goltens Serv. Co., Inc.*, 315 Fed. App'x 877, 879 (11th Cir. 2019) (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988)).

**II.**     <u>**U.S. Sugar May Proceed with its Bad Faith Claims because the Court has Determined the Full Extent of Damages in the Breach of Contract Action and there is No Basis to Deny Leave to Amend**</u>

In its August 2, 2023 order, the Court resolved the entire coverage case as a matter of law and made a full determination of damages on U.S. Sugar's breach of contract claim. ECF No. 145. Specifically, the Court held that U.S. Sugar was entitled to (1) $6,529,005.82 in Defense Expenses from the Underlying Lawsuit, and (2) a judgment in the amount of $3,456,552.50. For a policyholder to proceed with a statutory bad faith claim, the Florida Supreme Court requires that

there be some determination of liability and damages. *See Blanchard*, 575 So. 2d at 1291. Similarly, a common law bad faith claim requires a resolution of the underlying coverage dispute prior to litigating the bad faith claim. *Alicia Diagnostic, Inc.*, 961 So. at 1092. The Court's order leaves no reasonable dispute that these requirements have been met and that U.S. Sugar's bad faith claims are ripe.

Now that U.S. Sugar may pursue its bad faith causes of action, amendment to include these claims is appropriate unless there is undue delay, undue prejudice, or amendment would be futile. *In re Engle Cases*, 767 F.3d at 1108–09. Given that the Court's August 2 order resolved the coverage dispute, U.S. Sugar is entitled to pursue its newly-ripened causes of action.

As a threshold matter, good cause exists for deviating from the prior deadline to amend pleadings because, as the Court previously held, the bad faith claims were not ripe until the Court made a full determination of damages on the breach of contract claim. ECF No. 117; *see Sosa*, 133 F.3d at 1419. Indeed, this was the gravamen of AIG's opposition to U.S. Sugar's initial motion for leave to amend, and all of the authority cited by the insurer now supports U.S. Sugar's right to amend. ECF No. 97 at 7-10. The Court's summary judgment order puts to rest the full amount of coverage owed. Florida courts have held that good cause for amendment exists where, like in the instant case, the facts giving rise to a separate cause of action did not exist or were unknown to the movant until after the expiration of the amendment deadline. *See, e.g., 777 Partners LLC v. Pagnanelli*, No. 20-20172-CIV, 2021 WL 4973507, at *1 (S.D. Fla. June 28, 2021) (granting leave to amend where plaintiffs timely filed a motion to amend after discovering the alleged perjury and facts giving rise to its proposed fraud claim); *Veal v. Crown Auto Dealerships, Inc.*, No. 8:04-CV-323-T-27, 2005 WL 8160209, at *1 (M.D. Fla. May 26, 2005) (granting leave for plaintiffs to add a count for violation of Chapter 634 of the Florida Statutes where it was not until after the

9

expiration of the deadline that plaintiffs learned of a fact giving rise to a separate cause of action); *Kapral v. GEICO Indem. Co.*, No. 8:13-cv-2967, 2015 WL 12838320, at *2 (M.D. Fla. Mar. 3, 2015) (finding good cause for leave to amend complaint to include professional negligence claim where the plaintiff did not obtain evidence supporting the suggested amendment until after the deadline specified in the court's scheduling order).

Now that the Court has determined AIG is liable for breach of the insurance contract and that AIG owes U.S. Sugar $6,529,005.82 in damages, U.S. Sugar's bad faith claims are ripe. ECF Nos. 42, 76, 145. This was not the case as of October 24, 2022 – the deadline to amend the pleadings pursuant to the scheduling order entered in the coverage action. ECF No. 16. Accordingly, U.S. Sugar has established good cause and should be granted leave to amend its complaint.

Moreover, there are no issues of delay, prejudice, or futility that would otherwise prevent amendment at this time.

First, the instant Motion is timely and leave to amend should be granted because, as the Court held, U.S. Sugar could not seek this relief prior to the Court's determination of liability and the extent of damages in the breach of contract action. *See* ECF Nos. 42, 76, 145. As noted above, the statutory and common law bad faith claims that U.S. Sugar now intends to pursue were not ripe until the Court determined AIG's liability for breach of contract and the full extent of damages owed to U.S. Sugar. *See* ECF Nos. 42, 76, 145. U.S. Sugar acted diligently and without delay to draft the proposed First Amended Complaint and file this Motion once the bad faith claims ripened.

Second, AIG will not be unduly prejudiced by the amendment because, among other things, the insurer was already aware that U.S. Sugar would seek to amend its complaint once coverage was established. Indeed, U.S. Sugar's operative complaint expressly alleges that it was "subject

to amendment after a coverage determination is made so U.S. Sugar can seek the statutory bad faith remedies provided under Florida law, including treble damages." ECF No. 1, ¶ 11.  And, U.S. Sugar previously sought to amend its complaint after AIG acknowledged liability and made partial payment for U.S. Sugar's damages in the coverage action.  ECF No. 83.  There is no prejudice to speak of here, as the Court has now resolved the breach of contract case as a matter of law.

