**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

**CASE NO. 22-cv-21737-SCOLA/GOODMAN**

UNITED STATES SUGAR CORPORATION,

       Plaintiff,

v.

COMMERCE AND INDUSTRY INSURANCE
COMPANY,

       Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART**
**U.S. SUGAR'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT**

In this coverage dispute action, United States Sugar Corporation ("Plaintiff" or "U.S. Sugar") filed a Motion for Leave to Amend the Complaint to assert statutory and common law bad faith claims against its former commercial liability insurer, Commerce and Industry Insurance Company ("Defendant" or "C&I"). [ECF No. 171].[1] Defendant filed a response [ECF No. 174] opposing the amendment and Plaintiff filed a reply [ECF No. 175].

---

[1]      As discussed in more detail below, this is Plaintiff's second motion for leave to amend its Complaint to assert bad faith claims against Defendant.

Senior United States District Judge Robert N. Scola, Jr. referred the motion to the Undersigned "to be heard and determined, consistent with 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of the Local Magistrate Judge Rules." [ECF No. 176]. At Plaintiff's request [ECF No. 177], the Undersigned held a hearing on the instant motion and on Plaintiff's motion for attorney's fees.[2] [ECF Nos. 178; 195].

For the reasons outlined in greater detail below, the Undersigned **grants in part and denies in part** Plaintiff's motion.

## I.    Background

Plaintiff filed the instant action stemming from Defendant's failure and refusal to pay any amounts borne by U.S. Sugar in connection with a putative class-action concerning U.S. Sugar's practice of pre-harvest sugarcane burning, *Clover Coffie, et al. v. Fla. Crystals Corp., et al.*, Case No. 9:19-cv-80730-DMM (the "Underlying Lawsuit"). [ECF No. 1, ¶ 102]. The Complaint [ECF No. 1] alleged a single count for breach of contract.

---

[2]    On August 2, 2024, the Undersigned denied as moot Plaintiff's fees motion in light of the parties' Notice of Settlement [ECF Nos. 198, ¶ 3 ("The settlement in principle resolves the full extent of U.S. Sugar's damages in the pending coverage case, including (1) the amount awarded to U.S. Sugar by the Court in its Order on Cross-Motions for Summary Judgment (ECF No. 145), and (2) the amount sought by U.S. Sugar in its Verified Motion for Attorneys' Fees and Expenses and Pre- and Post-Judgment Interest (ECF No. 151)."); 199]. The parties' settlement, however, did not resolve the instant motion for leave to amend. [ECF No. 198, ¶¶ 5–6].

Shortly thereafter, Plaintiff moved for a judgment on the pleadings [ECF No. 13]. Judge Scola granted in part the motion, "find[ing] that the Policy's[3] Self-Insured Retention [('SIR')] limit for general liability . . . [was] eroded by Defense Expenses."[4] [ECF No. 42, p. 10 (footnotes added)].[5] Thus, "C&I had a duty to defend U.S. Sugar in the Underlying Lawsuit once U.S. Sugar's Defense[ ] Expenses exceeded the [SIR] limit." *Id.* at 7. The Court made no ruling "regarding the legitimacy of any of U.S. Sugar's claimed attorneys' fees and costs incurred in the Underlying Litigation" or on "whether any of C&I's defenses to coverage [were] applicable." *Id.* at 10, n.5.

Defendant later moved for partial summary judgment, seeking to limit the scope of U.S. Sugar's Defense Expenses. [ECF No. 53]. Judge Scola granted in part and denied in part the motion. [ECF No. 76]. He agreed with Defendant that "based on the terms of the Policy and on Florida law, that U.S. Sugar [was] not entitled to reimbursement for any expenses incurred before the filing of the Underlying Lawsuit because those expenses [did] not qualify as 'Defense Expenses' and were not submitted to C&I for approval." *Id.*

---

[3]     The Policy is attached as an exhibit to the Complaint. [ECF No. 1-5].

[4]     The term "Defense Expenses" is defined by the Policy as "'payment(s) allocated to the investigation, settlement or defense of a specific loss, claim or Suit.'" *Id.* at 7 (quoting Endorsement 26 (cleaned up)).

[5]     *See also* [ECF No. 76, p. 1 (discussing ECF No. 42 and noting that "[t]he Court previously ruled on U.S. Sugar's motion for judgment on the pleadings that U.S. Sugar is entitled to reimbursement of its Defense Expenses[.]")].

at 5–6 (footnote omitted). In making this ruling, Judge Scola noted that "to qualify as Defense Expenses, the pre-suit investigatory expenses must have been related to a 'specific' incident or lawsuit," as opposed to being "related to [U.S. Sugar's] desire to ensure it was generally prepared for *any* lawsuit related to its practice of pre-harvest sugarcane burning." *Id.* at 7 (emphasis added).

Judge Scola also ruled that these pre-suit expenses were not recoverable under the Policy because U.S. Sugar "did not comply with the Policy's requirement that U.S. Sugar must obtain C&I's 'consent' before incurring any expense." *Id.* (citing Policy § VI(G)(4)). Thus, Judge Scola determined that "U.S. Sugar [was] not entitled to reimbursement of its pre-suit expenses for 'scientific and legal work' related to its practice of pre-harvest sugarcane burning." *Id.* at 8. The Court did not rule on whether U.S. Sugar was entitled to Defense Expenses (specifically related to the Underlying Lawsuit) incurred before the June 14, 2019 tender letter. *Id.* at 8, n.8.

He also ruled that "C&I was still required to defend U.S. Sugar in the Underlying [Laws]uit after the filing of the second (and the third) amended complaint, so C&I [was] obligated to reimburse all of U.S. Sugar's Defense Expenses above the $1,000,000 [SIR]." *Id.* at 6 (footnotes omitted); 12 ("C&I is responsible for all of U.S. Sugar's Defense Expenses incurred above the $1,000,000 [SIR], even after the filing of the second amended complaint[.]").

4

In response to Judge Scola's summary judgment ruling, Plaintiff filed its *first* motion to amend the Complaint to allege statutory (Fla. Stat. § 624.155) and common law bad faith claims. [ECF Nos. 83; 83-1]. Judge Scola denied the motion without prejudice, finding that U.S. Sugar's bad faith claims were not yet ripe. [ECF No. 117, p. 1 ("Florida courts generally hold that a full determination of damages must be made on a breach of contract claim before bad-faith claims are ripe against an insurer." (citations omitted))].

In his Order, Judge Scola stated that "[w]hile the Court ha[d] decided the issue of liability, **it ha[d] not resolved the extent of U.S. Sugar's damages**" and, at Plaintiff's request, had "reopened the dispositive motions deadline to address this very issue. . . . Therefore, it would be premature for U.S. Sugar to amend its complaint to add bad faith claims while the extent of U.S. Sugar's damages have yet to be determined." *Id.* at 2 (emphasis added).

Both parties moved for summary judgment, seeking a final determination of Defense Expenses incurred in the Underlying Lawsuit. [ECF Nos. 116; 134]. In its motion, Plaintiff argued that it was entitled to recover all of its Defense Expenses. [ECF No. 116]. Defendant asserted that because it had already paid U.S. Sugar a "reasonable" amount of its Defense Expenses, it owed U.S. Sugar nothing further. [ECF No. 134].

Judge Scola granted in part and denied in part the motions. [ECF No. 145]. He found that while "U.S. Sugar [was] entitled to reimbursement of its *reasonable* attorneys'

fees and costs as its Defense Expenses," the amounts sought were "unreasonably high." *Id.* at 3–4 (footnote omitted; emphasis added),

Judge Scola made significant reductions to the $9,464,929.51 in attorneys' fees and costs sought by Plaintiff. For instance, he found that a portion of the work performed by the six law firms who represented Plaintiff in the Underlying Lawsuit was duplicative. *Id.* at 10–11. He also found that some of the work for which Plaintiff sought reimbursement "was not necessary" to U.S. Sugar's defense. *Id.* He further excluded work done on behalf of an uninsured co-defendant. *Id.* at 11.

The Court reduced some of U.S. Sugar's expert witness fees because "some of the experts' incurred costs were not necessary" and there was "some overlap in their responsibilities." *Id.* at 12. In doing so, the Court noted that Defendant had "present[ed] (under seal) examples of experts' billing records that [were] unrelated to the Underlying Lawsuit or unnecessary to the successful resolution of the Underlying Lawsuit—namely, work done for public relations rather than for the Underlying Lawsuit." *Id.* at 11–12.

In sum, the Court determined that U.S. Sugar's reasonable attorney's fees and costs incurred in the Underlying Lawsuit totaled $6,529,005.82. *Id.* at 6. From this amount, the Court deducted $3,072,453.32 (the $1,000,000.00 SIR plus $2,072,453.32 already paid by Defendant). *Id.* at 5. Thus, it determined that "C&I still owe[d] U.S. Sugar $3,456,552.50 in Defense Expenses from the Underlying Lawsuit." *Id.* at 12.

