United States District Court
for the
Southern District of Florida

| | |
|---|---|
| United States Sugar Corporation, <br> Plaintiff, <br><br> v. <br><br> Commerce and Industry Insurance Company, Defendant. | ) <br> ) <br> ) <br> ) Civil Action No. 22-21737-Civ-Scola <br> ) <br> ) <br> ) <br> ) |

## Order On The Defendant's Motion to Dismiss

This matter is before the Court on Defendant Commerce and Industry Insurance Company's motion to dismiss the Plaintiff's First Amended Complaint ("FAC"). (ECF No. 219.) The Plaintiff has responded (ECF No. 223), and the Defendant has filed a reply (ECF No. 226). The Court has considered the briefing, the record, the relevant legal authorities, and is otherwise fully advised. The Court **grants in part** and **denies in part** the Defendant's motion to dismiss (**ECF No. 219**) for the reasons discussed below.

1. **Background**

On June 7, 2022, the Plaintiff filed a breach-of-contract claim (the "Coverage Action") against the Defendant, alleging that the Defendant did not pay the Plaintiff, as agreed under an insurance policy, defense expenses related to a putative class action concerning the Plaintiff's pre-harvest sugarcane burning, *Clover Coffie, et al. v. Fla Crystals Corp., et al.*, Case No. 9:19-cv-80730-DMM (S.D. Fla. filed June 4, 2019). (Compl., ECF No. 1, ¶ 102.) Eventually, the Court found in favor of the Plaintiff, and awarded the Plaintiff $3,456,552.50 in defense expenses incurred in *Clover Coffie*. (Order on Cross-Motions for Summary Judgment, ECF No. 145, at 12.)

On September 24, 2024, the Court entered final judgment on the Plaintiff's breach of contract claim for $5,686,552.50, comprised of (1) the $3,456,552.50 described above; (2) $630,000 in pre-judgment and post-judgment interest in connection with (1) above; and (3) $1,600,000 in statutory attorneys' fees, costs, and interest for the amounts sought in the Plaintiff's Motion for Attorneys' Fees and Expenses and Pre- and Post-Judgment Interest. (Partial Final Judgment, ECF No. 217.)

After the Court's order on the parties' cross-motions for summary judgment and before partial final judgment was entered, the Plaintiff sought leave to amend its complaint to include statutory and common law bad faith

claims against the Defendant. (ECF No. 171.) On August 19, 2024, Judge Jonathan Goodman granted in part and denied in part the Plaintiff's leave to amend. (Order, ECF No. 200.)

The Plaintiff then filed its FAC on August 26, 2024. (ECF No. 201.) In the FAC (the "Bad Faith Action"), the Plaintiff brings one count of statutory bad faith under Florida Statute § 624.155 (Count I) and one common law bad faith claim (Count II). On both counts, the Plaintiff seeks the following damages:

> (1) the fees associated with U.S. Sugar's pre-suit efforts to secure a defense in excess of the Policy's SIR [Self-Insured Retention], (2) the full amount of the Defense Expenses incurred by U.S. Sugar in the Underlying Lawsuit that were not recovered in the coverage litigation, (3) the fees and costs that U.S. Sugar did not recover in the coverage litigation associated with retaining coverage counsel to recover money owed under the Policy, (4) the fees and costs that U.S. Sugar did not recover in the coverage litigation associated with pursuing the amounts owed to U.S. Sugar as the prevailing party in the coverage litigation under Fla. Stat. § 627.428, (5) the fees and costs associated with retaining counsel to prosecute a bad faith case, and (6) the loss of interest on each of the foregoing amounts.

FAC ¶¶ 186, 192. The Defendant now brings this motion to dismiss, on five separate grounds: that (1) collateral estoppel and *res judicata* warrant dismissal of the FAC; (2) the Plaintiff does not plead that the Defendant's conduct caused any bad faith damages; (3) unreasonable attorneys' fees cannot be a reasonably foreseeable result of bad faith conduct; (4) the Plaintiff does not plead violations of Fla. Stat. §§ 626.9541(1)(i)(2) and (3)(b); and (5) the Plaintiff's bad faith common law claim is legally incognizable. (Pl.'s Mot., at 2.)