All that remains in the coverage case is for the Court to determine the attorneys' fees, expenses, and interest owed to U.S. Sugar as the prevailing party under Fla. Stat. § 627.428.  In this jurisdiction, this remaining task has no bearing on the ripeness of U.S. Sugar's bad faith claims.  When a claim for attorneys' fees derives from remedies available under state law rather than the insurance contract – as is the case here – the damages owed under the contract have been determined regardless of whether the fee motion remains pending:

> [T]he claim for attorney's fees . . . derives from remedies available to successful plaintiffs under state law, rather than from the underlying insurance contract. Accordingly, the damages "covered by the underlying insurance contract" and the damages "owed under the contract" have been determined, regardless of whether a motion for attorney's fees remains pending.

*Law Offices of Lauri J. Goldstein, PA v. Maryland Cas. Co.*, No. 08-14260-CIV, 2009 WL 10666820, at *1 (S.D. Fla. Feb. 12, 2009) (holding the necessary elements for a bad faith claim were present where a claim for attorneys' fees derived from remedies available to successful plaintiffs under state law rather than from the underlying insurance contract).

Lastly, the requested amendment would not be futile considering that the outcome of the coverage case has given rise to bad faith causes of action that U.S. Sugar is entitled to pursue on the merits. As plainly alleged in the First Amended Complaint, AIG's bad faith conduct has caused U.S. Sugar to incur damages beyond those that were recovered or recoverable in the coverage

action that the Court just resolved. *See* FAC, ¶¶ 186, 192. The result ripens a common law bad faith claim (ECF No. 145), and U.S. Sugar separately perfected its right to assert a statutory bad faith claim when its CRN expired without any curative action by AIG. AIG will doubtless argue that its conduct was appropriate at all times and that U.S. Sugar is not entitled to any further recovery. But the fact that the insurer disagrees with the allegations in the amended complaint does not make amendment futile. U.S. Sugar is entitled to pursue its claims on the merits, just as AIG will have an opportunity to argue its case however it deems appropriate once those claims are at issue. U.S. Sugar has demonstrated good cause for the amendment under Rule 16 now that its bad faith claims are ripe and, under the liberal amendment standard of Rule 15, leave should be granted.

## **CONCLUSION**

For all of the foregoing reasons, U.S. Sugar's motion for leave to amend its complaint is timely and proper. No coverage issues remain and U.S. Sugar's statutory and common law bad faith claims are ripe. Moreover, U.S. Sugar has shown good cause for amending the scheduling order to allow leave to amend its complaint because U.S. Sugar could not have asserted its bad faith claims before the October 24, 2022 deadline to amend the pleadings. Now that the Court's summary judgment order has established AIG's liability and the full extent of damages in the coverage action, U.S. Sugar's Motion for Leave to Amend should be granted. The pending motion for attorneys' fees, expenses, and interest has no impact on the ripeness of U.S. Sugar's bad faith claims, and U.S. Sugar may proceed with its amended complaint even if the fee motion remains undecided at the time the instant motion is fully briefed. If the Court concludes for any reason that it must first rule on the fee motion before the bad faith claims can proceed, U.S. Sugar requests that this motion be promptly granted upon entry of an order resolving the fee dispute.

WHEREFORE, Plaintiff United States Sugar Corporation respectfully requests that the Court enter an Order granting this Motion for Leave to Amend Complaint and permit U.S. Sugar to file its proposed First Amended Complaint on the docket, together with any further relief this Court deems equitable, just, and proper.

Dated: December 18, 2023

HUNTON ANDREWS KURTH LLP

/s/ *Walter J. Andrews*
Walter J. Andrews
Fla. Bar No. 84863
Cary D. Steklof
Fla. Bar No. 86257
Adriana A. Perez
Fla. Bar No. 1003306
Hunton Andrews Kurth LLP
333 S.E. 2nd Ave., Suite 2400
Miami, Florida 33131
Tel: (305) 810-6407
Facsimile: (305) 810-2460
wandrews@HuntonAK.com
csteklof@HuntonAK.com

*Attorneys for Plaintiff United States Sugar Corporation*

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(3), the undersigned hereby certifies that counsel for U.S. Sugar has conferred with counsel to AIG regarding the relief sought in this motion, and that AIG opposes the relief sought.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 18, 2023, a true and correct copy of the foregoing was served by transmission of Notice of Electronic Filing generated by CM/ECF on all counsel or parties of record.

/s/ *Walter J. Andrews*
Hunton Andrews Kurth LLP