The $3,456,552.50 award has not yet been reduced to a judgment. Instead, the Court's Order states that it "will separately enter judgment, as required by Federal Rule of Civil Procedure 58, after resolution of U.S. Sugar's motion for pre- and post-judgment interest and attorneys' fees and costs." *Id.*

The Court's Order allowed U.S. Sugar to file a fees motion and set a deadline for doing so. *Id.* at 12. Plaintiff timely filed a verified motion for attorneys' fees and expenses and pre- and post-judgment interest. [ECF No. 151]. It also filed the instant motion seeking to amend the Complaint to assert statutory and common law bad faith claims against Defendant. [ECF No. 171]. The Undersigned held a hearing on both motions. [ECF Nos. 178; 195].

The parties subsequently participated in a mediation with Michael Hanzman, Esq. [ECF Nos. 190; 196; 197]. Although the parties were unable to reach a resolution that day, Mr. Hanzman held the mediation open so that the parties could continue their settlement discussions. [ECF No. 198, ¶¶ 1–2]. Ultimately, the parties reached a settlement in principle, which, among other things,

> resolve[d] the full extent of U.S. Sugar's damages in the pending coverage case, including (1) the amount awarded to U.S. Sugar by the Court in its Order on Cross-Motions for Summary Judgment (ECF No. 145), and (2) the amount sought by U.S. Sugar in its Verified Motion for Attorneys' Fees and Expenses and Pre- and Post-Judgment Interest (ECF No. 151).

*Id.* at ¶ 3.[6]

At the same time, the parties agreed to U.S. Sugar "retain[ing] any and all causes of action for bad faith" and asked the Court "to resolve U.S. Sugar's Motion for Leave to Amend [ECF No. 171]." *Id.* at ¶¶ 5–6.

## II.  Applicable Legal Standard

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleadings only with the opposing party's written consent or the court's leave," and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The discretion given to judges in granting these types of motions weighs in favor of granting them such that "[u]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Epsey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

Absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.[,] the leave sought should, as the rules require, be 'freely given.'" *Foman*

---

[6]     In light of the Notice of Settlement [ECF No. 198], the Undersigned denied as moot Plaintiff's fees motion [ECF No. 199].

*v. Davis*, 371 U.S. 178, 182 (1962); *see also Regions Bank v. Commonwealth Land Title Ins. Co.,* No. 11-23257-CIV, 2012 WL 5410948, *2 (S.D. Fla. Nov. 6, 2012) (Scola, J.) ("While this standard is lenient, 'a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the [opposing party], and futility of the amendment.'" (quoting *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003))).

Leave to amend should be freely given when it is in the interests of justice. "[D]istrict courts should generally exercise their discretion in favor of allowing amendments to reach the merits of a dispute." *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1000 (11th Cir. 2021).

## III.   Analysis

Plaintiff once again seeks leave to amend its Complaint [ECF No. 1] to add both statutory and common law bad faith claims. [ECF Nos. 171; 171-1]. Defendant opposes the motion (and asks for a *with-prejudice* denial) on the following grounds: (1) futility of amendment; (2) the alleged insufficiency of Plaintiff's Civil Remedy Notice ("CRN"); and (3) the motion is premature because the alleged bad faith claims are not ripe. [ECF No. 174, pp. 1–2]. The Undersigned will address each argument in turn, albeit in a different order than raised in the briefs.

### A.     Sufficiency of Plaintiff's CRN under Section 624.155

C&I argues that Plaintiff's CRN "fail[s] to provide notice as required by Section 624.155, Florida Statutes." [ECF No. 174, p. 1]. According to Defendant, the CRN is insufficient because it: (1) "did not mention that any monies were due and owing, which means that C&I was not on notice that any payment could cure the violation" and never informed Defendant that the SIR had been met; (2) failed to provide a dollar amount for Defense Expenses; and (3) included extra-contractual damages in the form of attorney's fees. [ECF No. 174, pp. 15–17]. Thus, Defendant contends that Plaintiff has failed to comply with a condition precedent to bringing a bad faith claim under Section 624.155. *Id.* at 17.

Plaintiff maintains that it has complied with Section 624.155(3)'s requirements because "under Florida law, a CRN need not contain a specific cure amount." [ECF No. 175]. Alternatively, Plaintiff states that "[e]ven if such a requirement existed (it does not), U.S. Sugar's CRN told AIG precisely what it needed to do in order to cure." *Id.* at 2. Plaintiff also argues, in a footnote,[7] that even if the CRN were technically insufficient,

---

[7]     Plaintiff improperly raises this argument in a footnote. "[A]ddressing legal arguments in footnotes is an incorrect method to present substantive arguments on the merits or otherwise request relief from the Court." *Sony Music Ent. v. Vital Pharms., Inc.*, No. 21-22825-CIV, 2022 WL 4771858, at *13 (S.D. Fla. Sept. 14, 2022). However, because Defendant also commits this transgression, *see, e.g.*, [ECF No. 174, p. 11 n.3], the Undersigned will consider the arguments.

Plaintiff should still be permitted to amend its pleading because Defendant "has actual notice of U.S. Sugar's intent to bring a statutory bad faith action and the basis for same." *Id.* at n.3. Plaintiff additionally asserts that Defendant waived this argument by failing to raise it in its September 11, 2020 response to the CRN. *Id.* & n.1.

On July 17, 2020, U.S. Sugar filed a CRN with the Florida Department of Financial Services. [ECF Nos. 171, p. 4; 171-2]. Plaintiff's CRN contained the following cure provision: "The insurer can cure these violations by[:] (1) acknowledging that the Policy's [SIR] is eroded by U.S. Sugar's Defense Expenses (as defined by the Policy), and (2) reimbursing U.S. Sugar for its attorneys' fees incurred in addressing AIG's incorrect coverage position." [ECF No. 171-2, p. 5].

"Filing a CRN is a condition precedent for bringing a bad faith action against an insurer under Florida law." *Royal Marco Point I Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 3:07 CV 16, 2010 WL 2757240, at *3 (M.D. Fla. July 13, 2010) (citing Fla. Stat. § 624.155(3)(a)). To comply with this requirement:

> The notice is to be given on a form provided by the Florida Department of Financial Services and must "state with specificity" the following: the statutory provisions allegedly violated by the insurer; the facts and [circumstances] giving rise to the violation; the names of the individuals involved; reference to specific policy language relevant to the violation; and a statement why notice is being given.

*Id.* (citing Fla. Stat. § 624.155(3)(b)).

Plaintiff's CRN is sufficient. "So long as an insurer is on notice of the CRN's bad faith claims through common sense, and not through a guessing game, a court may find a CRN satisfactory." *Est. of Jorge Luis Arroyo, Jr. v. Infinity Indem. Ins. Co.*, No. 15-20548-CIV, 2016 WL 4401051, at *3 (S.D. Fla. Aug. 18, 2016) (internal citations and quotation marks omitted). Here, the CRN provides sufficient notice to Defendant. Additionally, as Plaintiff points out, Defendant did not reject the CRN as vague and instead chose to **respond** to it. *Id.* ("Though not determinative, a court may use the [insurer]'s acceptance as evidence to support the conclusion that the CRN was adequately specific.").

Moreover, "[t]he case law on the subject is clear that 'a specific cure amount is not necessary to validate a [CRN].'" *Royal Marco Point I Condo. Ass'n, Inc.*, 2010 WL 2757240, at *3 (finding that CRNs "provided sufficient detail so as to comply with § 624.155, even though they lacked a specific cure amount"); *Hunt v. State Farm Fla. Ins. Co.*, 112 So. 3d 547, 550 (Fla. 2d DCA 2013) ("On its face, the statute does not require a specific cure amount. We are hesitant to impose a requirement beyond that directed by the legislature."). Accordingly, the Undersigned will not deny Plaintiff's leave request on this ground.

### B.    Ripeness

Defendant also argues that leave to amend should be denied because Plaintiff's bad faith claims are not yet ripe. [ECF No. 174, pp. 17–20]. Specifically, it states that these

claims have not accrued because the Court has not entered a final judgment in Plaintiff's favor. *Id.* at 18–19. Defendant contends that Plaintiff's bad faith claims are premature because the parties have not had an opportunity to consider an appeal of the coverage action. *Id.* at 19. At the same time, C&I asserts that "[it] does not contend that it intends to appeal any part of this Court's decisions in the coverage action, but *both parties* must have the opportunity to do so before any bad faith case commences." *Id.* at 20, n.5 (emphasis in original).

Plaintiff contends that a final judgment and the exhaustion of an appeal "[are] not required where an insurer can no longer challenge its coverage obligations." [ECF No. 175, p. 4]. It notes that Defendant "has already paid money which it previously contested was owed,. . . [it] has given no indication that it will appeal[,]" and "has represented in its opposition to the instant motion that it may *not* institute an appeal." *Id.* (emphasis in original).