### 2. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (cleaned up). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 3. Analysis

As discussed in more detail below, the Defendant's motion to dismiss Count I is denied. However, Count II, as well as the Plaintiff's request for attorneys' fees and costs that were deemed unreasonable in the Coverage Action, are dismissed with prejudice.

### A. Law of the Case

A threshold issue for this motion to dismiss is whether the "law of the case" has already established the legal and factual sufficiency of the First Amended Complaint. The Plaintiff believes that it does, pointing to the fact that Judge Goodman granted the Plaintiff leave to amend over the Defendant's objections. (*See generally* Def.'s Mot.; Order, ECF No. 200).

But as the Defendant correctly points out, the leave-to-amend standard is more lenient than the motion-to-dismiss standard. "[C]ourts have consistently declined to apply the law of the case doctrine where prior holdings in a case were based on either an undeveloped factual record or a different standard of review." *Health v. College of Charleston*, No.: 2:17-cv-01792-PMD-JDA, 2018 WL 3353063, at *6 (D.S.C. June 15, 2018) (collecting cases). As Judge Goodman explained in granting leave to amend, "[l]eave to amend should be freely given when it is in the interests of justice," and "district courts should generally exercise their discretion in favor of allowing amendments to reach the merits of a dispute." (Order, ECF No. 200 at 9 (citation omitted).) This is much different than the motion-to-dismiss standard, which requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Not surprisingly, then, Judge Goodman noted that "[i]f Defendant still believes Plaintiff is attempting to collect on amounts already awarded or not recoverable as a matter of law, then it is free to pursue those challenges at a later stage in this case." (Order, ECF No. 200 at 9.)

Given the different standards of review for a motion for leave to amend and a motion to dismiss, the Court does not find that the law of the case has established the legal and factual sufficiency of the FAC. *See Waterfront Renaissance Assocs. v. City of Phila.*, 701 F. Supp. 2d 633, 640 (E.D. Pa. 2010) ("Granting [the plaintiff's] motion for leave to amend did not determine whether the claims raised in the amended complaint were sufficient to state a claim. Therefore, the law of the case doctrine does not apply." (citation omitted)).

With that being said, the Court does find Judge Goodman's order granting leave to amend informative and relevant in its analysis on the Defendant's current motion.

### B. Collateral Estoppel and *Res Judicata*

The Defendant first argues that the "Plaintiff's attempt to relitigate the expenses and fees in the Bad Faith Action and recover the same, where it failed to do so in the Coverage Action, is squarely forbidden by the doctrines of collateral estoppel and *res judicata*." (Pl.'s Mot., at 5.) The Defendant believes that the Plaintiff's alleged damages related to Defense Expenses, attorneys' fees and costs, and pre-suit fees were all recoverable in the Coverage Action and thus are unrecoverable here. (*Id.* at 5-11.)

"[T]he doctrine of collateral estoppel 'prevents identical parties from relitigating the same issues that have already been decided.'" *Kaplan v. Nautilus Ins. Co.*, 861 F. App'x 798 (11th Cir. 2021) (quoting *Dep't of Health & Rehab Servs. v. B.J.M.*, 656 So. 2d 906, 910 (Fla. 1995)). For the doctrine to apply, "the parties and issues must be identical, and the particular matter must have been fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction." *Id.* (cleaned up).

*Res judicata* "bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011) (citation omitted). For the doctrine to apply in a later case, "four elements must be present: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Id.* (citation omitted). "[T]wo cases are generally considered to involve the same cause of action if the latter case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as the former one." *Id.* (cleaned up). Moreover, "there must be a concurrence of the following conditions: 1) identity of the thing sued for, 2) identity of the cause of action, 3) identity of the persons and parties to the actions, and 4) identity of the quality or capacity of the person for or against whom the claim is made." *Kaplan v. Nautilus Ins. Co*, Case No. 1:17-cv-24453-KMM 2019 WL 12265654, at *5 (S.D. Fla. Nov. 4, 2019) (Moore, J.) (citing *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 483 F.3d 1265, 1271 (11th Cir. 2007)).