Plaintiff distinguishes the cases cited in Defendant's response on the ground that in those cases, "coverage had not yet been determined or could still be challenged," and here, Defendant "admitted coverage and liability at its 30(b)(6) deposition and [ ] made a partial payment of covered losses under the [P]olicy midway through the coverage litigation." *Id.* at 5. Thus, "the issue of coverage will not and cannot be the subject of an appeal in this case." *Id.*

"Under Florida law, a claim for bad faith against an insurer does not accrue and, therefore, is premature until insurance coverage has been determined." *Isler v. Bankers Life & Cas. Co.*, No. 1:10-CV-00178-MP-GRJ, 2011 WL 8622764, at *5 (N.D. Fla. Dec. 19, 2011), *report and recommendation adopted*, No. 1:10CV178-MP-GRJ, 2012 WL 3289719 (N.D. Fla. Aug. 13, 2012) (citing *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1276 (Fla. 2000)); *see also Blanchard v. State Farm Mut. Auto Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991) ("[A]n insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith . . . can accrue.").

Here, Judge Scola entered a summary judgment Order awarding damages to Plaintiff. [ECF No. 145]. Additionally, the parties recently reached a settlement in principle which, among other things,

> resolve[d] the full extent of U.S. Sugar's damages in the pending coverage case, including[:] (1) the amount awarded to U.S. Sugar by the Court in its Order on Cross-Motions for Summary Judgment (ECF No. 145), and (2) the amount sought by U.S. Sugar in its Verified Motion for Attorneys' Fees and Expenses and Pre- and Post-Judgment Interest (ECF No. 151).

[ECF No. 198, ¶ 3].

Judge Scola indicated in his summary judgment Order that he "will separately enter judgment, as required by Federal Rule of Civil Procedure 58, after resolution of U.S. Sugar's motion for pre- and post-judgment interest and attorneys' fees and costs." [ECF

14

No. 145, p. 12]. As noted above, that motion has been resolved by the parties' agreement. Accordingly, there has been both a determination of liability and the extent of damages owed under the Policy.

Defendant's no-opportunity-to-appeal argument is undercut by the fact that the parties have recently resolved in a "settlement in principle [ ] the full extent of U.S. Sugar's damages in the pending coverage case, including [the summary judgment award and Plaintiff's fees motion]." [ECF No. 198, ¶ 3]. Thus, it is unclear what ruling Defendant would appeal, if it were inclined to do so (which it expressly states it is not).

"To pursue a statutory bad faith claim, the following prerequisites must be met: '(1) [a] determination of the insurer's liability for coverage; (2) [a] determination of the extent of the insured's damage; and (3) the required notice must be filed under [S]ection 624.155(3)(a).'" *Shady Grove Pentecostal Holiness Church v. Church Mut. Ins. Co., S.I.*, No. 5:23-CV-119-MCR/MJF, 2023 WL 11763153, at *2 (N.D. Fla. Dec. 1, 2023) (quoting *Apostolic Pentecostal Church of Panama City, Inc. v. Scottsdale Ins. Co.*, No. 5:21-CV-32-MW/MJF, 2021 WL 4144775, at *3 (N.D. Fla. Apr. 9, 2021)). Here, all three conditions have been met. Therefore, Plaintiff's bad faith action is ripe.

### C.     Alleged Futility of Amendment

C&I also argues that permitting U.S. Sugar to amend its pleading to assert statutory and common law bad faith claims would be futile because the proposed amended complaint:

> (a) [sic] fails to allege any bad faith damages recoverable under Section 624.155, Florida Statutes; (2) asserts statutory violations of Section 626.9541(1)(i)(2) and 626.9541(1)(i)(3)(b), Florida Statutes, that cannot be established based on the allegations in the proposed [a]mended [c]omplaint; and (3) asserts a bad faith common law claim unrecoverable by Plaintiff as a matter of law.

[ECF No. 174, p. 1].

In its reply, Plaintiff maintains that Defendant cannot meet its burden of demonstrating that the proposed amendment is "clearly insufficient or frivolous on its face." [ECF No. 175, p. 2 (citing *Van Cleve v. Ross*, No. 20-23611-CIV, 2020 WL 13413755, at *1 (S.D. Fla. Dec. 28, 2020) (Scola, J.))].[8] It also accuses Defendant of "tr[ying] to prematurely litigate its bad faith liability and thus avoid the searching inquiry into its practices which will readily prove U.S. Sugar's case." *Id.*

---

[8]     The Undersigned uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

### 1.      Count I: Statutory Bad Faith

Plaintiff's proposed amended complaint alleges that Defendant violated Florida's bad faith statute, Fla. Stat. § 624.155, by making misrepresentations prohibited by sections 626.9541(1)(i)(2) and (1)(i)(3)(b). [ECF No. 171-1, ¶ 180].

Section 626.9541(1)(i)(2) provides that it is bad faith to make "[a] material misrepresentation . . . to an insured . . . for the purpose and with the intent of effecting settlement of such claims, loss, or damage under . . . [the] policy on less favorable terms than those provided in . . . [the] policy[.]" Fla. Stat. § 626.9541(1)(i)(2). Section 626.9541(1)(3)(b) states that it is bad faith to "misrepresent[ ] pertinent facts or policy provisions relating to coverages at issue" "with such frequency as to indicate a general business practice[.]" Fla. Stat. § 626.9541(1)(3)(b).

### a)      Misunderstanding vs. Material Misrepresentation

Defendant argues that "Plaintiff's allegations are insufficient to support bad faith misrepresentation claims under Section[s] 626.9541(1)(i)(2) and 626.9541(1)(i)(3)(b)[.]" [ECF No. 174, p. 9]. According to Defendant, "[t]he allegations of the proposed [a]mended [c]omplaint do not support that C&I misrepresented any Policy provisions and, at best, Plaintiff's allegations merely support that C&I misunderstood the interactions between the provisions – none of which supports a claim for bad faith." *Id.*

It construes Plaintiff's statutory bad faith claim as being based on Defendant's mere "misunderstandings of the Pollution Exclusion and [SIR]" and notes that:

> [t]he Eleventh Circuit, in the context of Section 626.9541(1)(i)(2), explained that the wrong prohibited by the statute is not an insurance company advancing a legal theory that would limit liability but rather a "company's *lying* about what its policy provides as to the limits of protection available to its insured."

*Id.* (quoting *Davis v. Travelers Indem. Co. of Am.*, 800 F.2d 1050, 1053 (11th Cir. 1986) (emphasis in Response)).

Plaintiff responds that "U.S. Sugar *did* allege that [Defendant] lied about what the [P]olicy provides by making representations to U.S. Sugar regarding the available coverage and contradicting these representations in its 30(b)(6) deposition." [ECF No. 175, p. 6 (citing ECF No. 171-1, ¶¶ 67–70; 101–05 (emphasis in Reply))].

The proposed amended complaint pleads more than a mere misunderstanding of the Policy, and it supports Plaintiff's material misrepresentation claim:

> 2.      During the claims process, **C&I repeatedly misrepresented the plain terms of its policy in an effort to avoid providing the defense owed to its insured, U.S. Sugar**. Indeed, C&I abandoned its insured, despite its policy requiring it to provide a defense in covered lawsuits.
>
> ***
>
> 6.      Early in the coverage suit, this Court ruled that despite C&I's arguments, the [P]olicy provided coverage for U.S. Sugar's [D]efense [E]xpenses, and that U.S. Sugar's reading of the [P]olicy was correct.
>
> 7.      Rather than recognize the error of its repeated coverage denials, **C&I doubled down and manufactured several new purported reasons to deny**

18

**coverage, repeatedly misrepresenting the [P]olicy terms and coverage** at issue to both U.S. Sugar and the Court. Each time, the Court disagreed with C&I and reiterated that coverage was owed.

***

41.     C&I did not dispute that the 2015–2016 insurance policy had been triggered by the Underlying Lawsuit's allegations of bodily injury and property damage.

42.     Rather, in that letter, **C&I misrepresented the applicable policy terms concerning the [SIR]** in order to avoid coverage.

***

66.     **C&I misrepresented coverage by insisting that Defense Expenses do not erode the SIR and in denying coverage based on language that C&I knew or should have known did not apply.** C&I's position on the interpretation of the Policy is not unique to U.S. Sugar, but is also applicable to similarly situated insureds as will be demonstrated by discovery in this action.

***

69.     In C&I's October 3, 2019 letter, Margaret Churchill, the Complex Director of AIG, on behalf of C&I, wrote that C&I "has no duty to defend U.S. Sugar in the Lawsuit." Oct. 3, 2019 Letter from M. Churchill to W. Andrews, attached as Exhibit "C." However, at her deposition, **Ms. Churchill admitted that C&I had a duty to defend U.S. Sugar in the lawsuit.** Churchill Dep. 88:9-23, attached as Exhibit "D."

70.     In its February 11, 2020 letter, C&I's attorney Matt Schroeder, on behalf of C&I, stated that C&I "maintains the coverage positions set forth in Ms. Churchill's October 3, 2019 letter." In this letter, Mr. Schroeder also wrote that "Defense Expenses do not erode the applicable Policy's [SIR]s." Feb. 11, 2020 Letter from M. Schroeder to C. Steklof, attached as Exhibit "E." Once again, **Ms. Churchill contradicted this statement in her deposition when she took the position that C&I had a duty to defend U.S. Sugar in the lawsuit**. Churchill Dep. 88:9-23, attached as Exhibit "D."