Here, as noted above, the Plaintiff seeks the following damages:

> (1) the fees associated with U.S. Sugar's pre-suit efforts to secure a defense in excess of the Policy's SIR, (2) the full amount of the Defense

> Expenses incurred by U.S. Sugar in the Underlying Lawsuit that were not recovered in the coverage litigation, (3) the fees and costs that U.S. Sugar did not recover in the coverage litigation associated with retaining coverage counsel to recover money owed under the Policy, (4) the fees and costs that U.S. Sugar did not recover in the coverage litigation associated with pursuing the amounts owed to U.S. Sugar as the prevailing party in the coverage litigation under Fla. Stat. § 627.428, (5) the fees and costs associated with retaining counsel to prosecute a bad faith case, and (6) the loss of interest on each of the foregoing amounts.

FAC ¶¶ 186, 192.

1. <u>Defense Expenses</u>

The Defendant believes that the Plaintiff's damages related to its defense expenses incurred in the Coverage Action cannot be recovered because the parties fully litigated, and the Court adjudged, the defense expenses and attorneys' fees and costs recoverable by the Plaintiff. (Pl.'s Mot., at 6.)

First, the Plaintiff's claims for damages are not barred by *res judicata*. Under Florida law, a finding of liability and damages for a breach of contract does not, in and of itself, "bar a subsequent bad faith claim." *Nautilis*, 2019 WL 12265654, at *5 (citing *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*,, 945 So.2d 1216, 1235 (Fla. 2006)). This is because "the first two prerequisites for application of res judicata—identity of the thing sued for and identity of the cause of action—are not and cannot be satisfied" given that a "claim arising from bad faith is grounded upon the legal duty to act in good faith, and is thus separate and independent of a claim arising from the contractual obligation to perform." *Id.* (citing *Dadeland Depot*, 945 So.2d at 1235 (cleaned up)). "Indeed, an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith can accrue." *Id.* (citing *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So.2d 1289, 1291 (Fla. 1991) (cleaned up)).

Applying those principles here, the Plaintiff's Bad Faith Action involves "separate and independent cause[s] of action from its prior breach of contract claim." *Id.* (citation omitted). And the bad faith causes of action could not have been brought before the breach of contract dispute was resolved. *See id.* Therefore, the requirements for *res judicata* are not met.

Second, the Court cannot say, at the motion-to-dismiss stage, that collateral estoppel prevents the Plaintiff from seeking the Defense Expenses in

damages categories (2) through (4). Read in the light most favorable to the Plaintiff, the Plaintiff is seeking those damages incurred by the Defendant's bad-faith, extra-contractual conduct, rather than the Defendant's duties based in contract. *See B-K Cypress Log Homes Inc. v. Auto-Owners Ins. Co.*, No. 1:09-cv-211-GRJ, 2012 WL 13018751, at *3 (N.D. Fla. May 31, 2012) ("Damages recoverable for bad faith under section 624.155 must include all damages resulting from an insurer's bad-faith actions and thus, [are] not limited to the insured's policy limits." (citation and internal quotations omitted)).

*Kaplan v. Nautilus Insurance Company*, 861 F. App'x 798 (11th Cir. 2021), does not warrant a different conclusion. There, on a motion for summary judgment and after discovery had taken place, the district court concluded—and the Eleventh Circuit agreed—that the plaintiffs were "asking for the exact same fees [in its bad-faith action] that they requested but did not recover in the" underlying coverage action. *Kaplan*, 861 F. App'x at 803. Notably, the district court in *Kaplan* denied a motion to dismiss based on collateral estoppel because the "Plaintiffs pled sufficient facts, which taken as true, could state a cause of action upon which relief could be granted." *Nautilus*, 2019 WL 12265654, at *3.

Similarly, the Defendant here may raise its collateral estoppel arguments again in a motion for summary judgment. But as pled, dismissal of the Plaintiff's FAC based on collateral estoppel and *res judicata* is not warranted.

### 2. Pre-Suit Expenses

The Defendant also believes that the Plaintiff's claim for damages related to the Plaintiff's pre-suit efforts to secure a defense are likewise "unrecoverable as a matter of law because Plaintiff could have sought them in the Coverage Action but chose not to." Pl.'s Mot., 8-9. However, for the reasons discussed above, the Plaintiff's claim for pre-suit damages is not barred by collateral estoppel or *res judicata*.