19

***

71.     Additionally, in its June 15, 2020 letter, in response to U.S. Sugar's counsel's letter regarding C&I's coverage position, C&I's attorney Matt Schroeder, on behalf of C&I, again stated that C&I "maintains the coverage positions set forth in Ms. Churchill's October 3, 2019 letter" and that "Defense Expenses do not erode the applicable Policy's [SIR]s." June 15, 2020 Letter from M. Schroeder to C. Steklof, attached as Exhibit "F." Again, **Ms. Churchill admitted this was a misrepresentation during her deposition when she testified that C&I had a duty to defend U.S. Sugar in the lawsuit**. Churchill Dep. 88:9-23, attached as Exhibit "D."

***

101.     Through the Rule 30(b)(6) deposition testimony of Margaret Churchill – the same claim handler who improperly denied a defense at the outset – **C&I made numerous admissions directly contrary to the positions set forth in its summary judgment briefing. This demonstrated that both the briefing and earlier coverage letters contained material misrepresentations about coverage**.

[ECF No. 171-1, ¶¶ 2, 6, 7, 41, 42, 66, 69–71, 101 (emphasis added)].

Accordingly, the Undersigned will not deny Plaintiff's request for leave to amend on the ground that no material misrepresentations were pled in the proposed amended complaint [ECF No. 171-1].

### b)     Purpose of the Misrepresentations

Defendant further argues that "Plaintiff fails to allege that C&I made any supposed misrepresentations '*for the purpose and with the intent* of effecting settlement . . . on less favorable terms than those provided in, and contemplated by, such contract or

policy.'" [ECF No. 174, p. 10 (quoting Fla. Stat. § 626.9541(1)(i)(2) (emphasis in Response))].

Moreover, it notes that:

> Plaintiff's only allegation regarding purpose and intent **wrongly contends** that "[t]he Court's December 2, 2022 order [ECF No. 42] established that C&I (1) made material misrepresentations to [Plaintiff] under the Policy for the purpose and with the intent of effecting settlement of [Plaintiff's] claim on less favorable terms than those provided in, and contemplated by, the Policy, and (2) misrepresented pertinent insurance policy provisions relating to the coverages at issue." . . . The Court's Order did no such thing; instead, the Court agreed with Plaintiff's legal theory with no mention of misrepresentations or any indication of the same.

*Id.* (emphasis added).

Thus, Defendant argues that "Plaintiff's allegations are plainly insufficient to support that C&I made any supposed misrepresentations *'for the purpose and with the intent'* as required by Section 626.9541(1)(i)(2) to support such a claim." *Id.* (emphasis in Response). Per Defendant, this alleged "failure to support [a] claim under Section 626.9541(1)(i)(2) [also] dooms [Plaintiff's] 'general business practice' claim under Section 626.9541(1)(i)(3)(b)." *Id.*

Plaintiff points out that Judge Scola rejected Defendant's reading of the Policy when he determined that "U.S. Sugar's interpretation [of the Policy] is the correct one." [ECF No. 175, p. 5 (quoting [ECF No. 42, p. 7])]. It also notes that "[Defendant's] corporate

designee testified that [it] asserted a coverage position it knew to be incorrect, and in doing so minimized its own liability to avoid coverage for its insured." *Id.* at 6 n.7.

Even if Defendant is correct that Plaintiff reads too much into Judge Scola's Order [ECF No. 42], this argument still fails because Plaintiff *does* plead in the proposed amended complaint the purpose of the misrepresentation:

> 180.   As a result of the foregoing and incorporated allegations, whether taken separately or together, **C&I violated Fla. Stat. § 624.155(1)(a)(1) and the incorporated provisions of Fla. Stat. § 626.9541(1)(i) by**:
>
>> a.   A material misrepresentation made to an insured or any other person having an interest in the proceeds payable under such contract or policy, **for the purpose and with the intent of effecting settlement of such claims, loss, or damage** under such contract or policy **on less favorable terms** than those provided in, and contemplated by, such contract or policy. Fla. Stat. § 626.9541(1)(i)(2).

[ECF No. 171-1, ¶ 180 (emphasis added)]. For the limited purposes of the instant motion, which is a motion for leave to amend (and not a motion to dismiss), the Undersigned finds that the proposed amended complaint sufficiently pleads the reason for the alleged misrepresentation.

### c)   General Business Practice

Next, Defendant argues that Plaintiff's Section 626.9541(1)(i)(3)(b) claim -- which asserts "that C&I purportedly is 'misrepresenting pertinent facts or insurance policy provisions' 'with such frequency as to indicate a general business practice'" -- fails because:

> To establish a general business practice, Plaintiff is required to, among other things, show numerous instances where C&I has committed the same wrongful acts (misrepresentations) alleged in the subject case. *See* Fla. Stat. § 626.9541(1)(i)(3)(b). In the proposed [a]mended [c]omplaint, Plaintiff's only allegations against C&I pertain to Plaintiff's Policy. **A single example is not sufficient to establish a "general business practice."**

[ECF No. 174, pp. at 10–11 (emphasis added)]. Thus, Defendant contends that "Plaintiff [] cannot support a claim under Section 626.9541(1)(i)(3)(b) with allegations concerning Plaintiff's Policy alone." *Id.*

Defendant also argues that Plaintiff cannot rely on CRNs filed by other Florida policyholders to confirm an alleged pattern and practice of making misrepresentations because "CRNs are unsworn, out-of-court allegations setting forth grievances against an insurance company -- i.e.[,] they are, in effect, customer complaints -- and are therefore inadmissible hearsay" and "a CRN merely establishes that an insured was not satisfied at some point during the claim handling process, not that the insurer acted in bad faith." *Id.* at 11–12.

Plaintiff responds that it does not need to establish a general bad faith business practice to pursue a claim under Section 626.9541(1)(i)(3)(b). [ECF No. 175, p. 6 (citing *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1232 (Fla. 2006))]. But, even if Plaintiff's position is correct, Plaintiff is also seeking punitive damages on the ground that Defendant engaged in a pattern and practice of bad faith. [ECF No. 171-1, ¶ 162 ("162. The frequency and nature of AIG's conduct allows for the award of punitive

damages under Florida law to appropriately hold AIG accountable and deter similar behavior in the future.")]. Thus, the proposed amended complaint *does* need to allege a pattern and practice of misrepresentations.

Concerning punitive damages, Plaintiff contends that "the requirement of pleading an indication of a general business practice has clearly been made, in part by alleging that 1,500 CRNs 'exhibit that AIG has a pattern and practice of improperly . . . misrepresenting policy provisions [for] its own benefit'" and cites to a case where the district court denied a motion to dismiss a demand for punitive damages "where [the] insurer['s] business practice was alleged by citing to five CRNs." [ECF No. 175, p. 6 (citing *Sandpiper Isle Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-105-JLB-KCD, 2022 WL 4355736, at *1 (M.D. Fla. Sept. 20, 2022))].

Plaintiff dispatches Defendant's CRN-hearsay argument by noting that "'there is no rule against hearsay statements in pleadings.'" *Id.* at n.8 (quoting *G.T. by & through Tarquinio v. MSC Cruises, S.A.*, 2023 WL 5595896, at *3 (S.D. Fla. July 24, 2023), *report and recommendation adopted sub nom. G.T. v. MSC Cruises, S.A.*, 2023 WL 5559714 (S.D. Fla. Aug. 29, 2023)).

Defendant's hearsay argument is not well taken. First, the case cited by Defendant, *ADT LLC v. Vivint Smart Home, Inc.*, No. 20-CV-23391, 2023 WL 3568117 (S.D. Fla. May 19,

2023) (Goodman, J.), addressed whether customer complaints were admissible *at trial*. It did not concern a motion for leave to amend or even a motion to dismiss.

Second, other courts have relied on CRNs from other insureds in determining whether a plaintiff has plead a *prima facie* bad faith claim. *See, e.g., Sandpiper Isle Condo. Ass'n, Inc.*, 2022 WL 4355736, at *3; *Murphy v. First Protective Ins. Co.*, No. 22-10113-CV, 2023 WL 5095558, at *1 (S.D. Fla. Aug. 9, 2023) (citing *Sandpiper Isle Condo. Ass'n, Inc.*).

Third, Plaintiff does not yet need to prove its allegations with admissible evidence. *Muzaffarr v. Ross Dress for Less, Inc.*, No. 12-61996-CIV, 2013 WL 1890274, at *2 (S.D. Fla. May 7, 2013) ("[T]here is no rule against hearsay statements in pleadings. That's because pleadings, and the allegations within them, are not evidence . . . . Pleadings set forth the allegations that frame the plaintiff's case; they need not prove her case.").