### C. "Unreasonable" Attorneys' Fees and Costs

However, the Plaintiff may not seek the Defense Expenses that the Court has already determined are unreasonable as a matter of law. The Defendant argues that "the Court found that the attorneys' fees and costs Plaintiff seeks here were unreasonable in rejecting Plaintiff's attempt to recover them under the Policies in the Coverage Action." (Pl.'s Mot., at 14 (citing Order, ECF No. 145 at 2).) The Defendant believes that such damages are unrecoverable as a matter of law because "damages awardable in a bad faith case 'are subject to the rule that they must be a 'reasonably foreseeable result of the specified

violation.'" (*Id.* (quoting *Levesque v. Gov't Emps. Ins. Co.*, 2022 WL 1423477, at *4 (11th Cir. May 5, 2022)).) Moreover, the Defendant believes that because attorneys' fees are awarded to make a party whole, the "Plaintiff, of course, cannot be made whole twice by seeking the same attorneys' fees and costs sought in Plaintiff's Motion for Attorneys' Fees and Expenses and Pre- and Post-Judgment Interest (ECF No. 151) and by seeking the same fees and costs already deemed unreasonable by this Court, as it does now." (*Id.* at 15.)

The Plaintiff responds in three ways. First, with respect to the fees and costs from the Coverage Action, the Plaintiff argues that the Court awarded attorneys' fees "based on a lodestar analysis," and that "[t]he question of fact that a jury would answer in this case (what defense expenses were a reasonably foreseeable consequence of C&I's bad faith conduct) is entirely distinct from what [the Court] decided as a matter of law (what fees should be shifted under a lodestar analysis)." (Def.'s Resp., at 9.) Second, as to the Plaintiff's unrecovered attorneys' fees from the fee shifting dispute, the Plaintiff explains that it filed a motion to recover its fees and costs. (*Id.* at 10.) However, "[t]he Court never ruled on this because the parties reached a settlement that expressly preserved U.S. Sugar's ability to seek the unpaid amounts (and be made whole) through its bad faith case." (*Id.*). Third, the Plaintiff explains that it "is not seeking an amount above and beyond what it actually paid its counsel," but instead "seeks what it *actually incurred and paid – i.e.,* the amount required to be made whole." (*Id.* at 8-9 (citing FAC ¶¶ 186, 192).)

The Plaintiff "is only entitled to recover as compensatory damages those attorney's fees that would make her whole." *Milling v. Travelers Home & Marine Ins. Co.*, 311 So.3d 289, 294 (Fla. 2d DCA 2020) (citation omitted). Under Fla. Stat. § 624.155(8), a plaintiff may "recover attorney's fees from the Coverage Action as consequential damages." *Pearce v. Integon Preferred Ins. Co.*, Case No. 6:18-cv-1852-Orl-22KRS, 2019 WL 5294947, at *4 n. 7 (M.D. Fla. Jan. 3, 2019). The recoverable attorney's fees are those "*reasonable* attorney's fees incurred in both the bad faith litigation and in the resolution of the underlying claim as a result of the insurer's conduct in delaying payment." *Royal Marco Point I Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 3:07-cv-16, 2010 WL 2757240, at *3 (M.D. Fla. July 13, 2010) (citation omitted) (emphasis added).

As to the attorneys' fees and costs from the underlying lawsuit, the Plaintiff is incorrect that the Court, in its order on the cross-motions for summary judgment, merely "awarded damages based on a lodestar analysis." (Pl.'s Resp., at 9.) Rather, the Court used the lodestar method to "approach its reasonableness analysis." (Order, ECF No. 145, at 9.) As the Court explained in its order, the Plaintiff "is only entitled to its reasonable attorneys' fees and costs incurred as Defense Expenses in the Underlying Lawsuit." (Order, ECF

No. 145, at 4 (citations omitted).) As an expert on fees, the Court determined that the Plaintiff's "reasonable, reimbursable Defense Expenses in the Underlying Lawsuit to have been $6,529,005.82," and the Defendant owed the Plaintiff $3,456,552.50 in damages. *Id.* at 12. The Court also found that the Plaintiff's "full incurred costs of $9,464,929.51 are not reasonable." (*Id.* at 6.)