The Undersigned also notes that *none* of the cases cited by Defendant on the sufficiency of pleading a general business practice concerned motions for leave to amend.[9] "The standard for futility requires 'clear insufficiency' or 'frivolity' on the face

---

[9]      *See* [ECF No. 174, pp. 10–12 (citing *Kafie v. Nw. Mut. Life Ins. Co.*, No. 11-21251-CIV, 2011 WL 4499051 (S.D. Fla. Sept. 27, 2011), *on reconsideration*, No. 11-21251-CIV, 2011 WL 13223717 (S.D. Fla. Nov. 29, 2011) (motion to dismiss); *Chicken Kitchen USA, LLC v. Maiden Specialty Ins. Co.*, No. 14-23282-CIV, 2016 WL 3982493 (S.D. Fla. July 22, 2016) (Goodman, J.) (motion to dismiss); *Shannon R. Ginn Const. Co. v. Reliance Ins. Co.*, 51 F. Supp. 2d 1347, 1353 (S.D. Fla. 1999) (summary judgment); *Niagara Distributors, Inc. v. N. Ins. Co. of New York*, No. 10-61113-CIV, 2010 WL 11441045 (S.D. Fla. Oct. 22, 2010), (motion to dismiss); *Gerlach v. Cincinnati Ins. Co.*, No. 2:12-CV-322-FTM-29, 2012 WL 5507463 (M.D. Fla. Nov. 14, 2012) (motion to dismiss); *Fox Haven of Foxfire Condo. IV Ass'n, Inc. v. Nationwide Mut.*

of the pleading[.]" *Van Cleve*, 2020 WL 13413755, at *1. Here, Plaintiff's allegations

concerning a general business practice clear the low hurdle of "'clear insufficiency' or

'frivolity' on the face of the pleading[.]" *Id.*

The proposed amended complaint asserts that "approximately 1,500 notices have

been filed against [Defendant] since 2014" and that:

> **[a] significant number of these CRNs exhibit that [Defendant] has a
> pattern and practice of improperly (1) misrepresenting policy provisions
> to its own benefit**, (2) improperly denying a defense under liability policies
> and/or misrepresenting its defense obligations (3) foisting the monetary
> responsibility and hardship of a defense onto the policyholder when those
> burdens should be borne by the insurer, and (4) when compelled or
> agreeing to reimburse defense costs, insisting on contesting every aspect of
> what is owed from staffing to hourly rates and billing practices. **Indeed, in
> at least one case, [Defendant] apparently** *acknowledged* **its mishandling
> of the claim and agreed to correct the cited violations**.

[ECF No. 171-1, ¶¶ 157–58 (emphasis in original)].

Plaintiff also cites the perceived (mis)handling of its own claim as part of

Defendant's *modus operandi*. *Id.* at ¶¶ 152–53 ("C&I's handling of U.S. Sugar's claim is not

unique to U.S. Sugar or an isolated occurrence. . . . C&I admitted through its corporate

representative, Ms. Churchill, that its claim file – the insurer's contemporaneous record

---

*Fire Ins. Co.*, No. 2:13-CV-399-FTM-29CM, 2015 WL 667935 (M.D. Fla. Feb. 17, 2015)
(summary judgment); *Jablonski v. St. Paul Fire & Marine Ins. Co.*, No. 2:07-CV-00386, 2009
WL 2252094, at *2-3 (M.D. Fla. July 24, 2009) (motion for a new trial))].

of what transpired with the claim and the decision-making process – is consistent with C&I's and AIG's internal policies and standards.").

The Undersigned expects these allegations to be fleshed out through discovery and for Plaintiff to whittle down the 1,500 CRNs to those most analogous to its case. At the leave to amend stage, however, Plaintiff's proposed amended complaint is sufficient to allow it to proceed with its statutory bad faith claim.

### 2.    Count II: Common Law Bad Faith

Defendant argues that Plaintiff's common law bad faith claim, as pled, is futile because "Florida does not recognize common law bad faith claims in the first-party context." [ECF No. 174, p. 13 (citing *Chalfonte Condo. Apartment Ass'n, Inc. v. QBE Ins. Corp.*, 561 F.3d 1267, 1271 (11th Cir. 2009), certified question answered, 94 So. 3d 541 (Fla. 2012))]. It notes that the instant case is a first-party case because it "is an insurance claim brought by an insured, Plaintiff, against its insurer, C&I." *Id.*

Additionally, Defendant maintains that "Plaintiff [ ] cannot assert a third-party bad faith claim because there was no excess judgment or excess Defense Expenses, and Plaintiff's exposure is nullified by the conclusion of the Underlying Lawsuit." *Id.* It also argues that Plaintiff cannot obtain a judgment for both statutory and common law bad faith claims. *Id.* at 14.

Plaintiff responds that because "the [P]olicy here is a liability policy," it "is entitled to assert both common law and statutory bad faith claims." [ECF No. 175, p. 11 (citing *Formula LLC v. RSUI Indem. Co.*, No. 09-60592-CIV, 2009 WL 2342455, at *1 (S.D. Fla. July 28, 2009))].

In *Formula LLC*, the insurer moved to dismiss the plaintiffs' common law and statutory bad faith claims on multiple grounds, including that Florida does not recognize a first-party claim for common law bad faith. 2009 WL 2342455, at *2. In rejecting the argument, this Court reasoned that because the policy at issue was a liability policy, the plaintiffs could proceed with their common law bad faith claim:

> the policy in dispute (titled Directors and Officers Liability Policy, Private Company) is a liability policy intended to protect [the] [p]laintiffs from third-party claims. **Liability policies are synonymous with third-party insurance.** *See* Black's Law Dictionary 873 (9th ed. 2009), insurance ("An agreement to cover a loss resulting from the insured's liability to a third-party . . . . Also termed third-party insurance [.]") (italics in original). **The liability policy at issue required [the] [d]efendant to indemnify [the] [p]laintiff for claims made by third-parties against them, a typical third-party claim.** *See Mercury Ins. Co. [o]f Fl[a.] v. Cooper*, 919 So. 2d 491, 499 n.11 (Fla. 3d DCA 2005) ("Third-party claims, by definition, include persons or entities who are strangers to the contractual relationship between the insured and the carrier.") (citing *Aetna Cas. & Sur. Co. v. Bortz*, 271 So. 2d 108 (Fla. 1972)). **Here, this is a third-party claim and is subject to common law bad faith claims.** *See Macola v. Government Employees Ins*. Co., 410 F.3d 1359 (11th Cir. 2005) (allowing third-party common law bad faith insurance claim).

*Id.* (emphasis added). Nonetheless, the Court abated the plaintiff's bad faith claims because they were premature. *Id.* at 2–3.

28

"In Florida, a **first[-]party bad faith claim** arises when an insured sues its own insurance company for an improper denial of benefits." *Diagnostic Leasing, Inc. v. Associated Indem. Corp.*, No. 8:16-CV-958-T-36TGW, 2017 WL 3635409, at *2 (M.D. Fla. Feb. 10, 2017) (citing *Chalfonte Condo. Apartment Ass'n, Inc.*, 695 F.3d at 1222 (emphasis added)). "'[A] **third-party bad faith claim** is derivative of the insured's claim and exists only to the extent that the insured is exposed to liability beyond her policy limits based on the insurer's failure to properly defend the claim.'" *Id.* (quoting *Helt v. Liberty Ins. Corp.*, 153 F. Supp. 3d 1388, 1390 (M.D. Fla. 2015) (emphasis added; alteration in original)).

"Before section 624.155 was enacted, first[-]party bad faith claims against an insurer were not recognized. The only relief available on the first[-]party claim was a cause of action for breach of contract, unless the insured could allege an independent tort such as fraud or intentional infliction of emotional distress." *Greene v. Well Care HMO, Inc.*, 778 So. 2d 1037, 1042 (Fla. 4th DCA 2001) (citing *Opperman v. Nationwide Mut. Fire Ins. Co.*, 515 So. 2d 263 (Fla. 5th DCA 1987))). To be sure, there are numerous cases dismissing Florida first-party common law bad faith claims. *See, e.g., Denlyn, Inc. v. Aspen Specialty Ins. Co.*, No. 5:19-CV-383-OC-30PRL, 2019 WL 8918567, at *1 (M.D. Fla. Sept. 5, 2019) (dismissing common law bad faith claim "[b]ecause Florida does not recognize a common law bad faith claim in first-party insurance disputes"); *Swanson v. State Farm Mut. Auto. Ins. Co.*, No. 6:19-CV-422-ORL-31-DCI, 2019 WL 1763244, at *2 (M.D. Fla. Apr.

22, 2019) (dismissing first-party bad faith common law claim where "[the plaintiff] ha[d] not cited a single case in which a court has permitted an insured to proceed with [ ] such a claim under Florida law"). But Plaintiff argues its case is different because the Policy at issue is a liability policy and cites to at least one case (*Formula LLC*) which supports its view.