Therefore, the Plaintiff may not, in this bad faith action, seek to recover "the full amount of the Defense Expenses incurred by U.S. Sugar in the Underlying Lawsuit that were not recovered in the coverage litigation." FAC ¶¶ 186, 192. The amounts not recovered were unreasonable and thus not recoverable in a bad faith action as a matter of law. *See Royal Marco Point I Condo. Ass'n, Inc.*, 2010 WL 2757240, at *3-4 (citation omitted).

However, the Plaintiff may still seek its unrecovered attorneys' fees from the fee shifting dispute and its pre-suit efforts. *See* FAC ¶¶ 186, 192 (damages categories (1), (3), and (4)). The Plaintiff was entitled to its attorneys' fees and costs because it prevailed in the Coverage Action. *See* Fla. Stat. § 627.428. The Plaintiff subsequently filed a motion for such fees and costs. (ECF No. 151.) Before the Court ruled on the motion, the parties settled on the amounts in dispute in that motion. (Notice of Settlement, ECF No. 198.) Given the settlement, the Court explained that the Plaintiff may still pursue unrecovered damages as the prevailing party. (ECF No. 214.) Unlike with the defense expenses from the underlying lawsuit, the Court did not determine the reasonableness of the costs and fees associated with the Plaintiff being the prevailing party in the Coverage Action. Therefore, at the motion-to-dismiss stage, such fees and costs are not unreasonable as a matter of law. It is thus plausible that with respect to such fees and costs, the Plaintiff has not yet been made "whole" and is entitled to recovery. *See Milling*, 311 So.3d at 294 (citation omitted).

In sum, the Plaintiff may seek to recover damages categories (1), (3), and (4)-(6) of its FAC. *See* FAC ¶¶ 186, 192. It may not, however, seek to recover damages category (2), "the full amount of the Defense Expenses incurred by U.S. Sugar in the Underlying Lawsuit that were not recovered in the coverage litigation." *See id.*

### D. Common Law Bad Faith Claim

Next, the Defendant believes that the Plaintiff's common-law bad faith claim is a first-party bad faith claim and is thus not recognized by Florida common law. (Def.'s Mot., at 19.) The Defendant also argues that the Plaintiff cannot bring a common-law bad faith claim while also bringing a statutory common-law bad faith claim. (*Id.* at 20.)

The Plaintiff disagrees, characterizing its claim as a third-party bad faith claim recognized by Florida common law. (Pl.'s Resp., at 14-16.) The Plaintiff believes that Judge Goodman rejected the Defendant's arguments when allowing amendment of the complaint. (*Id.* at 15-16.)

As an initial matter, Judge Goodman did not decide whether the Plaintiff's common-law bad faith claim was a first- or third-party bad faith claim. In his order, Judge Goodman explained that the Defendant's arguments were "best addressed on a motion to dismiss or at the summary judgment stage (if appropriate)." (Order, ECF No. 200, at 30-31.) Judge Goodman allowed the amendment of the complaint to include a common-law bad faith claim because "district courts should generally exercise their discretion in favor of allowing amendments to reach the merits of a dispute." (*Id.* at 31 (quoting *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F. 4th 989, 1000 (11th Cir. 2021)).)

"[I]t is clear that there is no common law first-party bad-faith action in Florida." *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So.3d 541, 547 (Fla. 2012). In his order, Judge Goodman explained:

> In Florida, a first-party bad faith claim arises when an insured sues its own insurance company for an improper denial of benefits. A third-party bad faith claim is derivative of the insured's claim and exists only to the extent that the insured is exposed to liability beyond her policy limits based on the insurer's failure to properly defend the claim.

(Order, ECF No. 200, at 29 (cleaned up).) Under Florida law, the Plaintiff's common law claim is a first-party claim not recognized by Florida common law. The FAC makes clear that the Plaintiff seeks damages for the Defendant's "improper denial of benefits," rather than its "expos[ure] to liability beyond her policy limits based on the insurer's failure to properly defend the claim." (*Id.*); *see also* FAC ¶ 192 (listing alleged damages with respect to the common-law bad faith claim).

In its opposition, the Plaintiff cites to deposition testimony from the Defendant's corporate representative in which the representative appears to say that the claim is a third-party claim. (*See* Pl.'s Resp., at 14.) Even if such testimony is appropriate to consider on a motion to dismiss, such testimony does not change the fact that the damages the Plaintiff seeks are those for a first-party bad faith claim.