Given this posture, the Undersigned finds that "Defendant['s] arguments are better addressed within the context of an appropriate motion challenging the amended pleading." *Tila-Cohen v. Bryant Sec. Corp.*, No. 22-23942-CIV, 2023 WL 5955691, at *1 (S.D. Fla. Aug. 1, 2023) (granting leave to amend); *see also Acosta v. Smart Alabama, LLC*, No. 1:22-CV-1209-TWT, 2023 WL 2447597, at *4 (N.D. Ga. Mar. 10, 2023) (granting leave to amend where futility arguments "would be best addressed in a fully briefed, renewed motion to dismiss"); *Vibo Corp., Inc. v. U.S. Flue-Cured Tobacco Growers, Inc.*, No. 17-22034-CIV, 2018 WL 11149757, at *2 (S.D. Fla. Jan. 23, 2018) (granting leave to amend where "[t]he Court [could not] determine with incontrovertible certainty that the motion to dismiss would have been granted or that a renewed motion to dismiss [would] be granted" and "[o]nly that level of certainty allows a district court to deny an amendment on futility grounds").

As noted above, "[t]he standard for futility requires 'clear insufficiency' or 'frivolity' on the face of the pleading[.]" *Van Cleve*, 2020 WL 13413755, at *1. Because

Plaintiff has presented at least one case which supports its view that a first-party common law bad faith claim under a liability policy is permissible and given that "[d]istrict courts should generally exercise their discretion in favor of allowing amendments to reach the merits of a dispute,"[10] the more prudent approach is to allow Plaintiff to amend its pleading. Defendant's challenge to Plaintiff's common law bad faith claim is best addressed on a motion to dismiss or at the summary judgment stage (if appropriate).

### 3.   Bad Faith Damages

Defendant argues that "Plaintiff's alleged damages in the proposed [a]mended [c]omplaint are barred by collateral estoppel and *res judicata* because they are contract damages that were or should have been sought in this coverage case." [ECF No. 174, p. 4]. Plaintiff disputes this contention. [ECF No. 175, p. 7 ("U.S. Sugar is not seeking contract damages and is therefore not seeking any amounts duplicative of an award it received in this case.")].

The proposed amended complaint seeks to recover the following damages for both the statutory and common law bad faith claims:

> U.S. Sugar has been damaged by C&I's improper withholding of payment under the Policy. These damages include, but are not limited to: (1) the fees associated with U.S. Sugar's pre-suit efforts to secure a defense in excess of the Policy's SIR[;] (2) the full amount of the Defense Expenses incurred by U.S. Sugar in the Underlying Lawsuit[;] (3) the fees and costs associated with retaining coverage counsel to recover money owed under the Policy[;]

---

[10]     *Pinnacle Advert. & Mktg. Grp., Inc.,* 7 F.4th at 1000.

(4) the fees and costs associated with pursuing the amounts owed to U.S. Sugar as the prevailing party in the coverage litigation under Fla. Stat. § 627.428[;] (5) the fees and costs associated with retaining counsel to prosecute a bad faith case[;] and (6) the loss of interest on each of the foregoing amounts.

[ECF No. 171-1, ¶¶ 186; 190]. According to Defendant, Plaintiff cannot recover *any* of these damages categories and, for this reason, leave to amend should be denied with prejudice. [ECF No. 174, pp. 3–8].

### a)      Pre-Suit Coverage Fees

Defendant argues that Plaintiff's pre-suit efforts to obtain a defense in excess of the SIR are not recoverable "because [those fees] pre-date the filing of the Underlying Lawsuit and the presentation of the insurance claim and, therefore, cannot be the reasonably foreseeable result of a violation of Section 626.9541(1)(i)(2) or 626.9541(1)(i)(3)(b), Florida Statutes, or any other claim of bad faith." *Id.* at 5 (internal quotation marks omitted). In other words, "C&I [ ] could not have caused any damage to Plaintiff before C&I was even put on notice of the Underlying Lawsuit, making this a frivolous damages claim." *Id.*

According to Defendant, these pre-suit fees are not related to any decision by C&I. Rather, "'these expenses were all related to [Plaintiff's] desire to ensure it was generally prepared for any lawsuit related to its practice of pre-harvest sugarcane burning.'" *Id.* (quoting [ECF No. 58, p. 19]).

Defendant also contends that Judge Scola has already determined pre-suit fees and costs are not Defense Expenses under the Policy. *Id.* (citing [ECF No. 76, p. 7]). Thus, Plaintiff cannot seek to recover pre-suit fees. *Id.* It further notes that Judge Scola already determined that Plaintiff was not entitled to pre-suit expenses because "[Plaintiff] did not comply with the Policy's requirement that [Plaintiff] must obtain C&I's 'consent' before incurring any expense." *Id.* (quoting [ECF No. 58, pp. 7–8]).

Plaintiff explains in its reply that the fees sought in this category are "pre-suit fees incurred by U.S. Sugar's *coverage counsel* to respond to [Defendant]'s bad faith denial of coverage, prior to filing the coverage suit" and are "not comprised of the [D]efense [E]xpenses incurred in the [U]nderlying [L]awsuit." [ECF No. 175, p. 7 (emphasis added)]. It argues that "these are cognizable bad faith damages because they are 'reasonably foreseeable' from [Defendant]'s bad faith conduct and U.S. Sugar would not be made whole absent a recovery of these fees." *Id.* at 7–8.

Based on Plaintiff's explanation, the Undersigned finds that this damages category is not frivolous and could be recoverable in a successful bad faith action. "[T]he only limitation on the measure of damages for a violation of Florida's statute against bad faith is the reasonable foreseeability of the damages." *B-K Cypress Log Homes Inc. v. Auto-*

*Owners Ins. Co.*, No. 1:09-CV-211-GRJ, 2012 WL 13018751, at *3 (N.D. Fla. May 31, 2012).[11]

Because a reasonable jury could conclude that pre-suit fees incurred to respond to

Defendant's denial of coverage are both reasonably foreseeable and a result of

Defendant's alleged bad faith coverage decisions, this damages category is not frivolous.

Defendant's argument that Judge Scola previously determined that pre-suit fees

were not Defense Expenses under the *Policy* or were not recoverable because Plaintiff did

not first obtain Defendant's consent before incurring those fees as required by the *Policy*,

does not change this outcome. Damages which are not recoverable under the Policy may

still be recoverable in a bad faith action so long as those damages are a reasonably

foreseeable consequence of the insurer's bad faith actions. *Id.* ("[D]amages recoverable

for bad faith under [S]ection 624.155 must include 'all damages resulting from an

insurer's bad-faith actions' and thus, were not limited to the insured's policy limits."

(quoting *Hollar v. Int'l Banker's Ins. Co.*, 572 So. 2d 937, 939–940 (Fla. 3d DCA 1990)).

---

[11]     *See also Royal Marco Point I Condo. Ass'n, Inc.*, 2010 WL 2757240, at *3 (Section 624.115 "permits recovery for any damages that are a 'reasonably foreseeable' result of the insurer's bad-faith conduct, 'includ[ing] interest, court costs and reasonable attorney's fees incurred in both the bad faith litigation and in the resolution of the underlying claim as a result of the insurer's conduct in delaying payment.'" (citing *Brookins v. Goodson*, 640 So. 2d 110, 113–114 (Fla. 4th DCA 1994)).

### b)      Full Amount of Defense Expenses

Defendant argues that Plaintiff is not entitled to recover "the full amount of the Defense Expenses incurred by U.S. Sugar in the Underlying Lawsuit" because Judge Scola already held that Plaintiff was entitled to Defense Expenses, and that amount consisted of "only [the] 'reimbursement of its reasonable attorneys' fees and costs as its Defense[ ] Expenses from the Underlying [Lawsuit] in excess of the [SIR,]'" and totaled $6,529,005.82. [ECF No. 174, p. 6 (citing [ECF No. 145, pp. 4–12])]. Thus, Defendant argues that collateral estoppel bars Plaintiff from relitigating this amount. *Id.*

Alternatively, Defendant argues that "Plaintiff cannot recover any damages that are themselves unreasonable – and the Court found that these attorneys' fees and costs were unreasonable in rejecting Plaintiff's attempt to recover them under the Polic[y]." *Id.* (citing *Kaplan v. Nautilus Ins. Co.*, No. 1:17-CV-24453-KMM, 2019 WL 12265654, at *7 (S.D. Fla. Nov. 4, 2019), *aff'd*, 861 F. App'x 798 (11th Cir. 2021); *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1222 (Fla. 2006)). It further notes that "Plaintiff [ ] cannot seek double recovery for its damages." *Id.*

Plaintiff argues that because Judge Scola did not award *all* of its requested fees, that it can recover the remainder through its bad faith claims:

> In the breach of contract phase of this case, U.S. Sugar sought to recover as contractual damages its [D]efense [E]xpenses in the underlying cane burning litigation. ECF No. 116. The Court awarded U.S. Sugar 68.98% of its [D]efense [E]xpenses as contractual damages. ECF No. 145, at 12.

35

> **Because the Court necessarily ruled that the remaining 31.02% of U.S. Sugar's [D]efense [E]xpenses [were] not contractual damages (*i.e.*[,] not damages U.S. Sugar is owed under the [P]olicy), U.S. Sugar seeks to recover these extra-contractual damages in its bad faith claims against [Defendant]**. These extra-contractual damages are the reasonably foreseeable result of [Defendant]'s bad faith conduct considering that U.S. Sugar only incurred them after [Defendant], in bad faith, refused to defend U.S. Sugar in the [U]nderlying [Lawsuit]. ECF No. 171-1 ¶ 143.