*Formula LLC v. RSUI Indemnity Company*, No. 09–60592–CIV, 2009 WL 2342455 (S.D. Fla. July 28, 2009) (Cooke, J.), relied upon by the Plaintiff and briefly discussed by Judge Goodman, does not dictate a different conclusion. There, the court concluded that a bad faith claim was a third-party bad faith

claim. *Formula LLC*, 2009 WL 2342455, at *2. Importantly, however, the policy there was "intended to protect Plaintiffs from third-party claims." *Id.* The Plaintiffs alleged that third parties had "brought 17 claims against them and that all such claims were of the type covered under" the policy and "the claims were tendered for payment to [the Defendant] and Defendant unlawfully denied defense and indemnification." *Id.* at *2. Thus, the Plaintiffs were "exposed to liability beyond her policy limits based on the insurer's failure to properly defend" and pay the claims. (Order, ECF No. 200, at 29 (cleaned up).) In contrast, the Plaintiff is not exposed to additional liability because it alleges that the Defendant failed to pay the Plaintiff its defense expenses, not claims to third parties. This case is a first-party claim. (*Id.*)

The Plaintiff also cites to *Robles v. GEICO Indemnity Company*, 2021 WL 445197 (11th Cir. Sept. 29, 2021), to support its contention that "a third-party claim is defined by the insurer's obligation to handle a liability claim against its insured in good faith." (Pl.'s Resp., at 14 (citing *Robles*, 2021 WL 445197, at *3).) The context of that case is important—and distinguishable. There, the widow of a victim of a fatal car accident brought a common law bad faith claim against GEICO, the insurance provider for the surviving driver of the car accident. *Robles*, 2021 WL 445197, at *1-2. Unlike here, then, the insured was *not* bringing its own action against its insurance company. The widow's claim was indisputably a third-party bad faith action. It was under these circumstances that the Eleventh Circuit explained that "a third-party bad faith claim arises when the insurer fails to act in good faith in handling a brought by a third party against an insured." *Id.* at *3 (quoting *Macola v. Gov't Emps. Ins. Co.*, 953 So. 2d 451, 457 (Fla. 2006).) The Court was merely explaining the principle that allowed the plaintiff's claim, rather than the precise definition of a third-party claim.

In sum, the Plaintiff's common-law claim is a first-party bad faith claim and is thus not recognized under Florida common law. The common law bad faith claim is dismissed with prejudice.

### E. Sufficiency of Statutory Bad Faith Claims

The Plaintiff alleges that the Defendant violated Fla. Stat. § 624.155 by violating Fla. Stat. §§ 626.9541(1)(i)(2) and (1)(3)(b). Section 624.155(1)(a)(1) states, in relevant part, that "[a]ny person may bring a civil action against an insurer when such person is damaged [] [b]y a violation of . . . Section 626.9541(1)(i), (o), or (x)." "Section 626.9541(1)(i)(2) provides that it is bad faith to make "a material misrepresentation . . . to an insured . . . for the purpose and with the intent of effecting settlement of such claims, loss or damage

under . . . [the] policy on less favorable terms than those provided in . . . [the] policy[.]" (Order, ECF No. 200, at 17 (quoting Fla. Stat. § 626.9541(1)(i)(2)).) Fla Stat. § 626.9541(1)(3)(b) "states that it is bad faith to 'misrepresent[] pertinent facts or policy provisions relating to coverages at issue' 'with such frequency as to indicate a general business practice[.]'" (*Id.* (quoting Fla. Stat. § 626.9541(1)(3)(b)).)

### a. Specificity of Misrepresentation

The Defendant believes that the Plaintiff's statutory bad faith claims fail because the Plaintiff's allegations "do not allege that C&I lied about any Policy provision and, at best Plaintiff's allegations merely show that C&I misunderstood the interactions between the provisions." (Pl.'s Mot., at 16.) Moreover, the Defendant argues that the Plaintiff does not allege that the Defendant made misrepresentations "for the purpose and with the intent of effecting settlement . . . on less favorable terms than those provided in, and contemplated by, such contract or policy." (*Id.* at 17 (quoting Fla. Stat. § 626.9541(1)(i)(2)).) Finally, the Defendant contends that the Plaintiff's bad faith claim under Section 626.9541(1)(i)(3)(b) fails because it only alleges one instance of alleged misrepresentation, rather than a "general business practice." (*Id.* at 18.)