*Id.* at 9 (emphasis added; footnote omitted).

It further argues that the collateral estoppel doctrine is inapplicable here because "the issue previously adjudicated and the issue to be adjudicated [in its proposed bad faith claims] differ." *Id.* In other words, Judge Scola "previously determined the amount of [D]efense [E]xpenses that U.S. Sugar [was] entitled to as **contractual damages**" and "[n]ow, U.S. Sugar seeks the **extra-contractual** damages to which it is entitled due to [Defendant]'s bad faith conduct." *Id.* (emphasis added).

Plaintiff also disputes Defendant's claim that Judge Scola already ruled that "the fees U.S. Sugar seeks are unrecoverable because . . . they are unreasonable." [ECF No. 175, p. 10 n.12]. It contends that what Judge Scola's summary judgment Order [ECF No. 145] determined was "what were reasonable [D]efense [E]xpenses *under the [P]olicy*, not what damages were reasonably foreseeable because of [Defendant]'s bad faith conduct." *Id.* (emphasis in original).

As noted above, Plaintiff sought $9,464,929.51 in attorney's fees and expenses under the Policy. [ECF No. 145, p. 2]. Of this amount, Judge Scola found Plaintiff was

entitled to recover from Defendant $6,529,005.82 (and then reduced that amount to $3,456,552.50 to account for the SIR and the amounts already reimbursed by Defendant). *Id.* at 12.

Defendant relies on *Kaplan v. Nautilus Ins. Co.*, 861 F. App'x 798 (11th Cir. 2021) for the proposition that Plaintiff cannot relitigate Defense Expenses because they have already been determined and awarded by Judge Scola. *See* [ECF No. 174, pp. 4, 6].

In *Kaplan*, the plaintiffs prevailed before an arbitration panel in a breach of contract claim against the defendant. 861 F. App'x at 800. The arbitration panel awarded the plaintiffs less than the attorney's fees and costs they incurred defending themselves against a lawsuit brought by a third party. The plaintiffs subsequently filed a statutory bad faith action against the defendant for refusing to defend the plaintiffs in the third-party lawsuit. *Id.* The plaintiffs sought the unrecovered fees and cost incurred in defending against the third-party lawsuit, lost return on investment, and lost profits. *Id.* The defendant moved to dismiss the plaintiffs' claim on *res judicata* and collateral estoppel grounds. *Id.*

At the summary judgment stage, this Court "rejected [the defendant]'s argument that *res judicata* applied but agreed that collateral estoppel barred [the plaintiffs]' claim for the unrecovered damages that they previously sought in the [ ] [a]rbitration" and that the plaintiffs could not recover  the lost return on investment and lost profits because

they "did not provide sufficient evidence that [the defendant]'s bad faith caused the alleged damages." *Id.* at 801.

On appeal, the Eleventh Circuit affirmed the lower court's collateral estoppel ruling, finding that the plaintiffs' bad faith claim and the claim brought before the arbitration panel were the same:

> [The plaintiffs] fail . . . to persuade us that their bad-faith claim differs from their claim for costs and fees in the [ ] [a]rbitration. They assert that this claim is different because the theory of liability—bad faith—differs from a breach-of-contract theory. This characterization is merely semantic and does not change the fact that in the present action **[the plaintiffs] are asking for the exact same fees that they requested but did not recover in the [ ] [a]rbitration. It would violate the principles of collateral estoppel to allow Appellants to relitigate this issue simply because they recharacterized their claim as one of bad faith rather than breach of contract**. *See* [*Fridman v. Safeco Ins. Co.*, 185 So. 3d 1214, 1225 (Fla. 2016)] ("If the amount of the [underlying] verdict is not binding as an element of damages in the bad faith litigation, it would allow the insurer—or the insured, if the verdict were less than anticipated—a second bite at the proverbial apple."); *GEICO Gen. Ins. Co. v. Paton*, 150 So. 3d 804, 807 (Fla. [4th DCA] 2014) ("Forcing retrial of a plaintiff's damages at a first[-]party bad faith trial, as [defendant] urges, is such bad policy that we do not glean even a hint of its existence in any case the [Florida] Supreme Court has decided in this area.").

*Id.* at 803 (footnote omitted; emphasis added). The Eleventh Circuit also affirmed the lower court's "holding that [the] claims for lost profits were speculative and unsupported" and there was no causation with respect to one of the lost profits claims. *Id.* at 805.

Plaintiff eschews *Kaplan* on the ground that the Eleventh Circuit in a more-recent (but unpublished) opinion "held that because the fees the insured incurred were not recoverable under a fee shifting statute or the policy issued by GEICO, they were extra-contractual damages that are properly recoverable in a bad faith action under Section 624.155(8)." [ECF No. 175, p. 10 (citing *Levesque v. Gov't Emps. Ins. Co.*, 2022 WL 1423477, at *6 (11th Cir. May 5, 2022))].

In *Levesque*, the plaintiffs sued GEICO, their uninsured motorist insurer, for benefits under the policy (the "UM case"). 2022 WL 1423477, at *1. After GEICO "confess[ed] judgment," the trial court entered a $100,000 judgment (the policy limit) for the plaintiffs. *Id.* Pursuant to a contingency fee agreement, the plaintiffs agreed to pay their counsel the greater of $40,000 (40 percent of the judgment) or statutory fees (if awarded). *Id.* at 1–2. Because the plaintiffs had no statutory right to attorney's fees in the UM case, the plaintiffs owed their attorneys $40,000 under the contingency fee agreement. *Id.* at *2.

The plaintiffs then sued GEICO for bad faith under Section 624.155. *Id.* After an initial appeal, the matter was remanded back to the district court to determine any reasonable attorney's fees incurred by the plaintiffs in the UM case. *Id.* GEICO argued that the plaintiffs were limited to the amount actually owed to their UM case attorneys.

*Id.* The district court disagreed and awarded the plaintiffs $94,542.50 in fees using the lodestar method. *Id.* GEICO appealed.

At issue before the appellate court was whether the plaintiffs were entitled to recover $94,542.50 (the attorney's fees calculated using the lodestar method) or $40,000 (40% of the $100,000.00 judgment). Citing *Milling v. Travelers Home & Marine Ins. Co.*, 311 So. 3d 289 (Fla. 2d DCA 2020), the Eleventh Circuit determined that the plaintiffs' attorney's fees were limited to $40,000 under the contingency fee agreement because that was the amount they contractually owed their UM attorneys:

> **The texts of § 627.727(10) and § 624.155(8) reveal that attorney's fees in a bad-faith action are to be treated as compensatory damages (rather than as fees subject to a fee-shifting provision).** Section 627.727(10) calls the fees from a UM case "damages." And § 624.155(8) says that the claimant can recover "damages which are a reasonably foreseeable result" of the insurer's bad faith. **Expending attorney's fees to initiate an original action to obtain the insurer's payment under a UM policy is a reasonably foreseeable result of an insurer's bad-faith failure to pay.** [*Levesque v. Gov't Emps. Ins. Co.*, 817 F. App'x 670 (11th Cir. 2020) ("*Levesque I*")] ("[A]ny attorneys' fees incurred while bringing the initial suit were proximately caused not by the collision, but by GEICO's decision not to immediately pay the Levesques under the terms of the policy.").

> **So the attorney's fees referenced in § 627.727(10) comprise an element of compensatory damages. That is, they are intended to make the plaintiff whole.** As the Florida Supreme Court has explained, "[t]he damages awarded should be equal to and precisely commensurate with the injury sustained." *MCI Worldcom Network Servs., Inc. v. Mastec, Inc.*, 995 So. 2d 221, 224 (Fla. 2008) (citation and quotation marks omitted). Compensatory damages should not "bestow a windfall on plaintiffs." *Id.*

*Id.* at *5 (emphasis added). Thus, because the plaintiffs "were obligated to pay their attorneys 40% of their $100,000 recovery[,]" "in the Bad-faith Action, they [could] recover that $40,000 as damages under § 627.727(10) and § 624.155(8)" as "a reasonably foreseeable result of GEICO's bad faith." *Id.* at *6.

Citing *Levesque*, Plaintiff argues that it is entitled to recover in the bad faith action those fees expended but not yet recovered from Defendant "because an insured must be able to recover the damages resulting from an insurer's bad faith in order to make itself whole." [ECF No. 175, p. 10].

Neither party presents the Court with **binding** Eleventh Circuit precedent. In this Circuit, unpublished decisions are not binding, but can be persuasive authority. *See* 11th Cir. R. 36-2. The Undersigned will note, however, that in *Kaplan*, the defendant moved to dismiss the plaintiffs' bad faith claims, citing *res judicata* and collateral estoppel. The district court denied the motion to dismiss because the plaintiffs had "pleaded sufficient facts to state a claim." 861 F. App'x at 800–01. It was not until the summary judgment stage (after the parties had the opportunity to engage in discovery) that the plaintiffs' bad faith claim was rejected.