The Plaintiff does not believe that it is required to allege that the Defendant lied about its policy and that, in any event, the FAC does allege that the Defendant lied about the extent of its insurance policy. (Def.'s Resp.. at 11.) Additionally, the Plaintiff points to the Court's order on the motion for leave to amend, which concluded that the "Plaintiff does plead in the proposed amended complaint the purpose of the misrepresentation." (*Id.* at 12 (quoting Order, ECF No. 200, at 22).)

The Defendant replies by arguing that the Plaintiff does not comply with the heightened pleading requirements of Fed. R. Civ. P. 9(b). (Def.'s Reply, at 10.) The Court will not consider this argument given that it was not raised in the motion itself. *See Flamenbaum v. Orient Lines, Inc.*, Case No. 03-22549-CIV, 2004 WL 1773207, at *14 (S.D. Fla. July 20, 2004) (Altonaga, J.) (declining to consider an argument raised first in a reply "because the Plaintiffs have not had an opportunity to respond").

The Court finds that the Plaintiff has adequately pled its statutory bad faith count. Though analyzing the Plaintiff's allegations in the context of a motion for leave to amend, Judge Goodman's findings are instructive. Judge Goodman pointed to various allegations in the then-proposed (and now filed) FAC that allege "more than a mere misunderstanding of the Policy," and

instead "support[] Plaintiff's material misrepresentation claim." (Order, ECF No. 200, at 18.) These same allegations also adequately plead that the Defendant misrepresented its coverage. *See* FAC ¶¶ 2, 6-7, 41-42, 66, 69-71, 101.

The Plaintiff also adequately alleges that these misrepresentations were "for the purpose and intent of effecting settlement . . . on less favorable terms than those provided in, and contemplated" by the insurance policy. *See* Fla. Stat. § 626.9541(1)(i)(2). The Plaintiff pleads that the Defendant's "claim handling and litigation tactics" "are intended to leverage the lowest possible payout." FAC ¶ 10. The Plaintiff also alleges that "[a]fter wrongfully withholding millions of dollars and finally making a partial payment, C&I continued its effort to leverage U.S. Sugar into accepting less than what was still owed *by serving a lowball Proposal for Settlement.*" *Id.* ¶ 111 (emphasis added). These allegations are enough to plead that the Defendant engaged in bad faith conduct "for the purpose and intent of effecting settlement." *See* Fla. Stat. § 626.9541(1)(i)(2).

The Plaintiff also adequately pleads that the Defendant violated Fla. Stat. § 624.155 through Fla. Stat. §§ 626.9541(1)(3)(b). The Florida Supreme Court has made it clear that when the plaintiff brings a section 626.9541(1)(i) claim through the private right of action in Section 624.155, it need not provide evidence of a general business practice. *See Dadeland Depot*, 945 So. 2d aty 1233. But in any event, the Plaintiff does adequately plead the existence of a general business practice. *See* FAC ¶¶ 157-58.

In sum, the Plaintiff pleads the Defendant's misrepresentations with adequate specificity.

### b. Causation

Next, the Defendant argues that the Plaintiff has not pled that the Defendant's alleged bad faith caused the Plaintiff damages.

As to Count I, the Defendant notes that the Plaintiff alleges that the Defendant made a material misrepresentation "for the purpose and with the intent of effecting settlement of such claims, loss or damage under such contract or policy on less favorable terms than those provided in, and contemplated by, such contract or policy." FAC ¶ 180. The Plaintiff then alleges that it "has been damaged by C&I's improper withholding of payment under the Policy." *Id.* ¶ 186. To the Defendant, these alleges do not plausibly plead causation because "[a] misrepresentation to effectuate a better settlement and a withholding of payment are functionally different and Plaintiff's failure to

plead the link between the violations and the damages is fatal to Count I." (Pl.'s Mot., at 12.)[1]

Finally, the Defendant argues that because the Plaintiff has not pled that the Defendant knew that the SIR was exhausted, "a condition of the Policy to trigger the duties at the heart of Plaintiff's allegations," "Plaintiff cannot proceed as a matter of law under the Policy language." *Id.* at 12-13.