Given the lenient standard for granting leave to amend and taking Plaintiff at its word that it is not seeking those damages already awarded by Judge Scola, the Undersigned will allow Plaintiff to include this category of damages in its to-be-filed

amended complaint. If Defendant still believes Plaintiff is attempting to collect on amounts already awarded or not recoverable as a matter of law, then it is free to pursue those challenges at a later stage in the case. *See de Fernandez v. CMA CGM S.A.*, No. 21-CV-22778-RAR, 2023 WL 5224249, at *2 (S.D. Fla. Aug. 14, 2023) ("The Court is not persuaded that at this stage, [the] [p]laintiff's amendments would be futile because of collateral estoppel. [The] [p]laintiff claims she has discovered new information, and [the] [d]efendants argue this information is not new. [The] [d]efendants are not precluded from arguing collateral estoppel at a later date, but it is not an argument that precludes [the] [p]laintiff from filing a [s]econd [a]mended [c]omplaint at this time." (record citation omitted)).

### c) Fees and Costs Incurred in Retaining Coverage Counsel

Next Defendant argues that Plaintiff cannot recover "the fees and costs associated with retaining coverage counsel to recover money owed under the Policy" for two reasons. [ECF No. 174, p. 7 (quoting [ECF No. 171-1, ¶¶ 186; 190]). First, Plaintiff's motion for attorney's fees [ECF No. 151] sought to recover "these exact fees and costs." *Id.* Second, "[t]o the extent that Plaintiff is seeking to recover other fees and costs that were not included in its motion for attorneys' fees, Plaintiff waived its ability to seek those fees" because it "could have argued that even pre-suit fees were recoverable under Section 627.428, Florida Statutes, but chose not to do so." *Id.*

Plaintiff maintains that it "is not seeking double recovery of any amounts that the Court may award under U.S. Sugar's motion for attorneys' fees pursuant to Section 627.428, including any fees the Court may award U.S. Sugar for pursuing fees under Fla. Stat. § 627.428." [ECF No. 175, p. 8]. It maintains that "[a]ny attorneys' fees not awarded under Section 627.428 . . . are extracontractual, cognizable bad faith damages by virtue of the fact that the Court does not award them under Section 627.428." *Id.*

Plaintiff also argues that Defendant's reliance on *Kaplan*, 2019 WL 12265654, *7, to support its waiver argument is misplaced because that case "does not speak to waiver or the recovery of fees not awarded in a coverage case under Section 627.428[.]" *Id.*

For the reasons discussed above, Defendant's futility challenges are best addressed in a fully-briefed motion to dismiss or summary judgment motion (if warranted). *See Aileron Inv. Mgmt., LLC v. Am. Lending Ctr., LLC*, No. 8:21-CV-146-MSS-AAS, 2021 WL 7448222, at *2 (M.D. Fla. Nov. 9, 2021) ("[The defendant] raises futility arguments in opposition, including that the proposed amendment improperly seeks the recovery of attorney's fees [the plaintiff] incurred in litigating against [a third party] . . . . These arguments raise issues that would more appropriately be addressed in a motion to dismiss or a motion for summary judgment."). At this juncture, however, the Undersigned will not exclude an entire category of damages on the ground that Judge

Scola has awarded some damages to Plaintiff or that Plaintiff should have included those fees and costs in an earlier submission.

> **d)    Prevailing Party Fees and Costs in the Coverage Litigation**

Defendant also argues that "the fees and costs associated with pursuing the amounts owed to U.S. Sugar as the prevailing party in the coverage litigation under Fla. Stat. § 627.428" are not recoverable in a bad faith action because those fees and costs were already included in Plaintiff's motion for attorney's fees. [ECF No. 174, p. 7 (citing [ECF No. 151, p. 8])]. Additionally, Defendant notes that "Florida law is well-settled that Section 627.428 fees may be awarded for litigating the issue of entitlement to attorneys' fees and not the amount of attorneys' fees." *Id.* at 7–8.

U.S. Sugar moved for fees, expenses, and pre- and post-judgment interest. [ECF No. 151]. The parties recently resolved this category of damages. *See* [ECF No. 198, ¶ 3 ("The settlement in principle resolves the full extent of U.S. Sugar's damages in the pending coverage case, including the amount sought by U.S. Sugar in its Verified Motion for Attorneys' Fees and Expenses and Pre- and Post-Judgment Interest (ECF No. 151)[.]")]. Therefore, the prevailing party fees and costs for the coverage litigation dispute cannot be part of Plaintiff's bad faith claim.

e)      **Fees and Costs for Retaining Bad Faith Counsel and Interest**

Defendant argues that Plaintiff cannot recover "fees and costs associated with retaining counsel to prosecute a bad faith case" and "the loss of interest on each [category of damages]" because "[t]hese damages are only awardable where Plaintiff prevails in a bad faith action and cannot be sought independently." [ECF No. 174, p. 8]. Thus, these "damages alone cannot support Plaintiff's bad faith claim[s]." *Id.*

Plaintiff argues that Defendant "puts the cart before the horse and assumes U.S. Sugar will not prevail in its bad faith action." [ECF No. 175, p. 8]. It further notes that "these are cognizable bad faith damages." *Id.*

Defendant's argument is premised on Plaintiff (for various reasons) being unable to recover *any* of the preceding categories of damages, leaving it with only the attorney's fees incurred in litigating its to-be-filed bad faith claims and interest. But, as discussed above, at least some of Plaintiff's damages categories are cognizable bad faith damages. Thus, attorney's fees incurred in litigating the bad faith action and interest are not the only damages recoverable here. For this reason, Defendant's argument fails.

At this stage, Plaintiff is entitled to plead (and proceed with) its bad faith claims against Defendant, including its prayer for fees, costs, and interest. These types of damages are recoverable in a bad faith action. *See Royal Marco Point I Condo. Ass'n, Inc.*, 2010 WL 2757240, at *3 (M.D. Fla. July 13, 2010) (noting that court costs and reasonable

attorney's fees incurred in the bad faith litigation are recoverable). Whether Plaintiff *ultimately* prevails is yet to be determined. It is not, however, grounds for denying the instant motion. *See Byrd v. Grady Mem'l Hosp. Sys.*, No. 1:15-CV-4359-LMM-LTW, 2016 WL 11899140, at *10 (N.D. Ga. Aug. 12, 2016), *report and recommendation adopted*, No. 1:15-CV-04359-LMM, 2016 WL 11899141 (N.D. Ga. Sept. 12, 2016) ("Because some of [the] [p]laintiff's substantive state law claims have survived [the] [d]efendants' [m]otion to [d]ismiss and because [the] [p]laintiff may amend his [c]omplaint to better state his intentional infliction of emotional distress claim, dismissal of [the] [p]laintiff's prayer for an award of punitive damages and attorneys' fees at this stage of the litigation would be premature.").

### f)      Punitive Damages

Defendant argues that because Plaintiff cannot recover compensatory damages, it cannot recover punitive damages. [ECF No. 174, p. 8 ("Plaintiff cannot recover punitive damages where compensatory damages are not available, because punitive damages cannot be sought independently")].

Plaintiff asserts that Defendant "wrongly assumes U.S. Sugar will not recover compensatory damages" and notes that punitive damages are recoverable even if only nominal damages are awarded [ECF No. 175, p. 8 (citing *Ault v. Lohr*, 538 So. 2d 454, 456 (Fla. 1989))].

At this time, the Court does not need to decide whether a theoretical award of nominal damages would be enough to support punitive damages. At a minimum, the proposed amended complaint pleads extra-contractual damages which a jury may (or may not) find were "reasonably foreseeable" and the direct consequence of Defendant's alleged bad-faith misrepresentations. Thus, the Undersigned will not exclude punitive damages from the to-be-filed amended complaint.

## IV.    Conclusion

For the reasons stated above, the Undersigned **grants in part and denies in part** Plaintiff's motion [ECF No. 171]. Within **seven (7) days** of this Order, Plaintiff may file an amended complaint consistent with the proposed amended complaint [ECF No. 171-1] attached to its motion.[12] Plaintiff may not, however, include those damages which are part of the parties' settlement in principle, as indicated in the Notice of Settlement [ECF No. 198]. Defendant will respond to the amended complaint in accordance with the Federal Rules of Civil Procedure.

**Note:** The Undersigned's ruling is limited to the issue of whether Plaintiff may file an amended complaint. Nothing in this Order prohibits Defendant from later challenging

---

[12]    Plaintiff's motion states that "U.S. Sugar has omitted the exhibits to the proposed amended complaint to avoid an unnecessarily voluminous filing on the Court's docket." [ECF No. 171, p. 3 n.1]. Therefore, Plaintiff's amended pleading will include the omitted exhibits.

-- in a motion to dismiss, a motion for summary judgment, or otherwise -- Plaintiff's bad faith claims or the damages which it seeks to recover.

**DONE AND ORDERED** in Chambers, in Miami, Florida, August 19, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Robert N. Scola, Jr.
All Counsel of Record