In a bad faith action, only damages that "are a reasonably foreseeable result of a specified violation of section 624.155 by the authorized insurer, and the natural, proximate, probable or direct consequence of the insurer's bad faith." *Heritage Corp. of South Fla. v. Nat'l Union Sire Ins. Co. of Pitts., PA*, 361 F. App'x 986, 987 (11th Cir. 2010). Therefore, the Plaintiff must adequately plead causation to sustain its bad faith claims.

In determining whether the Plaintiff did so here, "it is not necessary for the plaintiff to 'specifically plead every element of a cause of action." *Bell v. Beyel Bros., Inc.*, 2017 WL 1337267, at *2 (S.D. Fla. Apr. 7, 2017) (Middlebrooks, J.) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001)). "[T]here need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action." *Id.* (citation omitted). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain under some viable legal theory." *Id.* (citing *Roe*, 253 F.3d at 683.)

Applying these principles here, the Court finds that the Plaintiff has adequately pled causation throughout the FAC. As a general matter, the Defendant is incorrect that the Plaintiff only alleges that the Defendant *improperly* withheld payment under the insurance policy. The Plaintiff alleges that the Defendant made *misrepresentations* when it improperly withheld payment under the insurance policy. FAC ¶¶ 175-176; *see supra* Section E.a. And the Plaintiff then connects such allegedly bad faith actions to damages it suffered. For example, the Plaintiff alleges that the Defendant "elected to take no action at all and abandoned U.S. Sugar for the entirety of the Underlying Lawsuit without any regard for its contractual obligations or the economic consequences of its decision." FAC ¶ 78. This caused the Defendant "to defend the action as it deemed appropriate," which included "engag[ing] a legal team and experts to defend against the allegations in the Underlying Lawsuit and the substantial liability that the putative class plaintiffs sought to impose." *Id.* ¶¶ 78-79; *see also id.* ¶¶ 138, 140-41 (detailing these same economic consequences of the Defendant's alleged conduct). Due to the Defendant's

---

[1] Because Count II has been dismissed, the Court will not discuss the Defendants' causation arguments with respect to Count II here.

alleged conduct, the Plaintiff "carried the burden of paying millions in Defense Expenses for over four years and lost the ability to deploy that capital elsewhere within the company." *Id.* ¶ 144.

In its reply, the Defendant fails to show how these allegations are insufficient to plead causation, instead repeating its argument that the "FAC itself must plead a causal connection." (Def.'s Reply, at 8.) But again, at this stage of litigation, the Court must view the FAC as a whole and in the light most favorable to the Plaintiff.

Given these allegations related to causation and the Defendants' intent as to its alleged misrepresentations, the Defendant's arguments that the FAC fails to plead the Defendant's knowledge that the SIR had been exhausted does not warrant dismissal. Such an argument is better suited for a motion for summary judgment after discovery has taken place.

Therefore, the Plaintiff adequately pleads causation.

### F. Plausibility

The Defendant also argues that "[i]n addition to being implausible, Plaintiff's allegations are frivolous." (Def.'s Mot., 13-14.) The Court has analyzed the allegations and, as discussed above, the allegations state statutory claims for which relief may be granted. Judge Goodman also detailed in his order why the Plaintiff's claims are not frivolous. Claiming that another party's pleadings are "frivolous" is a serious accusation and should not be made lightly.

### 4. Conclusion

For the foregoing reasons, the Court **grants in part** and **denies in part** the Defendant's motion to dismiss (**ECF No. 219**). The Defendant's motion to dismiss is **denied** with respect to the Plaintiff's statutory bad faith claim (Count I). The Defendant's motion to dismiss is **granted with prejudice** with respect to the Plaintiff's common-law bad faith claim (Count II), as well as to attorneys' fees and costs incurred in the underlying lawsuit but deemed unreasonable in the Coverage Action. (Order on Cross-Motions for Summary Judgment, ECF No. 145, at 12).

Moreover, no later than January 31, 2025, the parties shall mediate all remaining issues with Michael Hanzman. If the matter does not settle, the Court will enter a scheduling order thereafter.

**Done and ordered** in Miami, Florida, on December 9, 2024.

_____
Robert N. Scola, Jr.
United States District Judge